**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated,<br><br><div align="center">*Plaintiffs*,</div><br>v.<br><br>TROY DESIGN & MANUFACTURING CO.,<br><br><div align="center">*Defendant.*</div> | Removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division No. 2023-CH-08102<br><br><br><br>Civil Action No. _____ |

<u>**DEFENDANT TROY DESIGN & MANUFACTURING COMPANY'S
NOTICE OF REMOVAL**</u>

**PLEASE TAKE NOTICE** that Defendant Troy Design & Manufacturing Co. ("TDM" or

"Defendant"), by and through its undersigned counsel of record and pursuant to 28 U.S.C. §§ 1332,

1441, 1446, and 1453, removes this state-court action to the United States District Court for the

Northern District of Illinois.  The action was originally filed as Case No. 2023-CH-08102, *Timothy*

*Franklin, et. al., v. Troy Design & Manufacturing Co.*, in the Circuit Court of Cook County,

Illinois, County Department, Chancery Division.

**PLEASE TAKE FURTHER NOTICE** that a copy of this Notice of Removal is being

served upon all other parties and is attached to the Notice of Removal of Action to the Federal

Court being filed with the Clerk of the Circuit Court of Cook County, Illinois. TDM states the

grounds for removal below.[1]

---

[1] By filing this Notice of Removal, TDM does not waive, and reserves, all objections as to venue, personal jurisdiction, or the legal sufficiency of the claims asserted in this action, as well as all other objections and defenses.  TDM reserves the right to supplement or amend this Notice of Removal.

**Background**

1. On September 12, 2023, Plaintiffs Timothy Franklin and Darien Evans filed this lawsuit in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, under the caption *Franklin v. Troy Design & Manufacturing Co.*, Case No. 2023-CH-08102.

2. Plaintiffs allege violations of the Illinois Biometric Privacy Act ("BIPA"), 740 ILCS 14/1, et seq., and seek money damages, fees and costs, and injunctive and other equitable relief on behalf of a putative class. Compl. at 10 (Prayer for Relief).

3. TDM received service of the Complaint on October 3, 2023. Plaintiffs filed the acknowledgement of service in the Cook County Circuit Court on October 5, 2023. Pursuant to Illinois Supreme Court Rule 101(d) and 181(a), the date of service is therefore October 3, 2023.

**Grounds For Removal**

4. This lawsuit is subject to removal pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

5. Under CAFA, federal district courts have original jurisdiction over class actions where: (1) the amount in controversy exceeds the sum or value of $5,000,000; (2) any member of the putative class of plaintiffs is a citizen of a State different from any defendant; and (3) the putative class contains at least 100 members. 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B).

6. CAFA applies to an action that includes claims for classwide relief "before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).

7. The present action is a putative class action under Illinois law. *See* 735 ILCS 5/2-801; Compl. ¶ 32–36.

8. Specifically, Plaintiffs seek to represent a class consisting of "[a]ll persons whose face was scanned using [TDM's] timekeeping system in Illinois at any time from five years before the date of Plaintiffs' original complaint to the date the class is certified." Compl. ¶ 32.[2]

**A. The diversity requirement is satisfied.**

9. Under CAFA, the diversity of citizenship requirement is met if "any member" of the putative class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). For diversity purposes, a corporation "shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

10. TDM is incorporated in Michigan and has its principal place of business in Plymouth, Michigan. Exhibit D (First Decl. of D. Kamienecki) ¶¶ 2–3. As a result, TDM is a citizen of Michigan.

11. Plaintiffs allege that each of them is a citizen of Illinois. Compl. ¶ 8–9.

12. Accordingly, CAFA's requirement of minimal diversity between Plaintiffs and TDM is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

**B. The putative class consists of more than 100 members.**

13. A federal court has jurisdiction under CAFA when "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

14. Here, Plaintiffs' putative class encompasses all individuals whose faces were allegedly scanned by TDM over the last five years. Compl. ¶ 32. Plaintiffs allege that they and

---

[2] Plaintiffs exclude from their putative class "any judge presiding over the action and their families and staff" and "Defendant and its owners, officers, directors, parents, subsidiaries, successors, predecessors," as well as "Plaintiffs' and Defendant's counsel and their staffs." Compl. ¶ 32.

more than forty other TDM employees or temporary employees in Illinois are part of their proposed class. Compl. ¶ 33.

15. Plaintiffs allege that they observed "other workers clocking-in and out of Troy's timekeeping system" using facial scans.

16. During the five-year period prior to filing of the complaint, TDM hired more than 250 hourly employees and utilized more than 1,000 agency workers, Exhibit E (Second Decl. of D. Kamienecki) ¶ 2, who clocked in and out using TDM's timekeeping system.

17. Thus, although TDM denies any wrongdoing and that a class may be certified here, Plaintiffs' putative class consists of more than 100 members and this requirement for removal under CAFA is also satisfied.

**C.      The amount in controversy exceeds $5 million.**

18. An action is removable under CAFA if the "aggregated" claims of individual class members "exceed[] the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6). The removing defendant need only make a "good-faith estimate" of the amount in controversy that is "plausible and adequately supported by the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). This "estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

19. Here, Plaintiffs seek statutory damages for alleged intentional, reckless, or negligent violations of BIPA. Compl. at 10 (Prayer for Relief ¶ B). BIPA allows "[a]ny person aggrieved by a violation of this Act" to seek "for each violation" either $5,000 for an intentional or reckless violation or $1,000 for a negligent violation. 740 ILCS 14/20(1)–(2). Plaintiffs' requested relief therefore exceeds CAFA's amount-in-controversy requirement with **just 1,001 alleged intentional or reckless violations or 5,001 alleged negligent violations**.

4

20.     Plaintiffs seek to represent a broad class of TDM employees, alleging that they and other employees who used TDM's timekeeping system underwent biometric scans "[e]ach workday, at the start and end of their shifts."  Compl. ¶¶ 25–26.  According to Plaintiffs, they will seek to certify a class consisting of anyone "whose face was scanned using [TDM's] timekeeping system in Illinois at any time from five years before the date of the Plaintiff's original complaint." *Id.* ¶ 32.  Specifically, Plaintiffs allege that at least forty employees or temporary employees scanned biometric data each day while working at TDM.  *Id.* ¶¶ 18, 25, 33.  If each of these forty employees scanned biometric data twice each working day (once while clocking in and once while clocking out), they would reach over 5,001 violations in just under 63 working days.

21.     To be clear, TDM denies that Plaintiffs are entitled to class certification or any relief whatsoever.  But for purposes of this Court's *jurisdiction* over those claims under CAFA, TDM has hired or utilized more than 1,000 hourly employees and agency workers in Illinois in the five years preceding September 12, 2023, when Plaintiffs filed the Complaint.

22.      Accordingly, Plaintiffs' putative class claims seek a recovery far greater than necessary to satisfy BIPA's amount-in-controversy requirement.  *See Back Doctors Ltd.*, 673 F.3d at 829 (holding that "the suit's merits do not concern us" in determining whether CAFA's amount-in-controversy requirement is satisfied).

**Timeliness**

23.     TDM received service of the Complaint on October 3.  TDM is seeking removal within 30 days of that date.  Accordingly, this Notice of Removal is timely filed.  28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (removal clock starts running on the

5

date of service of "summons and complaint" or "receipt of the complaint . . . after and apart from service of the summons").

## Procedural Requirements

24.     In accordance with 28 U.S.C. § 1446(a), copies of the Complaint and all other process, pleadings, and other papers served on TDM in the state-court action are attached to this Notice as Exhibit A.

25.     Venue is proper in this Court and Division under 28 U.S.C. § 1441(a) because Plaintiffs' state-court action is pending in the Circuit Court of Cook County, Illinois, which is located in this district and division.

26.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached to this Notice as Exhibit A.  TDM has not yet answered the Complaint.

27.     Pursuant to 28 U.S.C. § 1446(d), TDM is providing prompt written notice of removal to Plaintiffs, and a Notice of Filing of Notice of Removal, together with a copy of this Notice of Removal, will be filed with the Clerk of the Cook County Circuit Court, Chancery Division.  Copies of these documents are attached to this Notice as Exhibits B and C.

6

November 2, 2023

Respectfully submitted via ECF,

 _/s/  Karen Kies DeGrand_
Karen Kies DeGrand, ARDC # 6191140
Donohue Brown Mathewson & Smyth LLC
140 S. Dearborn, Suite 800
Chicago, Illinois 60603
(312) 422-0900
degrand@dbmslaw.com

 _/s/  Katherine V.A. Smith_
Katherine V.A. Smith*
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
ksmith@gibsondunn.com

*Application for admission *pro hac vice* forthcoming

*Attorneys for Defendant Troy Design & Manufacturing Co.*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2023, I electronically filed the foregoing Notice of Removal with the Clerk of the Court using the CM/ECF system. I certify that I have also caused to be mailed by electronic mail and United States Postal Service the foregoing document to the following:

Keith J. Keogh
Michael S. Hilicki
55 W. Monroe
Suite 3390
Chicago, IL 60603
Phone: (317) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com


 */s/ Karen Kies DeGrand*
Karen Kies DeGrand, ARDC # 6191140
Donohue Brown Mathewson & Smyth LLC
140 S. Dearborn, Suite 800
Chicago, Illinois 60603
(312) 422-0900
degrand@dbmslaw.com



## Service of Process Transmittal Summary

**TO:**    Ruth Seitz
Troy Design & Manufacturing CO.
14425 SHELDON RD
PLYMOUTH, MI 48170

**RE:**    **Process Served in Illinois**

**FOR:**    TROY DESIGN & MANUFACTURING CO.  (Domestic State: MI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated vs. TROY DESIGN & MANUFACTURING CO. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summonses, Attachment(s), Complaint, Cover Sheet, Motion, Exhibit(s) |
| **COURT/AGENCY:** | Cook County Circuit Court - Law Division, IL<br>Case # 2023CH08102 |
| **NATURE OF ACTION:** | Violation of the Illinois Biometric Privacy Act |
| **PROCESS SERVED ON:** | C T Corporation System, Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 10/03/2023 at 13:41 |
| **JURISDICTION SERVED:** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, not counting the day of service |
| **ATTORNEY(S)/SENDER(S):** | Keith J. Keogh<br>Timothy Franklin & Darien Evans<br>55 W. Monroe St, Suite 3390<br>Chicago, IL 60603<br>312-726-1092 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/03/2023, Expected Purge Date: 10/08/2023<br><br>Image SOP<br><br>Email Notification,  Georgette Robin  grobin48@troydm.com<br><br>Email Notification,  Ruth Seitz  rseitz10@troydm.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Exhibit A



**CT Corporation**
**Service of Process Notification**
10/03/2023
CT Log Number 544852784

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Exhibit A



## PROCESS SERVER DELIVERY DETAILS

**Date:** Tue, Oct 3, 2023
**Server Name:** Sheriff Drop

| Entity Served | TROY DESIGN & MANUFACTURING CO. |
|---|---|
| Case Number | 2023CH08102 |
| Jurisdiction | IL |

| Inserts |
|---|
| |



Exhibit A

IRIS Y. MARTINEZ
* 5 0 3 3 CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24340537

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Timothy Franklin & Darien Evans, individually
and on behalf of others similarly situated,

                                    Plaintiff(s)

            v.

Troy Design & Manufacturing Co.,                Case No.    2023CH08102


c/o Registered Agent, C T Corporation System
208 S. LaSalle St., Ste. 814, Chicago, IL 60604

                    Address of Defendant(s)

Please serve as follows (check one):    ○ Certified Mail    ● Sheriff Service    ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE
COURTHOUSE**. You will need: a computer with internet access; an email address; a completed
Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/
appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Exhibit A

Summons - Alias Summons · (12/01/20) GCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer:  (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

| | |
|---|---|
| ⦿ Atty. No.: 39042 | Witness date _____ |
| ◯ Pro Se 99500 | 9/12/2023 3:30 PM IRIS Y. MARTINEZ |
| Name: Keith J. Keogh | |
| Atty. for (if applicable): | IRIS Y. MARTINEZ, Clerk of Court |
| Timothy Franklin & Darien Evans | ☐☐ Service by Certified Mail: _____ |
| Address: 55 W. Monroe St, Suite 3390 | ☐ Date of Service: _____ |
| City: Chicago | (To be inserted by officer on copy left with employer or other person) |
| State: IL   Zip: 60603 | |
| Telephone: 312-726-1092 | |
| Primary Email: Keith@KeoghLaw.com | |

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3

Exhibit A

* 5 0 3 3 7 3 2 7 *

# GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:  (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6441

### ALL SUBURBAN CASE TYPES
#### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:  (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:  (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:  (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:  (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:  (708) 232-4551

Exhibit A

IRIS Y. MARTINEZ
* 5 0 3 3 CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24340537

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**                                      **(12/01/20) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Timothy Franklin & Darien Evans, individually
and on behalf of others similarly situated,

_____

Plaintiff(s)

v.

Troy Design & Manufacturing Co.,                    Case No.    2023CH08102

_____

_____

c/o Registered Agent, C T Corporation System
208 S. LaSalle St., Ste. 814, Chicago, IL 60604

_____

Address of Defendant(s)

Please serve as follows (check one):   · - Certified Mail   • Sheriff Service   ·: Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE.** You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Exhibit A

**Summons - Alias Summons** · (12/01/20) GCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Atty. No.: 39042
Pro Se 99500

Name: Keith J. Keogh

Atty. for (if applicable):

Timothy Franklin & Darien Evans

Address: 55 W. Monroe St, Suite 3390

City: Chicago

State: IL   Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Witness date _____

9/12/2023 3:30 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3

*Exhibit A*

*5 0 3 3 7 3 2 7 *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                OR
                ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

Exhibit A

earing Date: No hearing information was found. Case: 1:23-cv-15610 Document #: 1 Filed: 11/02/23 Page 18 of 248 PageID #:18
ocation: No hearing information was found.
udge: No hearing information was found.

9/12/2023 1:16 PM
* 5 0 3 3 IRISY.2MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
Firm No. 39242 2023CH08102
Calendar, 1
24335345

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 2023CH08102 |
| v. | ) ) ) |
| TROY DESIGN & MANUFACTURING CO. | ) ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs, Timothy Franklin and Darien Evans, bring this class action complaint against

Defendant, Troy Design & Manufacturing Co. ("Troy"), for its violation of the Illinois Biometric

Privacy Act, and allege:

### NATURE OF THE ACTION

1.      When workers are hired at Troy, they scan their facial geometry into its biometric

timekeeping system. Thenceforth, an employee must present their face to the system to "punch"

in or out of work each day, so Troy can record the employee's arrival, departure and break times.

2.      The use of a biometric timekeeping system in the workplace entails serious risks.

Unlike key fobs or identification cards, which can be changed or replaced if stolen or

compromised, facial geometry is a permanent, unique biometric identifier associated with the

worker. This exposes workers to serious and irreversible privacy risks. For example, if a device or

database containing workers' facial geometry data is hacked, breached, or otherwise exposed,

Exhibit A

workers have no means by which to prevent identity theft and unauthorized tracking.

3.      Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), to regulate companies that collect and store biometric information based on facial geometry or other biometric identifiers.

4.      Despite BIPA's protections, Troy disregarded its workers' privacy rights, unlawfully collected, stored, and/or used their biometric information in violation of the BIPA. Specifically, Troy violated the BIPA by failing to:

- Inform its workers in writing it was storing their facial geometry data;

- Inform its workers in writing of the specific purposes and length of time for which it was collecting, storing, and using their facial geometry data;

- Provide a publicly available retention schedule and guidelines for permanently destroying its workers' facial geometry data; or

- Obtain written releases from its workers allowing it to collect, capture, or otherwise obtain their geometry data.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Troy pursuant to 735 ILCS 5/2-209(a) because Troy transacts business and committed tortious acts in Illinois.

6.      Venue is proper because Troy employs Illinois staff at 3400 E. 126th Pl., Chicago, Illinois 60633, and the actions alleged herein occurred in whole or in part at that location.

## PARTIES

7.      Plaintiff, Timothy Franklin, is a natural person who resides in Cook County, Illinois.

8.      Plaintiff, Darien Evans, is a natural person who resides in Cook County, Illinois.

9.      Defendant Troy is a wholly owned subsidiary of Ford Motor Company, that owns and operates an Illinois workshop to modify or customize Ford fleet vehicles.

150834

Exhibit A

## FACTUAL BACKGROUND

I.    **The Biometric Information Privacy Act.**

10.    In the 2000's, major national corporations started using locations in Illinois to test new applications of biometric-facilitated transactions. *See* 740 ILCS 14/5(b).

11.    Biometrics are unlike other identifiers. For example, when an identification card or number is compromised, it can be changed. Biometrics, however, are biologically unique to the individual. Thus, once compromised, the individual has no recourse, and is at heightened risk for identity theft. *See* 740 ILCS 14/5(c).

12.    In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature because suddenly there was a serious risk that citizens' fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections. The bankruptcy also highlighted that many persons who used that company's biometric scanners were unaware that the scanners were transmitting their data to the now-bankrupt company, and that their biometric identifiers could then be sold to unknown third parties.

13.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); and *see* 740 ILCS 14/5(g).

14.    The BIPA makes it unlawful for a company to collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it *first*:

3

Exhibit A

(1) informs the person in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the person in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the person whose biometric identifier or biometric information is being collected, stored, or used.

740 ILCS 14/15(b).

15.     These restrictions were specifically meant to apply to Illinois workers. The BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     The BIPA also requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

17.     The BIPA further prohibits a private entity in possession of a biometric identifier or information from selling, leasing, trading, or otherwise profiting from that information, and it generally prohibits disclosing or disseminating a person's biometric identifier or information without the person's consent. 740 ILCS 14/15(c) and (d).

18.     By the time Illinois enacted the BIPA in 2008, many companies that had experimented with using biometric data as an authentication method stopped. That is because Pay By Touch's bankruptcy, described above, was widely publicized and brought attention to the public's discomfort with the use of their biometric data. Despite the recognized dangers of using biometric data, a number of companies still use biometric scanners to identify their workers.

Exhibit A

19.     Troy was one such company during Plaintiffs' time there. When Plaintiffs were hired to work at Troy, they had to scan their face into Troy's facial-recognition timekeeping system, which recorded their facial geometries.

20.     Unlike a traditional timekeeping system that allows workers to "punch" in and out using a card or key fob, Troy's system requires the employee to stand before a camera that "reads" the employee's facial points and contours, and then compares that information to stored facial geometry information the system has for that worker.

21.     The Federal Trade Commission ("FTC") has raised concerns about the use of facial-recognition technology, and released a "Best Practices" guide in 2012. In the guide, the FTC underscores the importance of obtaining affirmative consent before collecting a person's biometric identifiers and information, and maintaining appropriate "retention and disposal" practices for any biometric data collected.

22.     Despite using this technology, and despite the fact BIPA has been the law for more than a decade, Troy did not (a) inform its workers in writing that it would capture or store their facial geometry information; (b) inform its workers in writing of the specific purposes and length of time for which it would capture, store, and use their facial geometry information; or (c) obtain a written release from each worker authorizing Troy to capture or store their facial geometry information, thus violating BIPA.

23.     Also, Troy did not give its workers a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying its employees' facial geometry information when its initial purpose for capturing that information was no longer relevant, as required by the BIPA. Thus, when a worker stopped working for Troy, the worker was not told

5

150834

Exhibit A

when their biometric information would be removed from Troy's database—if ever—in further violation of BIPA.

## II.    Plaintiffs' Factual Allegations

24.    Plaintiffs were each hired as temporary mechanics for Troy's Chicago location.

25.    Each workday, at the start and end of their shifts, Plaintiffs were required to look into a device attached to Troy's timekeeping system to allow it to scan their facial geometries. The system would then compare the scan to the facial geometry information the system had on file for them, so it could identify them and mark the time of their arrival or departure from work.

26.    Plaintiffs observed other workers clocking-in and out of Troy's timekeeping system in the same manner.

27.    Troy stored or caused Plaintiffs' and other workers' facial geometry information to be stored in its computer system.

28.    Plaintiffs were never specifically informed of the purposes or length of time for which Troy collected, stored, or used their facial geometry information.

29.    Plaintiffs were not informed of any biometric data retention policy at Troy, nor were they informed of whether Troy would ever permanently delete their facial geometry information.

30.    Plaintiffs were never provided with nor signed a written releases allowing Troy to collect or store their facial geometry information.

31.    As a result of Troy's actions, Plaintiffs are concerned about what happened to the biometric information Troy collected for them, whether Troy deleted their information, and whether (and with whom) Troy may have shared their information.

150834

Exhibit A

## CLASS ALLEGATIONS

32.     Plaintiffs bring this action on behalf of themselves and the following class of
similarly-situated individuals:

> All persons whose face was scanned using Troy's timekeeping
> system in Illinois at any time from five years before the date of
> Plaintiffs' original complaint to the date the class is certified. The
> following people are excluded from the Class:   (1) any judge
> presiding over the action and their families and staff (2) Defendant
> and its owners, officers, directors, parents, subsidiaries, successors,
> predecessors; and (3) Plaintiffs' and Defendant's counsel and their
> staffs.

Plaintiffs reserve the right to amend this definition following discovery about the class.

33.     The class is so numerous that joinder is impracticable. Plaintiffs worked at Troy

five to six days a week for months and, based on their observations, they estimate Troy had forty

persons working at a time during their employment, and observed new temporary workers were

brought in on a regular basis. Further, Plaintiffs observed Troy had its other workers use its facial-

geometry-scanning timekeeping system to "punch" in and out, and thus it collected, captured,

received, or otherwise obtained biometric identifiers or information from each worker.

34.     There are questions of law or fact common to the Class that predominate over any

questions that may affect individual members. The common questions include, but are not

necessarily limited to:

> a) whether Troy collected, captured, or otherwise obtained the Class's
>    biometric identifiers or information;
>
> b) whether Troy informed Class members in writing of the specific
>    purposes for collecting, using, and storing their biometric identifiers or
>    information, and the length of time it would store or use them;
>
> c) whether Troy obtained a written release (as defined in 740 ILCS 14/10)
>    to collect, use, and store the Class's biometric identifiers or information;

7

Exhibit A

* 5 0 3 3 7 3 2 7 *

d)  whether Troy disclosed or re-disclosed the Class members' biometric identifiers or information to any third party;

e)  whether Troy sold, leased, traded, or otherwise profited from the Class's biometric identifiers or information;

f)  whether Troy developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information;

g)  whether Troy complies with any such written policy;

h)  whether Troy violated the BIPA; and

i)  whether Troy's BIPA violations were negligent, reckless, or intentional.

35.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex and class action litigation. Plaintiffs have no interests antagonistic to those of the Class.

36.     A class action is appropriate to resolve the claims at issue because: (i) the prosecution of separate actions by the members of the Class would wastefully burden the judicial system with the need to resolve the common factual and legal questions this case presents over and over; (ii) requiring members of the Class to prosecute their own individual lawsuits would work an injustice, as it would prevent class members who are unaware they have a claim, or lack the time, ability, or wherewithal to bring their own lawsuit and find a lawyer willing to take their case, from obtaining relief; (iii) requiring individual class member lawsuits would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, or create conflicting and incompatible standards of conduct; and (iv) proceeding on a class basis will not create any significant difficulty in the management of this litigation, as the class members' claims can be proven from Troy's

150834

Exhibit A

business records and, having been employed by Troy, class members will be easily identified from Troy's business records.

## COUNT I
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiffs and the Class)

37.    Plaintiffs incorporate the above allegations as if fully set forth herein.

38.    The BIPA requires companies to obtain informed written consent from workers before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's ....
biometric identifier or biometric information, unless [the entity] first: (1) informs the subject ....
in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject .... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

39.    The BIPA also mandates that companies in possession of a biometric identifiers or information establish and maintain a satisfactory biometric data retention and—importantly—deletion policy. Specifically, such companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining that data has been satisfied (*e.g.*, when the employment relationship ends); and (ii) actually adhere to that schedule. *See* 740 ILCS 14/15(a).

40.    Plaintiffs and class members are individuals whose "biometric identifiers" or "biometric information," as defined by the BIPA, were collected by Troy. *See* 740 ILCS 14/10.

9

Exhibit A

41.     Troy captured Plaintiffs' and the class members' facial geometry information to identify them.

42.     Troy is a corporation, and thus a "private entity" subject to BIPA. *See* 740 ILCS 14/10.

43.     Nevertheless, Troy negligently, recklessly, or intentionally violated the BIPA's mandates. Troy owed Plaintiffs and class members an obligation to comply with their BIPA rights, but instead violated their BIPA rights.

44.     Troy's violation of Plaintiffs' and the class members' BIPA rights renders it liable to Plaintiffs and the Class members for $1,000 or $5,000 in liquidated damages per violation, plus equitable relief, attorneys' fees, and costs. 740 ILCS 14/20.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Timothy Franklin and Darien Evans, on behalf of themselves and the Class, respectfully request that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above (or on behalf of such other class the Court deems appropriate), appointing Plaintiffs as representatives of the Class, and appointing their attorneys as class counsel;

B.      Awarding liquidated damages of $1,000 for each negligent violation, and $5,000 for each intentional or reckless violation, of the BIPA that Troy committed;

C.      Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an order requiring Troy to destroy their biometric identifiers and information after termination of their relationship;

D.      Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs; and

E.      Awarding such other and further relief as equity and justice may require.

150834

Exhibit A

Dated: September 12, 2023

Respectfully submitted,

s/*Keith J. Keogh*
Keith J. Keogh
Michael S. Hilicki
KEOGH LAW, LTD.
Firm No. 39042
55 W. Monroe
Ste. 3390
Chicago, IL 60603
312.726.1092 (ph)
312.726.1093 (fax)
keith@keoghlaw.com
mhilicki@keoghlaw.com

150834

Exhibit A

earing Date: No hearing information was found.
ocation: No hearing information was found.
Judge: No hearing information was found.

Case: 1:23-cv-15610 Document #: 1 Filed: 11/02/23 Page 29 of 248 PageID #:29

IRIS Y. MARTINEZ
* 5 0 3 3 CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24335345

**Chancery Division Civil Cover Sheet**
**General Chancery Section**

(12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Timothy Franklin & Darien Evans, individually and on behalf of o

Plaintiff

v.

Troy Design & Manufacturing Co.

Defendant

**2023CH08102**

Case No: _____

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

0005 ☐ Administrative Review
0001 ☑ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

0007 ☐ General Chancery
0010 ☐ Accounting
0011 ☐ Arbitration
0012 ☐ Certiorari
0013 ☐ Dissolution of Corporation
0014 ☐ Dissolution of Partnership
0015 ☐ Equitable Lien
0016 ☐ Interpleader

0017 ☐ Mandamus
0018 ☐ Ne Exear
0019 ☐ Partition
0020 ☐ Quiet Title
0021 ☐ Quo Warranto
0022 ☐ Redemption Rights
0023 ☐ Reformation of a Contract
0024 ☐ Rescission of a Contract
0025 ☐ Specific Performance
0026 ☐ Trust Construction
0050 ☐ Internet Take Down Action (Compromising Images)

☐ Other (specify) _____

⦿ Atty. No.: 39042      ( ) Pro Se 99500

Atty Name: Keith J. Keogh

Atty. for: Timothy Franklin & Darien Evans

Address: 55 W. Monroe St, Suite 3390

City: Chicago          State: IL

Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

Exhibit A

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/12/2023 1:40 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24336215

TIMOTHY FRANKLIN & DARIEN EVANS,                )
individually and on behalf of others similarly   )
situated,                                         )
                                                  )
                        Plaintiffs,               )        Case No.: 2023CH08102
                                                  )
v.                                                )
                                                  )
                                                  )
TROY DESIGN & MANUFACTURING CO.                   )
                                                  )
                        Defendant.                )

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, Timothy Franklin and Darien Evans, pursuant to 735 ILCS 5/2-801, *et seq.*,

move for certification of this case as a class action to remedy Defendant's systematic violations of

the Biometric Information Privacy Act ("BIPA").

1.      Every court to consider the issue has found BIPA actions well-suited for class

treatment because BIPA cases involve identical claims arising under a single statutory scheme

where liability turns on a uniform course of conduct — the defendant's failure to comply with

BIPA's requirements before collecting and possessing the Class's biometric data. As one court put

the point when certifying analogous BIPA claims: "[t]his case involves a single statutory scheme

— BIPA — and the issues presented can be summarized in a straightforward way: Did the

[defendant] capture biometric information from members of the class, and if so, did they comply

with BIPA by doing so. These questions are what will consume the bulk of the time at trial."

Exhibit 1 (*Roberson v. Symphony Post Acute Care Network, et al.*, No. 17-L-733 (Cir. Ct. St. Clair

1

Exhibit A

Cty., March 12, 2019 Order)) at p.9; *see also Rogers v. Bnsf Ry. Co.*, No. 19 C 3083, 2022 U.S.

Dist. LEXIS 50847 at *8 (N.D. Ill. Mar. 22, 2022) ("[T]he questions of law and fact underlying

the class members' BIPA claims are essentially identical and will be premised on common proof.

Specifically, the common issue of demonstrating BNSF operated the AGS and collected biometric

information in violation of BIPA will predominate over any potential individualized issues.");[1] *In*

*re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no

doubt that a template-based class poses common legal and factual questions, namely: did

[defendant] … harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant]

give users prior notice of these practices and obtain their consent?"); and Exhibit 2 (*Morris v. Wow*

*Bao, LLC, et al.*, No. 17-L-12029 (Cir. Ct. Cook Cty, Dec. 14, 2021 Hearing Tr.)) at p.28 (granting

contested motion to certify class of customers who used defendants' facial recognition kiosks).

    2.     This case is no different. Plaintiffs allege Defendant violated these same obligations

in the exact same manner as to Plaintiffs and their co-workers, rendering Defendant liable to all of

them for statutory damages, and thus they seek to remedy this uniform conduct on a class basis.[2]

**I.**    **BIPA**

    3.     The use of a biometric timekeeping system entails serious risks. Unlike key fobs

or identification cards—which can be changed or replaced if stolen or compromised—one's facial

geometry is a permanent, unique biometric identifier associated with the worker. Thus, once

---

[1] Because the procedural requisites of class certification are virtually the same as to certain requirements under 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal decisions cited herein. *See Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 761 (2d Dist. 2008).

[2] This motion is filed as a prophylactic measure to prevent the "pick off" of the named plaintiffs, and will be supplemented with a memorandum of law and additional support after adequate discovery. *See Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 457 (2011) (where a tender of relief is made before the filing of a motion for class certification, the interests of the other class members are not before the court, and the case may properly be dismissed.)

168932

Exhibit A

compromised, the individual has no recourse, and is at heightened risk for identity theft. *See* 740

ILCS 14/5(c). For example, if a device or database containing facial geometric data is hacked,

breached, or otherwise exposed, workers have no means by which to prevent identity theft and

unauthorized tracking.

4.     In late 2007, a biometrics company called Pay by Touch—which provided

retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer

transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature

because suddenly there was a serious risk that citizens' fingerprint records—which, like other

unique biometric identifiers, can be linked to people's sensitive financial and personal data—

could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without

adequate protections.

5.     Recognizing the "very serious need [for] protections for the citizens of Illinois

when it [came to their] biometric information," Illinois enacted the BIPA the following year. *See*

Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); and *see* 740 ILCS

14/5(g).

6.     In order to vindicate BIPA's important privacy-protections, Plaintiffs seek to have

this Court certify the following class:

> All persons whose face was scanned using Troy's timekeeping
> system in Illinois at any time from five years before the date of
> Plaintiffs' original complaint to the date the class is certified. The
> following people are excluded from the Class: (1) any judge
> presiding over the action and their families and staff (2) Defendant
> and its owners, officers, directors, parents, subsidiaries, successors,
> predecessors; and (3) Plaintiffs' and Defendant's counsel and their
> staffs.

7.     The proposed class is ideal for certification because each class member's claim

arises from the same uniform course of conduct by Troy, and is thus based on the same facts and

Exhibit A

subject to the same defenses. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("there is no doubt that a template-based class poses common legal and factual questions, namely: did [defendant] ... harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant] give users prior notice of these practices and obtain their consent?"), *aff'd* 932 F.3d 1264 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 937 (2020).[3]

## II.    FACTS

8.      The complaint's allegations are "taken as true for purposes of determining class certification." *Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 234 (1st Dist. 2010).

9.      Plaintiffs were each hired as temporary mechanics for Troy's Chicago location. [Cmplt. ¶24].

10.      Each workday, at the start and end of their shifts, Plaintiffs were required to look into a device attached to Troy's timekeeping system to allow it to scan their faces. The system would then compare the scan to the facial geometry information the system had on file for them, so it could identify them and mark the time of their arrival or departure from work. [*Id.* ¶25].

11.      Plaintiffs observed other workers clocking-in and out of Troy's timekeeping system in the same manner. [*Id.* ¶26].

12.      Plaintiffs were never specifically informed of the purposes or length of time for which Troy collected, stored, or used their facial geometry information. [*Id.* ¶28].

---

[3] Again, because the procedural requisites of class certification are virtually the same as to certain requirements under 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal decisions cited herein. *See Cruz*, 383 Ill. App. 3d at 761.

168932

*Exhibit A*

13.     Plaintiffs also were not informed of any biometric data retention policy at Troy, nor were they informed of whether Troy would ever permanently delete their facial geometry information. [Cmplt. ¶29].

14.     Plaintiffs were never provided with nor signed written releases allowing Troy to collect or store their facial geometry information. [*Id*. ¶30].

## III.    THIS CASE MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION.

15.     Class certification is a matter for the Court's discretion, so long as that discretion is "exercised within the framework of the rules of civil procedure governing class actions." *S37 Mgmt. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496 at ¶15 (citation omitted). In making this determination, however, "the court accepts the allegations of the complaint as true" and "should err in favor of maintaining class certification." *Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 234 (1st Dist. 2010) (citation omitted).

16.     Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable ("Numerosity"), (2) there are one or more questions of law or fact common to the class that predominate over any questions affecting only individual members ("Commonality"), (3) the representative parties will fairly and adequately protect the interests of the class ("Adequacy"); and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy ("Appropriateness"). 735 ILCS 5/2-801. As explained below, each of these requirements is easily met here.

17.     <u>Numerosity</u>. The class must be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). It is not necessary to provide a precise class-size figure, but rather simply present a basis to find the class is sufficiently large as to make joinder of all members impracticable. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("a good-

Exhibit A

faith, nonspeculative estimate will suffice . . . .") (citations omitted). In general, a class of at least

forty members is sufficient. *See Chavez v. Don Stoltzner Mason Contr., Inc.*, 272 F.R.D. 450, 454

(N.D. Ill. 2011);[4] *Faison v. RTFX, Inc.*, 2014 IL App (1st) 121893 at ¶65 (reversing order

dismissing the class allegations, finding "at least 52" members is enough).

18.      This low threshold is met here because Plaintiffs worked at Troy five to six days a

week, based on their observations they had approximately forty co-workers, they observed their

fellow co-workers also had to scan their faces into Troy's time-keeping system, and they observed

Troy brought in additional workers on a regular basis. [Cmplt. ¶33]. Thus, Plaintiffs reasonably

estimate the class includes well over forty members. *See Cruz, supra*, at 771 ("a good-faith, non-

speculative estimate will suffice"). Accordingly, §2-801(1)'s numerosity requirement is met.

19.      <u>Commonality</u>. "Determining whether issues common to the class predominate over

individual issues requires the court to identify the substantive issues that will control the outcome,

assess which issues will predominate, and then determine whether these issues are common to the

class." *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 54-55 (1st Dist. 2007).

This requirement is met because the substantive issues that control the outcome of this case are

common, including but not limited to:

    a.  Whether Troy collected, captured, or otherwise obtained the Class's biometric
        identifiers or information;

    b.  Whether Troy informed the Class in writing of the specific purposes for
        collecting, using, and storing their biometric identifiers or information, and the
        length of time it would store or use them;

    c.  Whether Troy obtained a written release (as defined in 740 ILCS 14/10) to
        collect, use, and store the Class's biometric identifiers or information;

---

[4]  Because the procedural prerequisites of class certification are virtually the same under both 735
ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt
the reasoning of the federal decisions cited herein. *See Cruz*, 383 Ill. App. 3d at 761.

168932

Exhibit A

    d.   Whether Troy developed a written policy, available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information, and complied with its policy;

    e.   Whether Troy violated the BIPA; and

    f.   Whether Troy's BIPA violations were negligent, reckless, or intentional

    20.    These common questions predominate because their "successful adjudication" for Plaintiffs "will establish a right of recovery in favor of the other class members." *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶17. For example, a finding Troy systematically failed to inform the Class in writing of the specific purposes for collecting, using, and storing their biometric identifiers or information, and the length of time it would store or use them, or establish a publicly-available written policy for retaining and destroying this information, or obtain signed releases from them, would establish a right of recovery for both Plaintiffs and the entire class. *See* Exhibit 1 (*Roberson*, No. 17-L-733 (Cir. Ct. St. Clair Cty., March 12, 2019 Order)) at p.10 ("the Court finds that common questions of fact or law will predominate this case as a whole … it arises under a single simple statute …"); *see also Rogers*, 2022 U.S. Dist. LEXIS 50847 at *8 ("[T]he questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof."); *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 545 ("[T]here is no doubt that a template-based class poses common legal and factual questions, namely: did [defendant] … harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant] give users prior notice of these practices and obtain their consent?").

    21.    Adequacy. This element requires that the named plaintiffs' interests not be antithetical to the interests of the unnamed class members, and that the plaintiffs' counsel be "qualified, experienced and generally able to conduct the proposed litigation." *See Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 338-39 (1977); *Ramirez*, 378 Ill. App. 3d at 56. Plaintiffs

168932

Exhibit A

meet these requirements because their interests are fully-aligned with the Class's interests. [See Exhibit 3 (Franklin Declaration) at ¶7; and Exhibit 4 (Evans Declaration) at ¶7]. Their claims each arise from the same underlying uniform course of conduct, and materially identical violations of the BIPA. Moreover, as a result of Troy's uniform violations, Plaintiffs and Class are entitled to recover the same statutory damages under BIPA. *See* 740 ILCS 14/20. Thus, Plaintiffs are adequate. *See Steinberg*, 69 Ill. 2d at 338 ("Here plaintiffs' interests are not antithetical to those of other members of the class, but are the same.").

22.     Likewise, Plaintiffs' counsel have decades of class action litigation experience, and have been found adequate and appointed class counsel in numerous cases. [*See* Exhibit 5 (Keogh Declaration) at ¶2-¶9].

23.     Appropriateness. A class action satisfies the "appropriateness" requirement if it "can best secure economies of time, effort, and expense or accomplish the other ends of equity and justice that class actions seek to obtain." *Ramirez*, 378 Ill.App.3d at 56. This case easily meets the test.

24.     A class action will best secure economies of time, effort and expense here because it will resolve thousands of identical claims in one fell swoop instead of requiring individual litigation of the same issues over and over. Likewise, a class action will accomplish the ends of equity and justice because the class members are individuals, their claims are relatively small, and there is no reason to assume that most or even many of them possess the time, energy and wherewithal to try to vindicate their rights on their own. As noted by the Illinois Appellate Court:

> Our courts have recognized that, 'in a large and impersonal society, class actions are often the last barricade of consumer protection.' [citation omitted] The consumer class action is an inviting procedural device to address frauds that cause small damages to large groups. When brought by plaintiffs who have no other avenue

Exhibit A

> of legal redress, the consumer class action provides restitution to the
> injured and deterrence to the wrongdoer.

*Gordon v. Boden*, 224 Ill. App. 3d 195, 204 (1st Dist. 1991); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 545 ("A class action is clearly superior to individual proceedings here. While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs ... The class will be manageable because members can be identified in a straightforward way."); and Exhibit 1 (*Roberson*, No. 17-L-733 (Cir. Ct. St. Clair Cty., March 12, 2019 Order)) at p.14 ("Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.").

25.     Finally, our appellate court holds the demonstration "the first three prerequisites of section 2-801 have been established makes it evident that the fourth requirement has been fulfilled as well." *Gordon*, 224 Ill. App. 3d at 204 (citing *Steinberg*, 69 Ill. 2d at 339). As shown, that is the case here. Accordingly, for all of the above reasons, a class action is appropriate for resolving this dispute.

26.     Because this case meets all of the requirements for class certification, this motion should be granted, and the proposed class should be certified.

27.     Plaintiffs will submit a supplemental memorandum in support of this motion upon the completion of appropriate discovery.

## IV.     CONCLUSION

It is beyond reasonable dispute this case satisfies the class requirements of 735 ILCS 5/2-801. To the extent Troy nonetheless chooses to contest class certification, discovery will quickly confirm that the requirements of 735 ILCS 5/2-801 are met. Accordingly, Plaintiffs request the following relief:

Exhibit A

a.  Entry of a scheduling order setting dates for Plaintiffs to file a memorandum in support of this motion (and for the parties to file response and reply briefs) after the completion of appropriate discovery;

b.  An order certifying the proposed class as defined above (or such amended definition the Court finds to be appropriate under the law and facts);

c.  Appointment of Plaintiffs as representative of the class; and

d.  Appointment of Plaintiffs' attorneys as class counsel.

Dated: September 12, 2023                    Respectfully submitted,

By:    s/*Keith J. Keogh*
       Keith J. Keogh
       Michael S. Hilicki
       KEOGH LAW, LTD.
       55 West Monroe Street, Suite 3390
       Chicago, Illinois 60603
       (312) 726-1092
       keith@keoghlaw.com
       mhilicki@keoghlaw.com
       Firm 39042

       *Counsel for Plaintiffs*

168932

Exhibit A

# EXHIBIT 1

* 5 0 3 3 7 3 2 7 *

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on )
behalf of all others similarly situated, )
                                          )
Plaintiff, )
                                          )
                                          )     Case No. 17 -L- 733
v. )
                                          )
SYMPHONY POST ACUTE CARE )
NETWORK; SYMPHONY SYCAMORE )
LLC; SYMPHONY HEALTHCARE LLC; )
SYMPHONY M.L. LLC; SYMPHONY )
MONARCH HOLDINGS, LLC; and DOE )
DEFENDANTS 1-100, )
                                          )
Defendants. )

```
                    FILED
                ST. CLAIR COUNTY

                 MAR 1 2 2019

35                        CIRCUIT CLERK
```

**MEMORANDUM AND ORDER**
**ON CLASS CERTIFICATION**

     The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1] The Court hereby **ORDERS**:

**I.**     **NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

     Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois. Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA"). Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

     BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

1

Exhibit A

* 5 0 3 3 7 3 2 7 *

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id.* at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers

or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

* 5 0 3 3 7 3 2 7 *

Plaintiff alleges none of these requirements were met when capturing her biometric

information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act
> shall have a right of action in a State circuit court . . . against an offending
> party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act,
> liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this
> Act, liquidated damages of $5,000 or actual damages, whichever is
> greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of

BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were

captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network").

She seeks to certify a class of Illinois citizens who had their biometric information or biometric

identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated

subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased,
> received through trade, or otherwise obtained in Illinois at any location associated with
> the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set
> forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and
> affiliates of any person or business associated with the Symphony Post Acute Care
> Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court
> presiding over this action.

## II.     LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

3

* 5 0 3 3 7 3 2 7 *

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.*, 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

### III.  FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

4

Exhibit A

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV.     SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where − as here − the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case. All class members are citizens of Illinois. All are proceeding principally under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

  a. Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

  b. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

  c. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

  d. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra*, the Court also does not consider which class members will ultimately prevail. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

Exhibit A

authorized representative?

e.   If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.   Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.   whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

7

* 5 0 3 3 7 3 2 7 *

b.  whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.  whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.  whether that injury exceeds the liquidated damages provision in BIPA,

e.  whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.  whether that entity acted negligently or willfully with respect to that particular class member,

g.  whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019).  As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification.  "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same).  At most, if damage questions do present significant issues, they can be handled in ancillary proceedings.  "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

Exhibit A

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

9

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V.   THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

Exhibit A

two components: (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate. Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson. The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive. Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members. Her deposition responses did not contradict that. In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein. Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

Exhibit A

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI.  FOURTH FACTOR:  THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

12

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline. This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously established, it is not the province of the Court to decide these issues on a motion to certify a class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability." Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea. Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities. Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network. Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

Exhibit A

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

## VII. ORDER AND FINDINGS.

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

Exhibit A

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE**: March 12, 2019.

Icehtaun
_____
Hon. Kevin T. Hoerner

15

# EXHIBIT 2

MORRIS v WOW BAO – 17-CH-12029
COURT HEARING – 11/17/2021

1          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2            COUNTY DEPARTMENT, CHANCERY DIVISION

3

4    REGINA MORRIS, on behalf of          )
     herself and all others similarly     )
5    situated,                            )
                                          )
6            Plaintiff,                    )
                                          )
7        vs.                              )No. 17-CH-12029
                                          )
8    WOW BAO LLC, WOW BAO FRANCHISING     )
     LLC and LETTUCE ENTERTAIN YOU        )
9    ENTERPRISES, INC.,                   )
                                          )
10           Defendants.                   )

11

12

13              TRANSCRIPT OF PROCEEDINGS

14    at the hearing in the above-entitled cause before

15    THE HONORABLE ALLEN P. WALKER, Judge of said Court,

16    on December 14, 2021, via Zoom remote videoconference

17    platform, reported by Nohemi Salazar-Pitts, Certified

18    Shorthand Reporter for the State of Illinois,

19    commencing at 2:00 p.m. Central Time.

20

21

22

23

24

Exhibit A

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1   REMOTE APPEARANCES:

 2

 3   STEPHAN ZOURAS, LLP
     BY:  MR. ANDREW C. FICZKO, ESQUIRE
 4   100 North Riverside Plaza
     Suite 2150
 5   Chicago, Illinois  60606
     Phone:  (312) 233-1550
 6   E-mail:  aficzko@stephanzouras.com

 7            Appeared on behalf of the Plaintiffs;

 8

 9   FOLEY & LARDNER LLP
     BY:  MR. CHRISTOPHER G. WARD, ESQUIRE
10   321 North Clark Street
     Chicago, Illinois  60654
11   Phone:  (312) 832-4364
     E-mail:  cward@foley.com

12
             Appeared on behalf of Defendant Wow
13           Bao LLC.

14

15

16

17

18

19

20

21

22

23

24
```

Exhibit A

```
 1                    (The following proceedings were had
 2                    via remote videoconferencing:)
 3              THE CLERK:  Morris vs. Wow Bao,
 4  17-CH-12029.
 5              MR. FICZKO:  Good afternoon, your Honor.
 6  Andy Ficzko on behalf of the Plaintiff.
 7              MR. WARD:  And Christopher Ward on behalf
 8  of the Defendant.
 9              THE COURT:  Good afternoon.  All right
10  there's also a Jessica.
11                    (Whereupon, a discussion was had
12                    off the record.)
13              THE COURT:  This is on the Plaintiff's
14  petition to certify a class?
15              MR. FICZKO:  Correct, your Honor.
16              THE COURT:  You may proceed.
17              MR. FICZKO:  Thank you, your Honor.  As
18  you just indicated before the court, it is Plaintiff's
19  motion to certify a class of a little over 1300
20  Illinois consumers asserting identical claims under
21  the Biometric Information Privacy Act, or BIPA.
22                    Specifically, these individuals were
23  customers of a Wow Bao restaurant who used facial
24  recognition at an ordering kiosk at one of Wow Bao's
```

MORRIS v WOW BAO – 17-CH-12029
COURT HEARING – 11/17/2021

1  stores from approximately 2016 through 2017.  To

2  facilitate faster checkouts and higher sales volume,

3  while minimizing payroll costs, the Defendants

4  implemented facial recognition self-ordering kiosks at

5  three of its restaurants that used a customer's facial

6  geometry as a means of identification for ordering

7  food and drinks.

8             When a customer chooses the facial

9  recognition feature, the kiosk built-in facial

10  recognition camera collects the customer's facial

11  geometry and stores the data on its database.  When a

12  customer returns to place a later order, they can

13  recall their previous orders with facial recognition.

14             The facial recognition cameras

15  compare basically the live image of a customer's face

16  with the facial geometry stored in the cloud database

17  until it makes a match.  When a match is found, the

18  kiosk pulls up the customer's orders associated with

19  the customer's guest account.  So basically what

20  happens is a customer would simply walk up to the

21  kiosk and the kiosk would recognize them from their

22  facial geometry for purposes of recalling and placing

23  orders.

24             Through this biometric tracking

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   system, the Defendants collected, used, stored, and

2   disclosed its customers' facial geometry when they

3   were customers at their restaurants, all while failing

4   to comply with the simple, easy-to-follow BIPA

5   requirements.

6              For example, Defendants did not

7   inform them of the purpose and the length of time that

8   their biometric data was being collected, stored, and

9   used, and it did not make available to the public a

10  retention schedule and guidelines for the destruction

11  of its customers' biometric data, and they did not

12  receive a release to collect, store, and use their

13  biometric information, nor did they receive consent to

14  disclose this biometric data to third parties such as

15  Nextep Systems Inc. in this case which hosted the

16  biometric data.

17              The same evidence, the same common

18  evidence shows that the Defendants uniformly violated

19  BIPA in the same way for all 1,369 customers who used

20  their facial recognition kiosk by collecting and

21  disclosing their biometric data.  And what I mean by

22  "biometric data" is biometric information and

23  biometric identifiers as defined by BIPA, all without

24  complying with BIPA.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1          Basically, the Defendants concede

2 that this case meets the requirements for class

3 certification; they only argue that this motion should

4 be denied because it may be more difficult than they

5 anticipated to compile a class list.  But the law is

6 clear:  We don't need to name specific individuals who

7 are possible class members.  There's no such rule that

8 requires a so-called administrative feasibility

9 requirement.

10          Policy reasons also call for this

11 court to reject such a requirement because it's

12 inconsistent with the general rule that direct notice

13 to the class is not required by due process.  In fact,

14 there are a number of ways to identify class members,

15 including through self-identification.  Notice can

16 also be made by publication if necessary.

17          With all that said, these means

18 shouldn't even be necessary here.  All we need here is

19 the transaction data to call a class list, and

20 discovery showed that the necessary data was collected

21 and stored through the kiosk and the software used

22 therein.

23          Nextep and Defendants had a cloud

24 system that they can access that contains not only

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

 1  facial geometry data of its customers but also

 2  connects the customers' facial geometry to their

 3  credit card numbers and phone numbers in what's called

 4  a guest account.

 5              Discovery also revealed that the

 6  ordering kiosk housed what's called a transaction

 7  manager software on the computer within the actual

 8  kiosk that store log files, credit card transaction

 9  files, and order transaction files which communicate

10  up to the cloud.

11              The kiosk also interfaced with the

12  point of sale system for the purposes of communicating

13  customer information.  All we need to do here is

14  simply connect a user facial geometry file to their

15  order history, get the dates and store locations of

16  these user orders, which would obviously then be

17  connected to other data such as payment data which we

18  could then use to identify class members or even

19  contact them for the purposes of sending notice.

20              With that said, though, what's

21  concerning is that after the lawsuit was filed, there

22  were a total of six facial recognition kiosks used at

23  Wow Bao at the three locations, but all but one or two

24  of these kiosks have either been destroyed or lost,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1   and not a single representative of Defendants could
 2   testify as to who ordered the kiosk to be destroyed or
 3   why they were destroyed despite the obligation to
 4   preserve evidence for litigation purposes.
 5                     Finally, Defendants submit a
 6   declaration from Brian Leary, an employee of Nextep.
 7   Mr. Leary attempts to contradict all of the evidence
 8   in the record that confirms a customer's facial
 9   geometry data is linked in guest accounts to their
10   credit card numbers, phone numbers, in addition to
11   their order history.
12                     It's worth noting, though, that
13   there's a pending BIPA lawsuit against Nextep, so
14   Mr. Leary clearly has an interest in ensuring that no
15   precedent is set in this case that may impact the case
16   against his company.  But again, there simply is zero
17   evidence to support his contentions.  Nextep's own
18   documents and employee testimony clearly contradict
19   Mr. Leary's unsupported assertions.
20                     At the end of the day, Defendants do
21   not challenge that Plaintiff failed to satisfy the
22   actual prerequisites to class certification.  This
23   class should be certified as a class action,
24   Ms. Morris should be appointed as class
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  representative, counsel for Plaintiff should be

2  appointed class counsel, and notice should go out to

3  the 1,369 customers who had their personal and private

4  biometric data illegally collected, used, stored, and

5  disseminated by Defendants in violation of BIPA.

6            THE COURT:  Thank you.

7            Mr. Ward?

8            MR. WARD:  Your Honor, I won't call it

9  omission, but I think it's certainly a downplaying of

10  the critical detail in this case.  Mr. Ficzko said and

11  he alluded to Nextep multiple times, but tried to sort

12  of convolute the Defendants in this case with Nextep

13  and calls Nextep as hosting the data.

14            The reality and the evidence on this

15  across the entire record is clear that Defendants in

16  this case have no access to that data, it's entirely

17  captive within the Nextep system.  So what happens is

18  the Nextep technology captures the data at issue here,

19  uploads it to the Nextep cloud, and there's simply a

20  series of Nextep -- or, I'm sorry, files within the

21  Nextep cloud that is solely within the control of

22  Nextep.

23            THE COURT:  Why does that matter?

24            MR. WARD:  It matters because here is the

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  way this works out.  If you look at the Brian Leary

2  declaration, he's the only one with actual personal

3  knowledge in this case that has provided testimony

4  evidence as to how this technology works.  The other

5  two individuals to whom Mr. Ficzko alluded, both

6  testified at their deposition that they have no

7  personal knowledge of how these systems work.

8              One guy is a sales person who does

9  not have any sense of the technology, the other was an

10  installer, essentially, who wrote one e-mail which is

11  what Mr. Ficzko alluded to, and then during his

12  deposition contradicted that e-mail, which is cited in

13  footnote 3 of our brief, the specific testimony he

14  gave saying, no, there is not a link between any

15  identifying data and these facial geometry files.

16              But this is important because the way

17  the system works is -- and this is all laid out very

18  clearly in the Brian Leary declaration -- there's no

19  identifying information within these 1369 files.

20  They're not individuals, by the way, your Honor,

21  they're simply files, they're just facial geometry

22  files.  We have no idea if that, in fact, corresponds

23  to 1369 people or less than that, but it's simply an

24  algorithmic file, and Nextep is in complete possession

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  of those data, and it has testified it has no way to

2  unpack those files to identify any single individual.

3            So the only putative class member who

4  we can absolutely identify in this case is the

5  Plaintiff, and that's simply because she's the named

6  party here.

7            Now, I'm not saying that this is a

8  heightened ascertainability standard as they have

9  argued in their reply, and I'm not saying that the

10  court needs to be able to identify all of the class

11  representatives -- or all of the putative class

12  members rather, before it can certify the class.  What

13  I am saying is the court's got to be able to identify

14  at least some of them or have some process --

15            THE COURT:  But the process would

16  simply -- there are two ways to, in the court's

17  mind -- notwithstanding Plaintiff's argument, there

18  are two ways or methodologies that immediately come to

19  mind, number one is publication, number two is simply

20  putting up a sign in the stores, assuming they still

21  exist, inviting anyone who within the time period in

22  question was a customer and submitted themselves to

23  providing their biometric data by facial recognition.

24            MR. WARD:  Sure.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1            THE COURT:  Why is that a problem?
 2            MR. WARD:  Well, let me just make the
 3  first point, your Honor, which is if there is a
 4  mechanism to identify any class members, that
 5  should've been part of the Plaintiff's burden.  This
 6  issue and the key part of why this case is not
 7  certifiable was not even addressed in their moving
 8  papers.  This is now scrambling on reply.
 9            So this should have all been vetted
10  ahead of time, this should have been sorted in
11  discovery.  If they thought that there was a
12  contradiction in the evidence between what we have
13  always asserted, which is you can't identify class
14  members here, and they can think the evidence clearly
15  shows that you can, then that needed to be vetted in
16  discovery and proven in their moving papers.  And if
17  we need a supplemental briefing on that, then so be
18  it, but that is their burden to sort.
19            As to the question of publication or
20  posting, couple things that I think are really
21  important.  The time period here is 2016 to 2017; we
22  are nearing 2022 at this point.  These three stores --
23  well, one of them no longer exists; that was the one
24  near 900 North Michigan Avenue.  The other two are
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  within Water Tower and at State and Lake, which is

2  incredibly high traffic areas, incredibly high traffic

3  areas for individuals who are tourists, who are

4  itinerant in Chicago.

5              The likelihood that we would capture

6  a representative and sufficient number of

7  self-identified individuals who used this technology

8  of Nextep almost five years ago in these high traffic

9  locations is very unreliable.  And if you look at the

10  authority on this, the courts don't say that

11  publication or a posting is sufficient in all

12  circumstances, right, it's going to be case-specific.

13              And while I agree -- for example,

14  there's a Seventh Circuit case that deals with a bar

15  and a couple of ATMs in a college town where you're

16  going to have much more repeat traffic, there was not

17  nearly the amount of time gap between the

18  certification issue.  And important in that case, by

19  the way, the Seventh Circuit also said we're not even

20  sure what records they do have, versus here we're

21  talking about something 500 years ago -- or, I'm

22  sorry, five years ago in Water Tower and at State and

23  Lake where the amount of traffic and the amount of

24  capture or false hits we might get here, right, what

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  is the court going to do if we publish this and we get

2  zero response?

3            You know, I mean, these are issues

4  that are coming down the path potentially in this

5  case, and I think they needed to be vetted at this

6  stage in class certification and they weren't.  And

7  that's the reason why I bring up the Plaintiff's

8  burden, is because this stuff should have been vetted

9  out or we still need to vet it out, because I think

10  this is really important and we can't simply say, oh,

11  it's a simple combination of looking at the cloud and

12  corresponding it to a transaction data, because I

13  believe the evidence says that's not how it works and

14  it's impossible to get to that stage.

15            So if we have a contradiction in how

16  we look at what the evidence shows, then either the

17  Plaintiff needed to sort that out in their moving

18  papers and satisfy their burden when they sought class

19  certification or, at a minimum, we need to have

20  supplemental briefing on it.

21            THE COURT:  Can I ask you a follow-up

22  question?

23            MR. WARD:  Sure.

24            THE COURT:  It seems to me that the

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  company would have kept data on how many people -- and

2  I think this is argued -- how many people used the

3  facial recognition software, how many orders were

4  placed as a consequence of it, if for no other reason,

5  to monitor its effectiveness, and wouldn't that be a

6  source of information in terms of the parameters of

7  how many people would be in this class.

8          MR. WARD:  So, your Honor, the answer to

9  that is Nextep did keep that data, and during the time

10 that our clients were customers of Nextep --

11          THE COURT:  Yeah, but did Nextep destroy

12 that information?

13          MR. WARD:  No.  As I understand it, from

14 my information --

15          THE COURT:  They're subject to subpoena;

16 aren't they?

17          MR. WARD:  They are subject to subpoena,

18 and they are subject to exploration of these issues

19 that I have been raising in terms of whether these

20 1369 files can be linked to 1300-and-some individuals

21 or whatever.

22          My point is that that was never

23 discovered by the Plaintiff, they never went down that

24 route to search that from Nextep; we did.  I

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

 1  interviewed Mr. Leary, and he was willing to provide
 2  the affidavit that he provided.  He is the only one
 3  with the personal knowledge on this that we have been
 4  able to identify.
 5              So I agree with you, this should have
 6  been addressed, but --
 7          THE COURT:  Let me ask you one more
 8  question, and it's really one of certification,
 9  because are you suggesting to the court that the
10  parent company, Lettuce Entertain You, is saying they
11  never kept this kind of information for its stores,
12  and particularly Wow Bao, in particular; that Wow Bao,
13  the management company or the management folks at
14  Wow Bao never within their own -- within the confines
15  of their own facilities never kept this kind of data
16  on who was using this biometric data and whether it
17  was effective and how effective of a marketing tool it
18  was and how effective of a tool for tracking foot
19  traffic in and out of its stores and its customers?
20          MR. WARD:  Your Honor, I think my answer
21  to that is sort of.  Right?  I guess I take issue with
22  the verb "kept," because that meant that they had
23  access to these data at some point, and the reality
24  is -- and again, I have explored this extensively, it

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   wasn't really addressed in the Plaintiff's moving

2   papers, but our clients never had access to their

3   data.  The way these kiosks worked is that they would

4   literally take this process and immediately upload it

5   to the cloud --

6            THE COURT:  So they never got reports?

7            MR. WARD:  I'm sorry?

8            THE COURT:  They never got reports?

9            MR. WARD:  What they could do is go onto a

10  dashboard.  That was, again, maintained by Nextep to

11  get some basic customer data, but when Nextep

12  discontinued that service, our clients no longer had

13  access to that.

14            But, again, nothing from that

15  dashboard, your Honor, would provide the customer

16  information.  It's the same issue, it was -- it would

17  simply be sort of bland data about the number of

18  transactions without any idea, any mechanism to trail

19  any single transaction to a user.

20            THE COURT:  Well, yes, but part of this

21  discussion is about how many people are actually in

22  this class, and the transactional data would give you

23  some indication, correct?

24            MR. WARD:  What I understand, your Honor,

Exhibit A

MORRIS v WOW BAO – 17-CH-12029
COURT HEARING – 11/17/2021

1  from Nextep is that it can say it has 1369 files.  As
2  far as whether those are 1369 --
3          THE COURT:  No.  No.  No.  My question
4  goes to the reports that Wow Bao could get off, as you
5  described it, the dashboard as to how many people on a
6  given day or in given month could use this particular
7  system, correct?
8          MR. WARD:  I don't know the answer to that
9  question.  I presume that would have been available in
10  real time, your Honor.  It's not available now because
11  it would correlate back to the Nextep data, but it
12  still would suffer from the same problem, which is
13  it's just very superficial data about a number of
14  transactions, not a number of users and without any
15  ability to identify a specific user to a specific
16  transaction.
17          THE COURT:  Yeah, but the court finds it
18  relatively hard to believe that this would be
19  superficial data in light of the fact that they're
20  doing this anyway.  I mean, they're collecting data.
21  Usually when people collect data, they collect all
22  kinds of data, and that's sort of why the statute is
23  in place in the first place, because of the basic
24  overreaching of companies who are collecting data,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1   biometric or otherwise.

 2                So the court finds it somewhat hard

 3   to believe that, nah, it's just a limited amount of

 4   data relative to the folks who were using this system,

 5   and it no longer exists.  That seems fairly

 6   implausible to the court.  Tell me why that's the case

 7   when we are at this juncture, a data-driven society in

 8   every aspect.

 9                MR. WARD:  Sure.  And at a superficial

10   level, your Honor, I totally understand the

11   skepticism, right, but again, we go back to this idea

12   of the distinction between my client and Nextep

13   Systems.

14                Nextep has all of the data, has all

15   of the relevant data, and it could have been

16   discovered, it could have been disclosed or explored

17   in discovery by the other side prior to bringing this

18   motion, and they didn't.  So we are left to explain

19   why something seems implausible because, to my view,

20   this record hasn't been totally established and

21   developed by the Plaintiff to show they've met their

22   burden.

23                THE COURT:  Okay.  Humor me one more time,

24   Counsel, because I don't know why your client wouldn't
```

1  have tons of data, because your client put this system

2  up in the first place, and they did it for a reason.

3                        They did it because they thought

4  that, number one, it would improve customer service,

5  presumably that it would make their operation go

6  faster; and I would imagine there was a whole host of

7  other data that they were going to get, biometric,

8  demographic, and so forth, that they thought would be

9  useful to them in marketing their store, in traffic in

10 and out of their store, and what their company is

11 buying when they come in, what their favorites are,

12 what they come in and order all the time, how often

13 they do it, when they do it, where they do it, whether

14 it gets delivered or they pick it up, or any number of

15 data points.

16                        So, again, I'm just struggling with

17 this notion that, nah, we don't have a whole lot of

18 stuff, most of it is with the company who provided the

19 software.  That seems to be contrary to the point of

20 putting this system in in the first place so they

21 don't get a lot of data.

22                        MR. WARD:  Sure.  And I think part of the

23 court's understandable skepticism again comes from the

24 fact that this record is underdeveloped.

MORRIS v WOW BAO — 17-CH-12029
COURT HEARING — 11/17/2021

```
 1                 The way that this all happened is
 2    that Nextep had actually been providing kiosks to the
 3    Wow Bao stores for a number of years before.  As part
 4    of a scheduled upgrade -- and, you know, all this
 5    evidence is out there if we need to demonstrate it
 6    through briefing or whatever -- before a scheduled
 7    upgrade, Nextep installed these three kiosks at
 8    these -- it's actually six kiosks at three stores.
 9    Without any request to do so from our client, they
10    essentially put facial recognition in as an upgrade.
11                 Our clients protested if they were
12    going to have to pay more for it, and Nextep said no.
13    And the evidence fully developed in this case through
14    multiple depositions basically says our clients had no
15    involvement in the process.  Literally, the only thing
16    they did was provide power to the kiosks, a network
17    connection, and then Nextep did everything from there.
18    All of the data are theirs, all of the processes are
19    within their software and their hardware.
20                 And so any time -- and this is what
21    our client's witnesses consistently testified to, is
22    anytime they needed any information at all about what
23    was going on with these systems, they had to go to
24    Nextep.  So it's not accurate that our clients put
```

Exhibit A

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   these machines with facial recognition into their

2   stores trying to gather additional data and take

3   additional biometrics; they were put in by Nextep at

4   Nextep's choice. And, yeah, they got used for a

5   little while, although not that well as people

6   testified.

7           But I go back to this point that I

8   think these are important questions; I think these are

9   important aspects of whether this is a certifiable

10  class. And I have these explanations, your Honor, but

11  ultimately the legal burden is for the Plaintiff to

12  answer that and show why this class can be certified

13  in light of these concerns, and that was never

14  addressed in their moving papers and only scrambled to

15  in response to our opposition.

16          So either the motion should be denied

17  for failure to carry the burden, or at least they

18  should be ordered to brief these issues and

19  demonstrate why these concerns are not surmountable.

20          THE COURT: All right. Thank you.

21          Counsel?

22          MR. FICZKO: Your Honor, just to reiterate

23  my point, Defendant simply has not to this point

24  challenged any of the requirements that we need for

1   class certification.  The so-called ascertainability

2   is not a reason to deny class certification.

3                   Defense counsel kept harping on that

4   his client has limited data.  Well, the reason why

5   they have limited data is for -- they have to blame

6   themselves because there is no reason why four, five,

7   all of the kiosks have been destroyed or lost.  We

8   simply -- and no one at Nex- -- or excuse me, at Wow

9   Bao could indicate where they were, why they were

10  destroyed or otherwise.

11                  Defendants also contradict what was

12  indicated in Mr. Leary's declaration.

13          THE COURT:  Can I ask you a question?  A

14  question, Mr. --

15          MR. FICZKO:  Sure.

16          THE COURT:  Why does the kiosk having been

17  destroyed matter?  All the data, it sounds to me,

18  would have been uploaded to the cloud, so who cares

19  whether or not the kiosk exists?  Isn't the ultimate

20  issue whether the data itself exists?

21          MR. FICZKO:  That's inaccurate.  There is

22  what's called a Transaction Manager Software that is

23  installed in each computer within the kiosk which

24  stores transaction files, credit card transaction

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  files, log files.  This all goes to connect to the
2  facial geometry, which --
3          THE COURT:  But that data doesn't get
4  uploaded to the cloud?  Those files don't get uploaded
5  to the cloud; they remain resident on the hard drive
6  in the kiosk?  That doesn't make sense to me.
7          MR. FICZKO:  I believe it may be both,
8  your Honor.
9          THE COURT:  Well, if it's both, again, my
10 question is why does it matter where the kiosk is if
11 the data exists somewhere?
12         MR. FICZKO:  Well, we're saying both, that
13 the data exists both in the cloud and it would exist
14 in the computers if Defendants would have kept them.
15         THE COURT:  Okay.
16         MR. WARD:  Your Honor, may I respond on
17 that point?
18         THE COURT:  Just a second, Counsel.  I'll
19 give you an opportunity.
20         MR. WARD.  Sure.  Thank you.
21         MR. FICZKO:  And we did, your Honor,
22 explore this.  And as I indicated, before we filed a
23 lawsuit against Nextep and conveniently this
24 declaration was submitted, all of the evidentiary

1  evidence indicates that the geometries, the facial

2  geometries, are linked to the customer's credit card

3  and phone number, and there's documents from Nextep

4  that clearly show that, which we submitted that

5  describe how their facial recognition kiosks worked,

6  and how it's link to tender, and how it even says that

7  one of the whole purposes is now that the customer

8  doesn't even have to bring back a credit card for the

9  next time use because it's already saved in the kiosk.

10          THE COURT:  Okay.  Anything else?

11          MR. FICZKO:  No, your Honor.  Thank you.

12          THE COURT:  All right.  Mr. Ward?

13          MR. WARD:  Your Honor, this is just

14  another issue of underdeveloped or misleading of the

15  evidence.  It's not what the evidence shows here from

16  Nextep's own documents.  In fact, the witnesses

17  testified that they never linked credit card to facial

18  recognition because they couldn't either get it to

19  work or it wasn't something they were deploying at

20  Wow Bao.

21          But I think it's critical on this

22  kiosk question because I think you've hit on an

23  important point.  Again, our understanding, and I

24  hired a forensic expert to investigate this once we

Exhibit A

1  learned that some of these kiosks had gone because I

2  wanted to determine did we lose anything of importance

3  to this case, we spent quite a bit of money to do it.

4            Mr. Ficzko had the opportunity to

5  depose individuals on it, and what we know is that

6  because everything is cloud-based, there isn't

7  anything lost.  And, in fact, our expert said there is

8  nothing stored on these local hard drives that relates

9  to facial geometry whatsoever.

10           And, again, if the other side wants

11 to contest that point, that's something they have the

12 burden to establish.  So we either need to brief it

13 and they can try and show you the evidence, or we need

14 to deny certification of these -- this is a critical

15 point.  But it's not accurate that we have no one but

16 ourselves to blame here, because we made sure before

17 we made these arguments to the court that we had a

18 full understanding of what we were dealing with, with

19 these data.

20           And Mr. Ficzko just said all of the

21 evidence says that, you know, you can link these

22 things.  Well, then they should have showed it.  They

23 should have showed it in their briefing instead of

24 arguing it in a scrambled reply and making a bunch of

Exhibit A

MORRIS v WOW BAO — 17-CH-12029
COURT HEARING — 11/17/2021

1  assertions in oral argument when the actual evidence

2  and testimony says otherwise.

3            So, again, either we need to deny

4  this motion because not being able to identify a

5  single class member and not having had a mechanism

6  proposed for how we could administer this class that

7  is actually feasible is a critical part of the

8  certification inquiry, and that was not met.  So

9  either we need to deny the motion or at least give the

10  Plaintiff the opportunity to certify these burdens.

11            THE COURT:  All right.  Mr. Ficzko, it's

12  your motion, you have the last word.

13            MR. FICZKO:  Thank you, your Honor.

14            As I indicated, ascertainability is

15  not a means to deny a motion for class certification.

16  At this stage, we do not need to identify every

17  individual.  There are means that do not violate due

18  process through which direct notice is not necessary.

19            For example, the Defendants cannot

20  produce the credit card transaction data, the parties

21  may need to subpoena credit card companies, or the

22  parties may need to rely on class member

23  self-identification at the claims stage, or notice, as

24  we previously discussed, by publication or by posting

Exhibit A

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1    it at these Wow Bao restaurants.

2                    Class members can simply be

3    identified during the claims administration process.

4    This is not a reason to deny class certification at

5    this stage.

6                    THE COURT:  All right.  The court is going

7    to grant the motion for class certification.  The

8    court finds that the Plaintiff has met the

9    requirements of identifying that the class is so

10   numerous that joinder of all members is impracticable,

11   that there are questions of fact and law that are

12   common to the class that predominate over any

13   questions affecting only individual members, that the

14   representative parties will fairly and adequately

15   protect the interest of the class, and that the class

16   action is an appropriate method for the fair and

17   efficient adjudication of controversy.  The court also

18   grants class counsel as well as the motion to appoint

19   class representative.

20                    So, gentlemen, where does that leave

21   us in terms of next steps?

22                    MR. FICZKO:  The next steps will be the

23   notice process, your Honor, which we'll need to decide

24   how to best go about that business.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1           THE COURT:  All right.  Let's have a
2  status 60 days out or so.
3               Mark, do we have a date that's
4  available 60 days out?
5           THE CLERK:  Yes, Judge, we can do
6  March 15th at 10:00 a.m.
7           MR. WARD:  Your Honor, I'll be in trial in
8  California on that date.  If we can either go a week
9  before or a couple weeks after, I'd appreciate it.
10          THE COURT:  A couple weeks after, Mark?
11          THE CLERK:  Would April 4th work for
12 counsel?
13          MR. WARD:  That should be fine for me,
14 your Honor.  I appreciate it.
15          MR. FICZKO:  That works for Plaintiff.
16          THE COURT:  April 4th at 10:00.
17              All right?
18          MR. FICZKO:  Yes, your Honor.
19              Should we write an order?
20          THE COURT:  Yes.
21          MR. FICZKO:  Will do.
22          THE COURT:  Ms. Pitts, is there anything
23 you need from the court?
24          THE REPORTER:  There isn't.  Thank you,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   your Honor.

2                THE COURT:  All right.  Then, gentlemen,

3   thank you.  You folks have a great holiday.

4                        (Which were all the proceedings

5                        that were had in the above-entitled

6                        cause on this date.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Exhibit A

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   STATE OF ILLINOIS    )
                         )   SS:
2   COUNTY OF C O O K    )

3

4              I, NOHEMI SALAZAR-PITTS, a Certified

5   Shorthand Reporter doing business in the City of

6   Chicago, certify that I reported in shorthand the

7   proceedings of said hearing, and that the foregoing is

8   a true and correct transcript of my shorthand notes so

9   taken as aforesaid and contains the proceedings given

10  at said hearing.

11

12

13                    _____

14                    Certified Shorthand Reporter
                      LICENSE NO.:  084-4648
15

16

17

18

19

20

21

22

23

24

Exhibit A

**A**

a.m 29:6
ability 18:15
able 11:10,13
  16:4 27:4
above-entitled
  1:14 30:5
absolutely 11:4
access 6:24 9:16
  16:23 17:2,13
account 4:19 7:4
accounts 8:9
accurate 21:24
  26:15
Act 3:21
action 8:23
  28:16
actual 7:7 8:22
  10:2 27:1
addition 8:10
additional 22:2
  22:3
addressed 12:7
  16:6 17:1
  22:14
adequately
  28:14
adjudication
  28:17
administer 27:6
administration
  28:3
administrative
  6:8
affidavit 16:2
aficzko@step...
  2:6
aforesaid 31:9
afternoon 3:5,9
ago 13:8,21,22
agree 13:13 16:5
ahead 12:10
algorithmic
  10:24

**ALLEN** 1:15
alluded 9:11
  10:5,11
amount 13:17
  13:23,23 19:3
**ANDREW** 2:3
**Andy** 3:6
answer 15:8
  16:20 18:8
  22:12
anticipated 6:5
anytime 21:22
anyway 18:20
**APPEARAN...**
  2:1
**Appeared** 2:7
  2:12
appoint 28:18
appointed 8:24
  9:2
appreciate 29:9
  29:14
appropriate
  28:16
approximately
  4:1
**April** 29:11,16
areas 13:2,3
argue 6:3
argued 11:9
  15:2
arguing 26:24
argument 11:17
  27:1
arguments
  26:17
ascertainability
  11:8 23:1
  27:14
aspect 19:8
aspects 22:9
asserted 12:13
asserting 3:20
assertions 8:19

27:1
associated 4:18
assuming 11:20
**ATMs** 13:15
attempts 8:7
authority 13:10
available 5:9
  18:9,10 29:4
**Avenue** 12:24

**B**

back 18:11
  19:11 22:7
  25:8
**Bao** 1:8,8 2:13
  3:3,23 7:23
  16:12,12,14
  18:4 21:3 23:9
  25:20 28:1
**Bao's** 3:24
bar 13:14
basic 17:11
  18:23
basically 4:15
  4:19 6:1 21:14
behalf 1:4 2:7
  2:12 3:6,7
believe 14:13
  18:18 19:3
  24:7
best 28:24
biometric 3:21
  4:24 5:8,11,13
  5:14,16,21,22
  5:22,23 9:4
  11:23 16:16
  19:1 20:7
biometrics 22:3
**BIPA** 3:21 5:4
  5:19,23,24
  8:13 9:5
bit 26:3
blame 23:5
  26:16

bland 17:17
**Brian** 8:6 10:1
  10:18
brief 10:13
  22:18 26:12
briefing 12:17
  14:20 21:6
  26:23
bring 14:7 25:8
bringing 19:17
built-in 4:9
bunch 26:24
burden 12:5,18
  14:8,18 19:22
  22:11,17 26:12
burdens 27:10
business 28:24
  31:5
buying 20:11

**C**

**C** 2:3 31:2
**California** 29:8
call 6:10,19 9:8
called 7:3,6
  23:22
calls 9:13
camera 4:10
cameras 4:14
captive 9:17
capture 13:5,24
captures 9:18
card 7:3,8 8:10
  23:24 25:2,8
  25:17 27:20,21
cares 23:18
carry 22:17
case 5:15 6:2
  8:15,15 9:10
  9:12,16 10:3
  11:4 12:6
  13:14,18 14:5
  19:6 21:13
  26:3

case-specific
  13:12
cause 1:14 30:6
**Central** 1:19
certainly 9:9
certifiable 12:7
  22:9
certification 6:3
  8:22 13:18
  14:6,19 16:8
  23:1,2 26:14
  27:8,15 28:4,7
certified 1:17
  8:23 22:12
  31:4,13
certify 3:14,19
  11:12 27:10
  31:6
challenge 8:21
challenged
  22:24
**CHANCERY**
  1:2
checkouts 4:2
**Chicago** 2:5,10
  13:4 31:6
choice 22:4
chooses 4:8
**Christopher** 2:9
  3:7
**Circuit** 1:1
  13:14,19
circumstances
  13:12
cited 10:12
**City** 31:5
claims 3:20
  27:23 28:3
**Clark** 2:10
class 3:14,19 6:2
  6:5,7,13,14,19
  7:18 8:22,23
  8:23,24 9:2
  11:3,10,11,12

12:4,13 14:6
14:18 15:7
17:22 22:10,12
23:1,2 27:5,6
27:15,22 28:2
28:4,7,9,12,15
28:15,18,19
clear 6:6 9:15
clearly 8:14,18
10:18 12:14
25:4
CLERK 3:3
29:5,11
client 19:12,24
20:1 21:9 23:4
client's 21:21
clients 15:10
17:2,12 21:11
21:14,24
cloud 4:16 6:23
7:10 9:19,21
14:11 17:5
23:18 24:4,5
24:13
cloud-based
26:6
collect 5:12
18:21,21
collected 5:1,8
6:20 9:4
collecting 5:20
18:20,24
collects 4:10
college 13:15
combination
14:11
come 11:18
20:11,12
comes 20:23
coming 14:4
commencing
1:19
common 5:17
28:12

communicate
7:9
communicating
7:12
companies
18:24 27:21
company 8:16
15:1 16:10,13
20:10,18
compare 4:15
compile 6:5
complete 10:24
comply 5:4
complying 5:24
computer 7:7
23:23
computers
24:14
concede 6:1
concerning 7:21
concerns 22:13
22:19
confines 16:14
confirms 8:8
connect 7:14
24:1
connected 7:17
connection
21:17
connects 7:2
consent 5:13
consequence
15:4
consistently
21:21
consumers 3:20
contact 7:19
contains 6:24
31:9
contentions 8:17
contest 26:11
contradict 8:7
8:18 23:11
contradicted

10:12
contradiction
12:12 14:15
contrary 20:19
control 9:21
controversy
28:17
conveniently
24:23
convolute 9:12
COOK 1:1
correct 3:15
17:23 18:7
31:8
correlate 18:11
corresponding
14:12
corresponds
10:22
costs 4:3
counsel 9:1,2
19:24 22:21
23:3 24:18
28:18 29:12
COUNTY 1:1,2
31:2
couple 12:20
13:15 29:9,10
court 1:1,15 3:9
3:13,16,18
6:11 9:6,23
11:10,15 12:1
14:1,21,24
15:11,15 16:7
16:9 17:6,8,20
18:3,17,17
19:2,6,23
22:20 23:13,16
24:3,9,15,18
25:10,12 26:17
27:11 28:6,6,8
28:17 29:1,10
29:16,20,22,23
30:2

court's 11:13,16
20:23
courts 13:10
credit 7:3,8 8:10
23:24 25:2,8
25:17 27:20,21
critical 9:10
25:21 26:14
27:7
customer 4:8,12
4:20 7:13
11:22 17:11,15
20:4 25:7
customer's 4:5
4:10,15,18,19
8:8 25:2
customers 3:23
5:3,19 7:1 9:3
15:10 16:19
customers' 5:2
5:11 7:2
cward@foley....
2:11

D
dashboard
17:10,15 18:5
data 4:11 5:8,11
5:14,16,21,22
6:19,20 7:1,17
7:17 8:9 9:4,13
9:16,18 10:15
11:1,23 14:12
15:1,9 16:15
16:16,23 17:3
17:11,17,22
18:11,13,19,20
18:21,22,24
19:4,14,15
20:1,7,15,21
21:18 22:2
23:4,5,17,20
24:3,11,13
26:19 27:20

data-driven
19:7
database 4:11
4:16
date 29:3,8 30:6
dates 7:15
day 8:20 18:6
days 29:2,4
dealing 26:18
deals 13:14
December 1:16
decide 28:23
declaration 8:6
10:2,18 23:12
24:24
Defendant 2:12
3:8 22:23
Defendants 1:10
4:3 5:1,6,18
6:1,23 8:1,5,20
9:5,12,15
23:11 24:14
27:19
Defense 23:3
defined 5:23
delivered 20:14
demographic
20:8
demonstrate
21:5 22:19
denied 6:4 22:16
deny 23:2 26:14
27:3,9,15 28:4
DEPARTME...
1:2
deploying 25:19
depose 26:5
deposition 10:6
10:12
depositions
21:14
describe 25:5
described 18:5
despite 8:3

destroy 15:11
destroyed 7:24
  8:2,3 23:7,10
  23:17
destruction 5:10
detail 9:10
determine 26:2
developed 19:21
  21:13
difficult 6:4
direct 6:12
  27:18
disclose 5:14
disclosed 5:2
  19:16
disclosing 5:21
discontinued
  17:12
discovered
  15:23 19:16
discovery 6:20
  7:5 12:11,16
  19:17
discussed 27:24
discussion 3:11
  17:21
disseminated
  9:5
distinction
  19:12
DIVISION 1:2
documents 8:18
  25:3,16
doing 18:20 31:5
downplaying
  9:9
drinks 4:7
drive 24:5
drives 26:8
due 6:13 27:17

_____E_____
e-mail 2:6,11
  10:10,12

easy-to-follow
  5:4
effective 16:17
  16:17,18
effectiveness
  15:5
efficient 28:17
either 7:24
  14:16 22:16
  25:18 26:12
  27:3,9 29:8
employee 8:6,18
ensuring 8:14
ENTERPRIS...
  1:9
Entertain 1:8
  16:10
entire 9:15
entirely 9:16
ESQUIRE 2:3,9
essentially 10:10
  21:10
establish 26:12
established
  19:20
evidence 5:17,18
  8:4,7,17 9:14
  10:4 12:12,14
  14:13,16 21:5
  21:13 25:1,15
  25:15 26:13,21
  27:1
evidentiary
  24:24
example 5:6
  13:13 27:19
excuse 23:8
exist 11:21
  24:13
exists 12:23 19:5
  23:19,20 24:11
  24:13
expert 25:24
  26:7

explain 19:18
explanations
  22:10
exploration
  15:18
explore 24:22
explored 16:24
  19:16
extensively
  16:24

_____F_____
face 4:15
facial 3:23 4:4,5
  4:8,9,10,13,14
  4:16,22 5:2,20
  7:1,2,14,22 8:8
  10:15,21 11:23
  15:3 21:10
  22:1 24:2 25:1
  25:5,17 26:9
facilitate 4:2
facilities 16:15
fact 6:13 10:22
  18:19 20:24
  25:16 26:7
  28:11
failed 8:21
failing 5:3
failure 22:17
fair 28:16
fairly 19:5 28:14
false 13:24
far 18:2
faster 4:2 20:6
favorites 20:11
feasibility 6:8
feasible 27:7
feature 4:9
Ficzko 2:3 3:5,6
  3:15,17 9:10
  10:5,11 22:22
  23:15,21 24:7
  24:12,21 25:11

26:4,20 27:11
  27:13 28:22
  29:15,18,21
file 7:14 10:24
filed 7:21 24:22
files 7:8,9,9 9:20
  10:15,19,21,22
  11:2 15:20
  18:1 23:24
  24:1,1,4
Finally 8:5
finds 18:17 19:2
  28:8
fine 29:13
first 12:3 18:23
  20:2,20
five 13:8,22 23:6
FOLEY 2:9
folks 16:13 19:4
  30:3
follow-up 14:21
following 3:1
food 4:7
foot 16:18
footnote 10:13
foregoing 31:7
forensic 25:24
forth 20:8
found 4:17
four 23:6
FRANCHISI...
  1:8
full 26:18
fully 21:13

_____G_____
G 2:9
gap 13:17
gather 22:2
general 6:12
gentlemen 28:20
  30:2
geometries 25:1
  25:2

geometry 4:6,11
  4:16,22 5:2 7:1
  7:2,14 8:9
  10:15,21 24:2
  26:9
give 17:22 24:19
  27:9
given 18:6,6
  31:9
go 9:2 17:9
  19:11 20:5
  21:23 22:7
  28:24 29:8
goes 18:4 24:1
going 13:12,16
  14:1 20:7
  21:12,23 28:6
Good 3:5,9
grant 28:7
grants 28:18
great 30:3
guess 16:21
guest 4:19 7:4
  8:9
guidelines 5:10
guy 10:8

_____H_____
happened 21:1
happens 4:20
  9:17
hard 18:18 19:2
  24:5 26:8
hardware 21:19
harping 23:3
hearing 1:14
  31:7,10
heightened 11:8
high 13:2,2,8
higher 4:2
hired 25:24
history 7:15
  8:11
hit 25:22

hits 13:24
holiday 30:3
Honor 3:5,15,17
  9:8 10:20 12:3
  15:8 16:20
  17:15,24 18:10
  19:10 22:10,22
  24:8,16,21
  25:11,13 27:13
  28:23 29:7,14
  29:18 30:1
HONORABLE
  1:15
host 20:6
hosted 5:15
hosting 9:13
housed 7:6
Humor 19:23

**I**

idea 10:22 17:18
  19:11
identical 3:20
identification
  4:6
identified 28:3
identifiers 5:23
identify 6:14
  7:18 11:2,4,10
  11:13 12:4,13
  16:4 18:15
  27:4,16
identifying
  10:15,19 28:9
illegally 9:4
Illinois 1:1,18
  2:5,10 3:20
  31:1
image 4:15
imagine 20:6
immediately
  11:18 17:4
impact 8:15
implausible 19:6

19:19
implemented
  4:4
importance 26:2
important 10:16
  12:21 13:18
  14:10 22:8,9
  25:23
impossible
  14:14
impracticable
  28:10
improve 20:4
inaccurate
  23:21
including 6:15
inconsistent
  6:12
incredibly 13:2
  13:2
indicate 23:9
indicated 3:18
  23:12 24:22
  27:14
indicates 25:1
indication 17:23
individual 11:2
  27:17 28:13
individuals 3:22
  6:6 10:5,20
  13:3,7 15:20
  26:5
inform 5:7
information
  3:21 5:13,22
  7:13 10:19
  15:6,12,14
  16:11 17:16
  21:22
inquiry 27:8
installed 21:7
  23:23
installer 10:10
interest 8:14

28:15
interfaced 7:11
interviewed
  16:1
investigate
  25:24
inviting 11:21
involvement
  21:15
issue 9:18 12:6
  13:18 16:21
  17:16 23:20
  25:14
issues 14:3
  15:18 22:18
itinerant 13:4

**J**

Jessica 3:10
joinder 28:10
Judge 1:15 29:5
juncture 19:7

**K**

K 31:2
keep 15:9
kept 15:1 16:11
  16:15,22 23:3
  24:14
key 12:6
kind 16:11,15
kinds 18:22
kiosk 3:24 4:9
  4:18,21,21
  5:20 6:21 7:6,8
  7:11 8:2 23:16
  23:19,23 24:6
  24:10 25:9,22
kiosks 4:4 7:22
  7:24 17:3 21:2
  21:7,8,16 23:7
  25:5 26:1
know 14:3 18:8
  19:24 21:4
  26:5,21

knowledge 10:3
  10:7 16:3

**L**

laid 10:17
Lake 13:1,23
LARDNER 2:9
law 6:5 28:11
lawsuit 7:21
  8:13 24:23
learned 26:1
Leary 8:6,7,14
  10:1,18 16:1
Leary's 8:19
  23:12
leave 28:20
left 19:18
legal 22:11
length 5:7
Let's 29:1
Lettuce 1:8
  16:10
level 19:10
LICENSE 31:14
light 18:19
  22:13
likelihood 13:5
limited 19:3
  23:4,5
link 10:14 25:6
  26:21
linked 8:9 15:20
  25:2,17
list 6:5,19
literally 17:4
  21:15
litigation 8:4
little 3:19 22:5
live 4:15
LLC 1:8,8 2:13
LLP 2:3,9
local 26:8
locations 7:15
  7:23 13:9

log 7:8 24:1
longer 12:23
  17:12 19:5
look 10:1 13:9
  14:16
looking 14:11
lose 26:2
lost 7:24 23:7
  26:7
lot 20:17,21

**M**

machines 22:1
maintained
  17:10
making 26:24
management
  16:13,13
manager 7:7
  23:22
March 29:6
Mark 29:3,10
marketing 16:17
  20:9
match 4:17,17
matter 9:23
  23:17 24:10
matters 9:24
mean 5:21 14:3
  18:20
means 4:6 6:17
  27:15,17
meant 16:22
mechanism 12:4
  17:18 27:5
meets 6:2
member 11:3
  27:5,22
members 6:7,14
  7:18 11:12
  12:4,14 28:2
  28:10,13
met 19:21 27:8
  28:8

method 28:16
methodologies
  11:18
Michigan 12:24
mind 11:17,19
minimizing 4:3
minimum 14:19
misleading
  25:14
money 26:3
monitor 15:5
month 18:6
Morris 1:4 3:3
  8:24
motion 3:19 6:3
  19:18 22:16
  27:4,9,12,15
  28:7,18
moving 12:7,16
  14:17 17:1
  22:14
multiple 9:11
  21:14

**N**

nah 19:3 20:17
name 6:6
named 11:5
near 12:24
nearing 12:22
nearly 13:17
necessary 6:16
  6:18,20 27:18
need 6:6,18 7:13
  12:17 14:9,19
  21:5 22:24
  26:12,13 27:3
  27:9,16,21,22
  28:23 29:23
needed 12:15
  14:5,17 21:22
needs 11:10
network 21:16
never 15:22,23

16:11,14,15
17:2,6,8 22:13
25:17
Nex- 23:8
Nextep 5:15
  6:23 8:6,13
  9:11,12,13,17
  9:18,19,20,21
  9:22 10:24
  13:8 15:9,10
  15:11,24 17:10
  17:11 18:1,11
  19:12,14 21:2
  21:7,12,17,24
  22:3 24:23
  25:3
Nextep's 8:17
  22:4 25:16
Nohemi 1:17
  31:4
North 2:4,10
  12:24
notes 31:8
notice 6:12,15
  7:19 9:2 27:18
  27:23 28:23
noting 8:12
notion 20:17
notwithstandi...
  11:17
number 6:14
  11:19,19 13:6
  17:17 18:13,14
  20:4,14 21:3
  25:3
numbers 7:3,3
  8:10,10
numerous 28:10

**O**

O 31:2,2
obligation 8:3
obviously 7:16
oh 14:10

Okay 19:23
  24:15 25:10
omission 9:9
once 25:24
operation 20:5
opportunity
  24:19 26:4
  27:10
opposition
  22:15
oral 27:1
order 4:12 7:9
  7:15 8:11
  20:12 29:19
ordered 8:2
  22:18
ordering 3:24
  4:6 7:6
orders 4:13,18
  4:23 7:16 15:3
overreaching
  18:24

**P**

P 1:15
p.m 1:19
papers 12:8,16
  14:18 17:2
  22:14
parameters 15:6
parent 16:10
part 12:5,6
  17:20 20:22
  21:3 27:7
particular 16:12
  18:6
particularly
  16:12
parties 5:14
  27:20,22 28:14
party 11:6
path 14:4
pay 21:12
payment 7:17

payroll 4:3
pending 8:13
people 10:23
  15:1,2,7 17:21
  18:5,21 22:5
period 11:21
  12:21
person 10:8
personal 9:3
  10:2,7 16:3
petition 3:14
phone 2:5,11 7:3
  8:10 25:3
pick 20:14
Pitts 29:22
place 4:12 18:23
  18:23 20:2,20
placed 15:4
placing 4:22
Plaintiff 1:6 3:6
  8:21 9:1 11:5
  14:17 15:23
  19:21 22:11
  27:10 28:8
  29:15
Plaintiff's 3:13
  3:18 11:17
  12:5 14:7 17:1
Plaintiffs 2:7
platform 1:17
Plaza 2:4
point 7:12 12:3
  12:22 15:22
  16:23 20:19
  22:7,23,23
  24:17 25:23
  26:11,15
points 20:15
Policy 6:10
possession 10:24
possible 6:7
posting 12:20
  13:11 27:24
potentially 14:4

power 21:16
precedent 8:15
predominate
  28:12
prerequisites
  8:22
preserve 8:4
presumably
  20:5
presume 18:9
previous 4:13
previously 27:24
prior 19:17
Privacy 3:21
private 9:3
problem 12:1
  18:12
proceed 3:16
proceedings
  1:13 3:1 30:4
  31:7,9
process 6:13
  11:14,15 17:4
  21:15 27:18
  28:3,23
processes 21:18
produce 27:20
proposed 27:6
protect 28:15
protested 21:11
proven 12:16
provide 16:1
  17:15 21:16
provided 10:3
  16:2 20:18
providing 11:23
  21:2
public 5:9
publication 6:16
  11:19 12:19
  13:11 27:24
publish 14:1
pulls 4:18
purpose 5:7

| | | | | |
|---|---|---|---|---|
| **purposes** 4:22 7:12,19 8:4 25:7 | **REGINA** 1:4 **reiterate** 22:22 **reject** 6:11 | **right** 3:9 13:12 13:24 16:21 19:11 22:20 | **Seventh** 13:14 13:19 **shorthand** 1:18 | **sounds** 23:17 **source** 15:6 **specific** 6:6 |
| **put** 20:1 21:10 21:24 22:3 | **relates** 26:8 **relative** 19:4 | 25:12 27:11 28:6 29:1,17 | 31:5,6,8,13 **should've** 12:5 | 10:13 18:15,15 **Specifically** 3:22 |
| **putative** 11:3,11 **putting** 11:20 20:20 | **relatively** 18:18 **release** 5:12 **relevant** 19:15 | 30:2 **Riverside** 2:4 **route** 15:24 | **show** 19:21 22:12 25:4 26:13 | **spent** 26:3 **SS** 31:1 **stage** 14:6,14 |
| | **rely** 27:22 **remain** 24:5 | **rule** 6:7,12 | **showed** 6:20 26:22,23 | 27:16,23 28:5 **standard** 11:8 |
| **———— Q ————** **question** 11:22 | **remote** 1:16 2:1 3:2 | **———— S ————** **Salazar-Pitts** | **shows** 5:18 12:15 14:16 | **State** 1:18 13:1 13:22 31:1 |
| 12:19 14:22 16:8 18:3,9 | **repeat** 13:16 **reply** 11:9 12:8 | 1:17 31:4 **sale** 7:12 | 25:15 **side** 19:17 26:10 | **status** 29:2 **statute** 18:22 |
| 23:13,14 24:10 25:22 | 26:24 **reported** 1:17 | **sales** 4:2 10:8 **satisfy** 8:21 | **sign** 11:20 **similarly** 1:4 | **STEPHAN** 2:3 **steps** 28:21,22 |
| **questions** 22:8 28:11,13 | 31:6 **Reporter** 1:18 | 14:18 **saved** 25:9 | **simple** 5:4 14:11 **simply** 4:20 7:14 | **store** 5:12 7:8,15 20:9,10 |
| **quite** 26:3 | 29:24 31:5,13 **reports** 17:6,8 | **saying** 10:14 11:7,9,13 | 8:16 9:19 10:21,23 11:5 | **stored** 4:16 5:1,8 6:21 9:4 26:8 |
| **———— R ————** **raising** 15:19 | 18:4 **representative** | 16:10 24:12 **says** 14:13 21:14 | 11:16,19 14:10 17:17 22:23 | **stores** 4:1,11 11:20 12:22 |
| **real** 18:10 **reality** 9:14 | 8:1 9:1 13:6 28:14,19 | 25:6 26:21 27:2 | 23:8 28:2 **single** 8:1 11:2 | 16:11,19 21:3 21:8 22:2 |
| 16:23 **really** 12:20 | **representatives** 11:11 | **schedule** 5:10 **scheduled** 21:4 | 17:19 27:5 **situated** 1:5 | 23:24 **Street** 2:10 |
| 14:10 16:8 17:1 | **request** 21:9 **required** 6:13 | 21:6 **scrambled** 22:14 | **six** 7:22 21:8 **skepticism** | **struggling** 20:16 **stuff** 14:8 20:18 |
| **reason** 14:7 15:4 20:2 23:2,4,6 | **requirement** 6:9 6:11 | 26:24 **scrambling** 12:8 | 19:11 20:23 **so-called** 6:8 | **subject** 15:15,17 15:18 |
| 28:4 **reasons** 6:10 | **requirements** 5:5 6:2 22:24 | **search** 15:24 **second** 24:18 | 23:1 **society** 19:7 | **submit** 8:5 **submitted** 11:22 |
| **recall** 4:13 **recalling** 4:22 | 28:9 **requires** 6:8 | **self-identificat...** 6:15 27:23 | **software** 6:21 7:7 15:3 20:19 | 24:24 25:4 **subpoena** 15:15 |
| **receive** 5:12,13 **recognition** 3:24 | **resident** 24:5 **respond** 24:16 | **self-identified** 13:7 | 21:19 23:22 **solely** 9:21 | 15:17 27:21 **suffer** 18:12 |
| 4:4,9,10,13,14 5:20 7:22 | **response** 14:2 22:15 | **self-ordering** 4:4 | **somewhat** 19:2 **sorry** 9:20 13:22 | **sufficient** 13:6 13:11 |
| 11:23 15:3 21:10 22:1 | **restaurant** 3:23 **restaurants** 4:5 | **sending** 7:19 **sense** 10:9 24:6 | 17:7 **sort** 9:11 12:18 | **suggesting** 16:9 **Suite** 2:4 |
| 25:5,18 **recognize** 4:21 | 5:3 28:1 **retention** 5:10 | **series** 9:20 **service** 17:12 | 14:17 16:21 17:17 18:22 | **superficial** 18:13,19 19:9 |
| **record** 3:12 8:8 9:15 19:20 | **returns** 4:12 **revealed** 7:5 | 20:4 **set** 8:15 | **sorted** 12:10 **sought** 14:18 | **supplemental** 12:17 14:20 |
| 20:24 **records** 13:20 | | | | |

MORRIS v WOW BAO - 17-CH-12029 * 5 0 3 3 7 3 2 7 *
COURT HEARING - 11/17/2021

Page 38

support 8:17
sure 11:24 13:20
14:23 19:9
20:22 23:15
24:20 26:16
surmountable
22:19
system 5:1 6:24
7:12 9:17
10:17 18:7
19:4 20:1,20
systems 5:15
10:7 19:13
21:23

**T**
take 16:21 17:4
22:2
taken 31:9
talking 13:21
technology 9:18
10:4,9 13:7
Tell 19:6
tender 25:6
terms 15:6,19
28:21
testified 10:6
11:1 21:21
22:6 25:17
testify 8:2
testimony 8:18
10:3,13 27:2
thank 3:17 9:6
22:20 24:20
25:11 27:13
29:24 30:3
theirs 21:18
thing 21:15
things 12:20
26:22
think 9:9 12:14
12:20 14:5,9
15:2 16:20
20:22 22:8,8

25:21,22
third 5:14
thought 12:11
20:3,8
three 4:5 7:23
12:22 21:7,8
time 1:19 5:7
11:21 12:10,21
13:17 15:9
18:10 19:23
20:12 21:20
25:9
times 9:11
tons 20:1
tool 16:17,18
total 7:22
totally 19:10,20
tourists 13:3
Tower 13:1,22
town 13:15
tracking 4:24
16:18
traffic 13:2,2,8
13:16,23 16:19
20:9
trail 17:18
transaction 6:19
7:6,8,9 14:12
17:19 18:16
23:22,24,24
27:20
transactional
17:22
transactions
17:18 18:14
transcript 1:13
31:8
trial 29:7
tried 9:11
true 31:8
try 26:13
trying 22:2
two 7:23 10:5
11:16,18,19

12:24

**U**
ultimate 23:19
ultimately 22:11
underdeveloped
20:24 25:14
understand
15:13 17:24
19:10
understandable
20:23
understanding
25:23 26:18
uniformly 5:18
unpack 11:2
unreliable 13:9
unsupported
8:19
upgrade 21:4,7
21:10
upload 17:4
uploaded 23:18
24:4,4
uploads 9:19
use 5:12 7:18
18:6 25:9
useful 20:9
user 7:14,16
17:19 18:15
users 18:14
Usually 18:21

**V**
verb 16:22
versus 13:20
vet 14:9
vetted 12:9,15
14:5,8
videoconference
1:16
videoconferen...
3:2
view 19:19
violate 27:17

violated 5:18
violation 9:5
volume 4:2
vs 1:7 3:3

**W**
walk 4:20
WALKER 1:15
wanted 26:2
wants 26:10
Ward 2:9 3:7,7
9:7,8,24 11:24
12:2 14:23
15:8,13,17
16:20 17:7,9
17:24 18:8
19:9 20:22
24:16,20 25:12
25:13 29:7,13
wasn't 17:1
25:19
Water 13:1,22
way 5:19 10:1
10:16,20 11:1
13:19 17:3
21:1
ways 6:14 11:16
11:18
we'll 28:23
we're 13:19,20
24:12
week 29:8
weeks 29:9,10
went 15:23
weren't 14:6
whatsoever 26:9
willing 16:1
witnesses 21:21
25:16
word 27:12
work 10:7 25:19
29:11
worked 17:3
25:5

works 10:1,4,17
14:13 29:15
worth 8:12
wouldn't 15:5
19:24
Wow 1:8,8 2:12
3:3,23,24 7:23
16:12,12,14
18:4 21:3 23:8
25:20 28:1
write 29:19
wrote 10:10

**X**

**Y**
yeah 15:11
18:17 22:4
years 13:8,21,22
21:3

**Z**
zero 8:16 14:2
Zoom 1:16
ZOURAS 2:3

**0**
084-4648 31:14

**1**
1,369 5:19 9:3
10:00 29:6,16
100 2:4
1300 3:19
1300-and-some
15:20
1369 10:19,23
15:20 18:1,2
14 1:16
15th 29:6
17-CH-12029
1:7 3:4

**2**
2:00 1:19

# EXHIBIT 3

* 5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN and DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.:2023CH08102 |
| v. | ) ) ) | |
| TROY MANUFACTURING & DESIGN CO., | ) ) | |
| Defendant. | ) | |

**DECLARATION OF TIMOTHY FRANKLIN**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Timothy Franklin, certify under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1. I am over the age of 18 and the named Plaintiff in this lawsuit.

2. I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I could and would competently do so.

3. I understand that this is a proposed class action and that I am the proposed class representative.

4. I understand that a class action is a lawsuit brought by at least one person on behalf of a group of people who have been treated in the same or essentially the same manner by the defendant.

5. I understand the proposed class here includes other persons who, like me, Troy Manufacturing and Design ("Troy") did not: (a) inform in writing that it would store their facial

170615

Exhibit A

information; (b) inform in writing of the specific purposes and length of time for which it would collect, store, and use their facial information; (c) get a written release authorizing Troy to collect or store their facial information; or (d) give a written, publicly-available policy identifying Troy's retention schedule, or guidelines for permanently destroying worker facial information.

6.  I am willing to be a representative of the class.

7.  To my knowledge, I have no interests antagonistic to those of the class members. I believe my interests are entirely consistent with the class members' interests because I seek relief for myself and the class for Troy's common violation of its obligation to: (a) inform us in writing that it would store our facial information; (b) inform us in writing of the specific purposes and length of time for which it would collect, store, and use our facial information; (c) get written releases from us authorizing it to collect or store our facial information; and (d) maintain a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying our facial information.

8.  I understand that as a class representative I have the responsibility: a) to consider the class's interests when making any decisions about the case and make all such decisions in the interests of the class, not just my own interests; b) to participate in the case and consult with my attorneys about the case; and c) to testify at a deposition and/or trial and provide documents and information for use in the case if needed.

9.  I have arranged for my attorneys to advance all costs of this action, including the cost of notification of the class.

10. I understand that courts have sometimes awarded people money for serving the class representative, but that I am not entitled to any such payment, and that I have not been promised or guaranteed money for being the class representative.

11.    I am not employed by or related to my attorneys in this matter.

Timothy Franklin (Sep 7, 2023 16:55 CDT)

Timothy Franklin

3

# EXHIBIT 4

* 5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN and DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 2023CH08102 |
| v. | ) ) ) | |
| TROY MANUFACTURING & DESIGN CO., | ) ) | |
| Defendant. | ) | |

**DECLARATION OF DARIEN EVANS**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Darien Evans, certify under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1. I am over the age of 18 and the named Plaintiff in this lawsuit.

2. I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I could and would competently do so.

3. I understand that this is a proposed class action and that I am the proposed class representative.

4. I understand that a class action is a lawsuit brought by at least one person on behalf of a group of people who have been treated in the same or essentially the same manner by the defendant.

5. I understand the proposed class here includes other persons who, like me, Troy Manufacturing and Design ("Troy") did not: (a) inform in writing that it would store their facial

170611

Exhibit A

information; (b) inform in writing of the specific purposes and length of time for which it would collect, store, and use their facial information; (c) get a written release authorizing Troy to collect or store their facial information; or (d) give a written, publicly-available policy identifying Troy's retention schedule, or guidelines for permanently destroying worker facial information.

6.    I am willing to be a representative of the class.

7.    To my knowledge, I have no interests antagonistic to those of the class members. I believe my interests are entirely consistent with the class members' interests because I seek relief for myself and the class for Troy's common violation of its obligation to: (a) inform us in writing that it would store our facial information; (b) inform us in writing of the specific purposes and length of time for which it would collect, store, and use our facial information; (c) get written releases from us authorizing it to collect or store our facial information; and (d) maintain a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying our facial information.

8.    I understand that as a class representative I have the responsibility: a) to consider the class's interests when making any decisions about the case and make all such decisions in the interests of the class, not just my own interests; b) to participate in the case and consult with my attorneys about the case; and c) to testify at a deposition and/or trial and provide documents and information for use in the case if needed.

9.    I have arranged for my attorneys to advance all costs of this action, including the cost of notification of the class.

10.    I understand that courts have sometimes awarded people money for serving the class representative, but that I am not entitled to any such payment, and that I have not been promised or guaranteed money for being the class representative.

<div align="center">2</div>

<div align="right">Exhibit A</div>

* 5 0 3 3 7 3 2 7 *

11. I am not employed by or related to my attorneys in this matter.

*Darien Evans*
Darien Evans (Sep 7, 2023 13:42 CDT)

Darien Evans

# EXHIBIT 5

* 5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 2023CH08102 |
| v. | ) ) ) | |
| TROY DESIGN & MANUFACTURING CO. | ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF KEITH J. KEOGH**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

I, Keith J. Keogh, state:

1. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify to the matters stated herein, I could and would do so competently.

2. My firm has regularly engaged in major complex litigation, including class actions involving the Illinois Biometric Information Privacy Act ("BIPA"), and other consumer and privacy issues. My firm has the resources necessary to conduct complex class litigation, and experience prosecuting class actions of similar size, scope, and complexity to the instant case.

3. Keogh Law, Ltd. consists of six attorneys and focuses on consumer protection class actions. I am a shareholder of the firm and member of the bars of the United States Court of Appeals for the First, Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits, Eastern District

Exhibit A

of Wisconsin, Northern District of Illinois, Central District of Illinois, Southern District of Indiana, District of Colorado, Middle District of Florida, Southern District of Florida, the Illinois State Bar, and the Florida State Bar, as well as several bar associations and the National Association of Consumer Advocates.

4.      My firm was recently appointed as class counsel in five class actions arising under BIPA — *Heidelberg v. Forman Mills Inc.*, 2020 CH 04079 (Cir. Ct. Cook Cnty.); *Marquez v. Bobak Sausage Co.*, 2020 CH 04259 (Cir. Ct. Cook Cnty.); *Bayeg v. The Admiral at the Lake*, 2019 CH 08828 (Cir. Ct. Cook Cnty.); *Quarles v. Pret A Manger (USA) Ltd.*, 20-cv-7179, ECF No. 46 (N.D. Ill. Jan 18, 2022); and *Sherman v. Brandt Industries USA Ltd.*, 20-cv-1185, ECF No. 78 (C.D. Ill. March 22, 2022). My firm has also litigated dozens of other putative class actions arising under BIPA, including *Hanlon ex rel. G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill.); *Svoboda v. Frames for America, Inc.*, 1:21-cv-05509 (N.D. Ill.); *Steinberg v. Charles Indus., L.L.C.*, 2021 CH 01793 (Cir. Ct. Cook Cnty.); *Ortega v. The Expediting Co., Inc.*, 2021 CH 00969 (Cir. Ct. Cook Cnty.); *Fells v. Carl Buddig & Co.*, 2021 CH 00508 (Cir. Ct. Cook Cnty.); *Mathews v. Brightstar US, LLC*, 2021 CH 00167 (Cir. Ct. Lake Cnty.); *Roberts v. Graphic Packaging Int'l, LLC*, 3:21-cv-00750 (S.D. Ill.); *Willem v. Karpinske Enters., L.L.C.*, 2021 CH 00031 (Cir. Ct. Jo Daviess Cnty., Ill.); *Shafer v. Rodebrad Mgmt. Co., Inc.*, 2021 CH 00008 (Cir. Ct. Montgomery Cnty., Ill.); *Roberts v. TDS Servs., Inc.*, 2021 CH 00005 (Cir. Ct. Washington Cnty., Ill.); *Jenkins v. Regal Cinemas, Inc.*, 1:20-cv-03782 (N.D. Ill.); *Turner v. Crothall Healthcare, Inc.*, 1:20-cv-03026 (N.D. Ill.); *McFerren, et al. v. World Class Distribution, Inc.*, 1:20-cv-02912 (N.D. Ill.); *Stein v. Clarifai, Inc.*, 1:20-cv-01937 (N.D. Ill.); *Barton v. Swan Surfaces, LLC*, 3:20-cv-00499-SPM (S.D. Ill.); *Wells v. Medieval Times U.S.A., Inc.*, 2020 CH 06658 (Cir. Ct. Cook Cnty.); *Young v. Van Ru Credit Corp.*, 2020 CH 04303 (Cir. Ct. Cook Cnty.);

Exhibit A

*Isychko v. Jidd Motors, Inc.*, 2020 CH 04244 (Cir. Ct. Cook Cnty.); *Heidelberg v. Forman Mills Inc.*, 2020 CH 04079 (Cir. Ct. Cook Cnty.); *Hirmer v. Elite Med. Transp., LLC*, 2020 CH 04069 (Cir. Ct. Cook Cnty.); *Magner v. SMS-NA, LLC*, 2020 CH 00520 (Cir. Ct. Cook Cnty.); *Gumm v. Vonachen Servs., Inc.*, 2020 CH 00139 (Cir. Ct. Peoria Cnty., Ill.); *Bayeg v. Eden Mgmt., LLC*, 2019 CH 08821 (Cir. Ct. Cook Cnty.); and *Tran v. Simple Labs., LLC*, 2019 CH 07937 (Cir. Ct. Cook Cnty.).

5.     Keogh Law has been class counsel in a number of large all-cash class action settlements involving statutory privacy rights. *Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D. Fla. Mar. 11, 2019) ($30.9 million); *Richardson v. IKEA N. America Servs., LLC*, 2021 CH 5392 (Cir. Ct. Cook Ctny., Ill.) ($24.25 million); *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill.) ($20 million); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla. Feb. 18, 2016) ($11 million); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC (S.D. Fla. Aug. 2, 2016) ($7.5 million dollars); and *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May 13, 2021) ($6.3 million).

6.     The firm also was class counsel in two of the largest Telephone Consumer Protection Act ("TCPA") settlements in the country. *See Hageman v. AT&T Mobility LLC, et al.*, Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation*, et al., 12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel)(Final Approval Granted February 12, 2015 for a $75 million settlement).

7.     In addition to the above, the firm was lead or class counsel in the following class settlements: *Gebka v. Allstate Ins. Co.*, 19-cv-6662 (N.D. Ill. Sept. 27, 2022) (TCPA); *Iverson v.

Exhibit A

*Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022) (TCPA);

*Breda v. Cellco Partnership, et al.*, 16-cv-11512-DJC (D. Mass. Nov. 18, 2021) (TCPA); *Braver*

*v. Northstar Alarm Services, LLC*, No. 5:17-cv-00383-F (W.D. Okla. Nov. 3, 2020) (TCPA); *Goel*

*v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty. Jun. 8, 2020); *Cook*

*v. Wal-Mart Stores, Inc., et al.*, No. 3:16-cv-673-BRD-JRK (M.D. Fla. Jun. 4, 2020) (TCPA);

*Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo. May 18, 2020) (TCPA); *Keim*

*v. ADF MidAtlantic, LLC*, 2018 U.S. Dist. LEXIS 204548 (S.D. Fla. Mar. 20, 2020) (TCPA);

*Guarisma v. Alpargatas USA, Inc. d/b/a Havaianas*, Case No. 1:18-cv-24351-JEM (S.D. Fla. Feb.

27, 2020) (FACTA) (preliminary approval); *Hennessy, et al. v. Mid-America Apartment*

*Communities, Inc., et al.*, 4:17-cv-00872-BCW (W.D. Mo. Aug. 8, 2019); *Detter v. KeyBank, N.A.*,

No. 1616-cvl0036 (Jackson Cty., Mo. July 12, 2019) (FCRA); *Leung v XPO Logistics, Inc.*, 15

CV 03877 (N.D. Ill. 2018) (TCPA); *Martinez v. Medicredit*, 4:16CV01138 ERW (E.D. Mo. 2018)

(TCPA); *Martin v. Wells Fargo Bank, N.A.*, 16-cv-09483 (N.D. Ill. 2018) (FCRA); *Town &*

*Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al*, 15-CV-02419-PGS-LHG

(D. N.J. 2018)(TCPA); *Legg v. Am. Eagle Outfitters*, 2017 U.S. Dist. LEXIS 147645 (S.D.N.Y.

Sept. 8, 2017), *aff'd* 923 F.3d 85 (2d Cir. 2019) (TCPA); *Stahl v. RMK Mgmt. Corp.*, 2015 CH

13459 (Cir. Ct. Cook Cty. Sept. 14, 2017); *Tripp v. Berman & Rabin, P.A.*, 2017 U.S. Dist. LEXIS

3971 (D. Kan. Jan. 9, 2017); *Markos v Wells Fargo*, 15-cv-01156-LMM (N.D. Ga.) (TCPA);

*Ossola v Amex* 1:13-cv-04836 (N.D. Ill. 2016) (TCPA); *Luster v. Wells Fargo*, 15-1058-TWT

(N.D. Ga.) (TCPA); *Prather v Wells Fargo*, 15-CV-04231-SCJ (ND. Ga) (TCPA); *Joseph et al. v.*

*TrueBlue, Inc. et al.*, Case No. 3:14-cv-05963 (D. Wa.) (TCPA); *Willett, et al. v. Redflex Traffic*

*Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS; *In re Convergent Outsourcing, Inc.*

*Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn)

(Interim Co-Lead); *De Los Santos v Millword Brown, Inc.*, 9:13-cv-80670-DPG (S.D. Fla.) (TCPA); *Allen v. JPMorgan Chase Bank, N.A.* 13-cv-08285 (N.D. Ill. Judge Pallmeyer) (TCPA); *Cooper v NelNet*, 6:14-cv-314-Orl-37DAB (M.D. Fl.) (TCPA); *Thomas v Bacgroundchecks*.com, 3:13-CV-029-REP (E.D. Va.) (additional class counsel); *Lopera v RMS*, 12-c-9649 (N.D. Ill. Judge Wood); *Kubacki v Peapod*, 13-cv-729 (N.D. Ill. Judge Mason); *Wojcik v. Buffalo Bills, Inc.*, 8:12 CV 2414-SDM-TBM (M.D. Fla. Judge Merryday) (TCPA); *Curnal v. LVNV Funding, LLC.*, 10 CV 1667 (Wyandotte County, KS 2014) (Unlicensed debt collector under KS law); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. Judge Gottschall) (TCPA) (co-lead); *Brian J. Wanca, J.D., P.C. v. L.A. Fitness International, LLC*, Case No. 11-CV-4131 (Lake County, Ill. Judge Berrones) (TCPA); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA class); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, L.L.C., et al*, 12-cv-3671 (N.D. Ill. 2013 Judge Gottschall) (TCPA); *Saf-T-Gard v TSI*, 10-c-7671, (N.D. Ill. Judge Rowland) (TCPA); *Cain v Consumer Portfolio Services, Inc.* 10-cv-02697 (N.D. Ill. Judge Keys) (TCPA); *Iverson v Rick Levin & Associates*, 08 CH 42955 Circuit Court Cook County (Judge Cohen) (TCPA); *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. Judge Bucklo) (TCPA); *Jones v. Furniture Bargains, LLC*, 09 C 1070 (N.D. Ill) (FLSA collective action); *Saf-T-Gard v Metrolift*, 07 CH 1266 Circuit Court Cook County (Judge Rochford) (Co-Lead) (TCPA); *Bilek v Countrywide*, 08 C 498 (N.D. Ill. Judge Gottschell); *Pacer v. Rochenback*, 07 C 5173 (N.D. Ill. Judge Cole); *Overlord Enterprises* v. *Wheaton Winfield Dental Associates*, 04 CH 01613, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. SunGard*, 03 CH 21135, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. Golndustry*, 03 CH 21136, Circuit Court Cook County (Judge McGann) (TCPA); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D. Ill. 2008) (FACTA); *Harris v. Best Buy Co.*, 254 F.R.D. 82 (N.D. Ill. 2008) (FACTA); *Matthews*

*v. United Retail, Inc.,* 248 F.R.D. 210 (N.D. Ill. 2008) (FACTA); *Redmon v. Uncle Julio's, Inc.,*

249 F.R.D. 290 (N.D. Ill. 2008) (FACTA); *Harris v. Circuit City Stores, Inc.,* No. 07 C 2512, 2008

U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008) (FACTA); and *Pacer v. Rockenbach Chevrolet*

*Sales, Inc.,* 07 C 5173 (N.D. Ill. 2008) (FACTA).

      8.    In addition, I was the attorney primarily responsible for the following class

settlements: *Wollert v. Client Services,* 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas* v.

*Vacation Break USA,* 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald* v.

*Washington Mutual Bank,* supra; *Wright* v. *Bank One Credit Corp.,* 99 C 7124 (N.D. Ill. Judge

Guzman); *Arriaga* v. *Columbia Mortgage,* 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier* v.

*Provident Mortgage,* 00 C 5464 (N.D. Ill. Judge Coar); *Largosa* v. *Universal Lenders,* 99 C 5049

(N.D. Ill. Judge Leinenweber); *Arriaga* v. *GNMortgage,* (N.D. Ill. Judge Holderman); *Williams* v.

*Mercantile Mortgage,* 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid* v. *First American Title,* 00 C

4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant* v. *Old Kent, 99* C 6846 (N.D. Ill. Magistrate

Judge Bobrick); *Mendelovits* v. *Sears,* 99 C 4730 (N.D. Ill. Magistrate Judge Brown); *Leon* v.

*Washington Mutual,* 01 C 1645 (N.D. Ill. Judge Alesia).

      9.    Some reported cases of the firm involving consumer protection include*: Cranor v.*

*5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021); *Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir.

2019); *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018); *Susinno v. Work Out*

*World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (finding a "nuisance and invasion of privacy

resulting from a single prerecorded telephone call"); *Franklin v. Parking Revenue Recovery Servs.,*

832 F.3d 741 (7th Cir. 2016); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015); *Galvan*

*v. NCO Portfolio Mgmt. Inc.*, 794 F.3d 716, 721 (7th Cir. 2015); S*mith v. Greystone,* 772 F.3d 448

(7th Cir. 2014); *Clark v Absolute Collection Agency,* 741 F.3d 487 (4th 2014); *Lox v. CDA, Ltd.,*

Exhibit A

689 F.3d 818 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967 (7th Cir. Ill. 2012);

*Catalan v. GMAC Mortgage Corp.*, No. 09-2182 (7th Cir. 2011); *Gburek v. Litton Loan*, 614 F.3d

380 (7th Cir. 2010); *Sawyer v. Ensurance Insurance Services* consolidated with *Killingsworth v.*

*HSBC Bank Nev., NA.*, 507 F3d 614, 617 (7th Cir. 2007), *Echevarria et al. v. Chicago Title and*

*Trust Co.*, 256 F3d 623 (7th Cir. 2001*); Demitro* v. *GMAC,* 388 Ill. App. 3d 15, 16 (1st Dist. 2009);

*Hill v. St. Paul Bank,* 329 Ill. App. 3d 7051, 1768 N.E.2d 322 (1st Dist. 2002); *In re Mercedes-*

*Benz Tele Aid Contract Litig.*, 2009 U.S. Dist. LEXIS 35595 (D.N.J. 2009); *Catalan v. RBC Mortg.*

*Co.*, 2009 U.S. Dist. LEXIS 26963 (N.D. Ill. 2009); *Elkins v. Equifax, Inc.*, 2009 U.S. Dist. LEXIS

18522 (N.D. Ill. 2009*); Harris v. DirecTV Group, Inc.*, 2008 U.S. Dist. LEXIS 8240 (N.D. Ill.

2008); *In re TJX Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S.

Dist. LEXIS 38258 (D. Kan. 2008); *Martin v. Wal- Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS

89715 (N.D. Ill. 2007); *Elkins v. Ocwen Fed. Sav. Bank Experian Info. Solutions, Inc.*, 2007 U.S.

Dist. LEXIS 84556 (N.D. Ill. 2007); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012

(N.D. Ill. 2007); *Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303 (N.D. Ill.

2007); *Cook v. River Oaks Hyundai, Inc.*, 2006 U.S. Dist. LEXIS 21646 (N.D. Ill. 2006); *Gonzalez*

*v. W. Suburban Imps.*, Inc., 411 F. Supp. 2d 970 (N.D. Ill. 2006); *Eromon v. GrandAuto Sales,*

*Inc.*, 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams v. Precision Recovery, Inc.*, 2004 U.S. Dist.

LEXIS 6190 (N.D. Ill. 2004); *Doe v. Templeton,* 2003 U.S. Dist. LEXIS 24471 (N.D. Ill. 2003);

*Ayala v. Sonnenschein Fin. Servs.*, 2003 U.S. Dist. LEXIS 20148 (N.D. Ill. 2003); *Gallegos v.*

*Rizza Chevrolet, Inc., 2003* U.S. Dist. LEXIS 18060 (N.D. Ill. 2003); *Szwebel v. Pap's Auto Sales,*

*Inc.*, 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone v. Bank of America,* 173 F. Supp.2d

809 (N.D. Ill. 2001); *Leon v. Washington Mutual Bank,* 164 F. Supp.2d 1034 (N.D. Ill. 2001);

*Ploog v. HomeSide Lending,* 2001 WL 987889 (N.D. Ill. 2001); *Christakos* v. *Intercounty Title,*

* 5 0 3 3 7 3 2 7 *

196 F.R.D. 496 (N.D. Ill. 2000); *Batten v. Bank One,* 2000 WL 1364408 (N.D. Ill. 2000); *McDonald v. Washington Mutual Bank,* 2000 WL 875416 (N.D. Ill. 2000); and *Williamson v. Advanta Mtge Corp.,* 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The *Christakos* case significantly broadened title and mortgage companies' liability under Real Estate Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a class regarding mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

10.     My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide.*

11.     I have lectured extensively on consumer litigation.  For example:

a.  Presented at the 2018 Fair Debt Collection Training Conference for two sessions on the TCPA.

b.  Presented at the National Consumer Law Center 2017 annual conference on the TCPA.

c.  Presented at the National Consumer Law Center 2016 annual conference on the TCPA.

d.  Presented at the 2016 Fair Debt Collection Training Conference for a session on TCPA Developments.

e.  Presented for the National Association of Consumer Advocates November 2015 webinar titled Developments and Anticipated Impact of Recent FCC TCPA Rules.

f.  Presented at the National Consumer Law Center 2015 annual conference in San Antonio, Tx. on the TCPA.

g.  Presented at the 2015 Fair Debt Collection Training Conference for three sessions on the TCPA.

h.  Presented at the National Consumer Law Center 2014 annual conference in Tampa Fl. for two sessions on the TCPA.

i.  Panelist for the December 2013 Strafford CLE Webinar titled TCPA Class Actions: Pursuing or Defending Claims Over Phone, Text and Fax Solicitations.

j.  Panelist for the December 2014 Chicago Bar Association Class Action Seminar titled "Class Action Settlements in the Seventh Circuit: Navigating Turbulent Waters."

k.  Presented at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

l.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mirns. Leveraging TCPI lectured at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

m.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology.

n.  Presented for the National Association of Consumer Advocates November 2013 webinar titled Current Telephone Consumer Protection Act Issues Regarding Cell Phones.

o.  Presenter for the November 2013 Chicago Bar Association Class Action Committee presentation titled Future of TCPA Class Actions.

p.  Speaker at the Social Security Administration's Chicago office in August 2013 on a presentation on identity theft, which included consumers' rights under the Fair Credit Reporting Act.

q.  Panelist for the May 14, 2013 Chicago Bar Association Class Action Seminar titled "The Shifting Landscape of Class Litigation" as well as for the March 20, 2013 Strafford CLE webinar titled "Class Actions for Telephone and Fax Solicitation and Advertising Post-

Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology."

r.  Lectured at the June 6, 2013 Consumer Law Committee of the Chicago Bar Association on the topic "Employment Background Reports under the Fair Credit Reporting Act: Improper consent forms to failure to provide background report prior to adverse action."

s.  Lectured at the 2013 Fair Debt Collection Training Conference for three sessions on the TCPA.

t.  Presented at the 2012 National Consumer Law Center annual conference for a session on the TCPA.

u.  Presented at the 2012 Fair Debt Collection Training Conference for a session on the TCPA.

v.  Panelist for Solutions for Employee Classification & Wage/Hour Issues at the 2011 Annual Employment Law Conference hosted by Law Bulletin Seminars.

w.  Lectured at the 2011 National Consumer Law Center conference for a session titled Telephone Consumer Protection Act: Claims, Scope, Remedies as well as lectured at the same 2011 National Consumer Law Center conference for a double session titled ABC's of Class Actions.

x.  Taught *Defenses to Foreclosures* for Lorman Education Services, which was approved for CLE credit, in 2008 and 2010.

y.  Guest lecturer on privacy issues at University of Illinois at Urbana-Champaign School of Law. In March 2010.

z.  Guest speaker for the Legal Services Office of The Graduate School and Kellogg MBA Program at Northwestern University for its seminar titled: "Financial Survival Guide: Legal Strategies for Graduate Students During A Period of Economic Uncertainty."

Exhibit A

12.     I was selected as an Illinois Super Lawyer in 2014-2021 and an Illinois Super Lawyer Rising Star each year from 2008 through 2013 and my cases have been featured in local newspapers such as the Chicago Tribune, Chicago Sun-Times, The Naperville Sun, Daily Herald and RedEye.

**Timothy J. Sostrin**

13.     Timothy J. Sostrin is a partner with the firm joining in 2011. He is a member in good standing of the Illinois bar, the U.S. District Court District of Colorado, U.S. District Court Northern District of Illinois, U.S. District Court Northern and Southern Districts of Indiana, U.S. District Court Eastern and Western Districts of Michigan, U.S. District Court Eastern District of Missouri, U.S. District Court Southern District of Texas and U.S. District Court Eastern and Western Districts of Wisconsin.

14.     Timothy J. Sostrin has zealously represented consumers in Illinois and in federal litigation nationwide against creditors, debt collectors, retailers, and other businesses engaging in unlawful practices. Tim has extensive experience with consumer claims brought under the Fair Debt Collection Practices Act, The Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Electronic Fund Transfer Act, and Illinois law. Some of Tim's representative cases include: *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (argued); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015) (argued); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (granting class certification); *Galvan v. NCO Financial Systems, Inc.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012) (granting class certification); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, LLC*, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (granting class certification); *Jelinek v. The Kroger Co.*, 2013 U.S. Dist. LEXIS 53389 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Hanson*

*v. Experian Information Solutions, Inc.*, 2012 U.S. Dist. LEXIS 11450 (N.D. Ill. January 27, 2012) (denying defendant's motion for summary judgment); *Warnick v. DISH Network, LLC*, 2013 U.S. Dist. LEXIS 38549 (D. Colo. 2013) (denying defendant's motion to dismiss); *Torres v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31238 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011) (denying defendant's motion for summary judgment); *Frydman et al v. Portfolio Recovery Associate*, 2011 U.S. Dist. LEXIS 69502 (N.D. Ill 2011) (denying defendant's motion to dismiss); *Rosen Family Chiropractic S.C. v. Chi-Town Pizza*, 2013 U.S. Dist. LEXIS 6385 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010) (granting summary judgment on TCPA claim);

15.    Tim is a member of the National Association of Consumer Advocates and ISBA. He received his Juris Doctorate, *cum laude*, from Tulane University Law School in 2006.

**Michael S. Hilicki**

16.    In 2014, Michael Hilicki joined the firm. He has spent nearly all of his nearly 30-year legal career helping consumers and workers subjected to unfair and deceptive business practices, and unpaid wage practices. He is experienced in a variety of consumer and wage-related areas including, but not limited to, the Fair and Accurate Credit Transactions Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud & Deceptive Business Practices Act, Telephone Consumer Protection Act, Fair Labor Standards Act and the Illinois Wage & Hour Law. He is experienced in all aspects of consumer and wage litigation, including arbitrations, trials and appeals.

Exhibit A

17. Examples of the numerous certified class actions in which Michael has represented consumers or workers include: *Fausett v. Walgreen Co.*, 19 CH 675 (Cir. Ct. Lake Cnty., Ill., Mar. 1, 2023); *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill., May 4, 2022); *Iverson v. Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022); *Altman v. White House Black Market, Inc.*, No. 21-A-735 (Cobb Cnty., Ga., Dec. 9, 2021); *Guarisma v. Alpargatas USA, Inc. d/b/a Havaianas*, Case No. 2020 CH 7426 (Cir. Ct. Cook Ctny., May 24, 2021); *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May 13, 2021); *Goel v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty.); *Muransky v. Godiva Chocolatier, Inc.*, No. 15-cv-60716-WPD (S.D. Fla.); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-CMA (S.D. Fla.); *Stahl v. RMK Mgmt. Corp.*, 2015 CH 13459 (Cir. Ct. Cook Cty.); *Altman v. White House Black Market, Inc.*, 15-cv-2451-SCJ (N.D. Ga.); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.); *Legg v. Laboratory Corporation of America, Holdings, Inc.*, No. 14-cv-61543-RLR (S.D. Fla.); *Joseph v. TrueBlue, Inc.*, 14-cv-5963-BHS (W.D. Wash.); *In Re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn); *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499 (D. Kan. 2015); *Lanteri v. Credit Protection Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345 (S.D. Ind. Sept. 26, 2018); *Eibert v. Jaburg & Wilk, P.C.*, 13-cv-301 (D. Minn.); *Kraskey v. Shapiro & Zielke, LLP*, 11-cv-3307 (D. Minn.); *Short v. Anastasi & Associates, P.A.*, 11-cv-1612 SRN/JSM (D. Minn.); *Kimball v. Frederick J. Hanna & Associates, P.C.*, 10-cv-130 MJD/JJG (D. Minn.); *Murphy v. Capital One Bank*, 08 C 801 (N.D. Ill.); *Nettles v. Allstate Ins. Co.*, 02 CH 14426 (Cir. Ct. Cook Cty.); *Sanders v. OSI Educ. Servs., Inc.*, 01 C 2081 (N.D. Ill.); *Kort v. Diversified Collection Servs., Inc.*, 01 C 0689 (N.D. Ill.); *Hamid v. Blatt Hasenmiller, et al.*, 00 C 4511 (N.D. Ill.); *Durkin v. Equifax Check Servs., Inc.*, 00 C 4832 (N.D. Ill.); *Torres v.*

Exhibit A

*Diversified Collection Services, et al.*, 99-cv-00535 (RL-APR) (N.D. Ind.); *Morris v. Trauner*

*Cohen & Thomas*, 98 C 3428 (N.D. Ill.), *Mitchell v. Schumann*, 97 C 240 (N.D. Ill.); *Pandolfi, et*

*al. v. Viking Office Prods., Inc.*, 97 CH 8875 (Cir. Ct. Cook Cty.); *Trull v. Microsoft Corp.*, 97 CH

3140 (Cir. Ct. Cook Cty.); *Deatherage v. Steven T. Rosso, P.A.*, 97 C 0024 (N.D. Ill.); *Young v.*

*Meyer & Njus, P.A.*, 96 C 4809 (N.D. Ill.); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 96 C

3233 (N.D. Ill.); *Holman v. Red River Collections, Inc.*, 96 C 2302 (N.D. Ill.); *Farrell v. Frederick*

*J. Hanna*, 96 C 2268 (N.D. Ill.); *Blum v. Fisher and Fisher*, 96 C 2194 (N.D. Ill.); *Riter v. Moss*

*& Bloomberg, Ltd.*, 96 C 2001 (N.D. Ill.); *Clayton v. Cr Sciences Inc.*, 96 C 1401 (N.D. Ill.);

*Thomas v. MAC/TCS Inc., Ltd.*, 96 C 1519 (N.D. Ill.); *Young v. Bowman, et al.*, 96 C 1767 (N.D.

Ill.); *Depcik v. Mid-Continent Agencies, Inc.*, 96 C 8627 (N.D. Ill.); and *Dumetz v. Alkade, Inc.*,

96 C 4002 (N.D. Ill.).

18.    Michael also has successfully argued a number of appeals, including *Evans v.*

*Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018); *Muransky v. Godiva Chocolatier,*

*Inc.*, 922 F.3d 1175 (11th Cir. 2019) *(vacated for rehearing en banc)*; *Franklin v. Parking Rev.*

*Recovery Servs.*, 832 F.3d 741 (7th Cir. 2016); *Smith v. Greystone Alliance, LLC*, 772 F.3d 448

(7th Cir. 2014); *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004); and *Weizeorick v. ABN AMRO*

*Mortg. Group, Inc.*, 337 F.3d 827 (7th Cir. 2003).

19.    Michael has lectured on consumer law issues at Upper Iowa University, the

Chicago Bar Association, and the National Consumer Law Center. He is a member of the Trial

Bar of the United States District Court for the Northern District of Illinois, and he has represented

consumers in state and federal courts around the country on a *pro hac vice* basis.

20.     Michael's published work includes *"AND THE SURVEY SAYS..." When Is Evidence of Actual Consumer Confusion Required to Win a Case Under Section 1692g of the Fair Debt Collection Practices Act in the Seventh Circuit?*, 13 Loy. Consumer L. Rev. 224 (2001).

**Theodore H. Kuyper**

21.     In March 2018, Theodore H. Kuyper joined the firm. Ted is currently a member in good standing of the Illinois State Bar, the United States District Court for the Northern District of Illinois, and the Seventh Circuit Court of Appeals, and has been admitted to practice *pro hac vice* in several additional United States District Courts.

22.     Ted has diverse experience prosecuting and defending class action and other large-scale litigation in trial and appellate courts under a variety of substantive laws, including without limitation the Telephone Consumer Protection Act, the Racketeer Influenced & Corrupt Organizations Act (RICO), the Fair Credit Reporting Act, the Illinois Consumer Fraud & Deceptive Business Practices Act, and the Real Estate Settlement Procedures Act, as well as Illinois and other state statutory and common law.

23.     Since joining the firm, Ted has represented consumers as counsel of record or otherwise in the following putative class actions: *Cranor v. Skyline Metrics, LLC*, No. 4:18-cv-00621-DGK (W.D. Mo.); *Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo.); *Cranor v. Classified Advertising Ventures, LLC, et al.*, No. 4:18-cv-00651-HFS (W.D. Mo.); *Morgan v. Orlando Health, Inc., et al.*, No. 6:17-cv-01972-CEM-GJK (M.D. Fla.); *Morgan v. Adventist Health System/Sunbelt, Inc.*, No. 6:18-cv-01342-PGB-DCI (M.D. Fla.); *Burke v. Credit One Bank, N.A., et al.*, No. 8:18-cv-00728-EAK-TGW (M.D. Fla.); *Motiwala v. Mark D. Guidubaldi & Associates, LLC*, No. 1:17-cv-02445 (N.D. Ill.); *Buja v. Novation Capital, LLC*, No.

Exhibit A

9:15-cv-81002-KAM (S.D. Fla.); and *Detter v. Keybank, N.A.*, No. 1616-CV10036 (Circuit Ct. of Jackson County, Missouri).

24.　　Immediately prior to joining Keogh Law, Ted worked at a boutique Chicago law firm where he represented clients in a range of complex commercial and other litigation, including contract, tort, professional liability, premises and products liability, bad faith and class action. Previously, he was an associate at a nationally-renowned class action law firm, where he focused on complex commercial, consumer, class action and other large-scale, high-stakes litigation.

25.　　Ted earned his Juris Doctorate from Washington University School of Law in St. Louis in 2007. During law school, he worked as a Summer Extern for Magistrate Judge Morton Denlow (Ret.) of the United States District Court for the Northern District of Illinois, served as primary editor and executive board member of the Global Studies Law Review, and authored a student note that was published in 2007. Ted also earned a number of scholarships and other academic accolades, including the Honors Scholar Award (top 10% for academic year) and repeated appearances on the Dean's List.

**Gregg Barbakoff**

26.　　Gregg Barbakoff joined the firm in 2019. He is a civil litigator who focuses his practice on consumer law. Gregg has extensive experience litigating individual and class claims arising under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud and Deceptive Practices Act, Magnuson-Moss Warranty Act, and various consumer protection statutes.

27.　　Gregg graduated *magna cum laude* from the Chicago-Kent College of law, where he was elected to the Order of the Coif. While in law school, Gregg received the Class of 1976

168945

<span style="color:blue">Exhibit A</span>

Honors Scholarship, competed as a senior member of the Chicago-Kent Moot Court Team, and served as an editor for The Seventh Circuit Review, in which he was also published. Gregg earned his undergraduate degree from the University of Colorado at Boulder.

28.     Gregg has been named an Illinois Rising Star by *Superlawyers* Magazine each year since 2015, and was named an Associate Fellow by the Litigation Counsel of America.  He is licensed to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Seventh Circuit

29.     Prior to joining Keogh Law, Gregg worked at a mid-size litigation firm that specialized in consumer litigation, and leading plaintiff's firm that focused on commercial disputes and consumer class actions.

30.     The following are representative class actions in which Gregg has served as counsel of record or otherwise: *Roberts v. TIAA, FSB* (Case No. 2019 CH 04089, Cook County, Ill.); *Corrigan v. Seterus* (Case No. 17-cv-02348); *Gentleman v. Mass. Higher Ed. Corp., et al* (Case No. 16-cv-3096, N.D. Ill.); *Cibula v. Seterus* (Case No. 2015CA010910, Palm Beach County, Fla.); *Ciolini v. Seterus* (Case No. 15-cv-09427, N.D. Ill.); *Mednick v. Precor Inc.* (Case No. 14-cv-03624, N.D. Ill.); *Illinois Nut & Candy Home of Fantasia Confections, LLC v. Grubhub, Inc., et al.* (Case No. 14-cv-00949, N.D. Ill.); *Dr. William P. Gress et al. v. Premier Healthcare Exchange West, Inc.* (Case No. 14-cv-501, N.D. Ill.); *Stephan Zouras LLP v. American Registry LLC* (Case No. 14-cv-943, N.D. Ill.); *Mullins v. Direct Digital* (Case No. 13-cv-01829, N.D. Ill.); *In Re Prescription Pads TCPA Litig.* (Case No. 13-cv-06897, N.D. Ill); *Townsend v. Sterling* (Case No. 13-cv-3903, N.D. Ill); *Windows Plus, Incorporated v. Door Control Services, Inc.* (Case No. 13-cv-07072, N.D. Ill); *In re Energizer Sunscreen Litig.*, (Case No. 13-cv-00131, N.D. Ill.); *Padilla v. DISH Network LLC* (Case No. 12-cv-07350, N.D. Ill.); *Lloyd v. Employment Crossing*

Exhibit A

(Case No. BC491068 (Los Angeles County, Cal.); *In re Southwest Airlines Voucher Litig.* (Case No. 11-cv-8176, N.D. Ill.).

**William Sweetnam**

31. William Sweetnam joined the firm in 2020 as of counsel. Mr. Sweetnam concentrates his practice on class action and complex litigation and appeals, having prosecuted hundreds of consumer, shareholder and antitrust class action in federal and state courts across the country. In addition to representing both plaintiffs and defendants in a wide variety of cases involving both economic and non-economic injuries, Mr. Sweetnam has acted as lead counsel, co-lead counsel and has been a member of the executive and steering committees in consumer, antitrust and other class action, complex and multidistrict litigation matters.

32. Notably, Mr. Sweetnam was appointed sole lead counsel in *Kelly v. Old National Bank*, 82C01-1012-CT-627 (Cir. Ct Vanderburgh Cty., Ind.), in which he obtained a settlement valued at more than 90% of the class' damages incurred as a result of the unlawful overdraft fee scheme alleged therein, far exceeding the results obtained by much larger firms against some the countries' largest banks, resulting in individual consumers receiving several thousand dollars in refunded overdraft fees.

33. Additionally, Mr. Sweetnam has numerous published, class action decisions including *Jett v. Warrantech Corp.*, ---F.Supp.3d---, 2020 WL 525045 (S.D. Ill. 2020); *Old Nat. Bank v. Kelly*, 31 N.E.3d 522 (Ind. App. 2014); *Nava v. Sears, Roebuck & Co.*, 995 N.E.2d 303 (1st Dist. 2013); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010); *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010); *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249 (S.D. W. Va. 2010); *Aleman v. Park West Galleries, Inc.*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009); *In re Park West Galleries, Inc. Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358 (J.P.M.L. 2009); *In re*

*Digitek Prod. Liab. Litig.*, 648 F. Supp. 2d 795 (S.D. W. Va. 2009); *Vernon v. Qwest Communs.*

Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d

758 (N.D. Ohio 2009); *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 626 F. Supp.

2d 1353 (J.P.M.L. 2009); *In re Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320

(J.P.M.L. 2009); *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009); *Coneff v. AT&T Corp.*,

620 F. Supp. 2d 1248 (W.D. Wash. 2009); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D.

Mich. 2009); *In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009);

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *In re Digitek Prods. Liab.*

*Litig.*, 571 F. Supp. 2d 1376 (J.P.M.L. 2008); *In re BP Prods. N. Am., Inc.*, 560 F. Supp. 2d 1377

(J.P.M.L. 2008); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008); *In*

*re Nissan N. Am., Inc. Odometer Litig.*, 542 F. Supp. 2d 1367 (J.P.M.L. 2008); *Berry v. Budget*

*Rent a Car Sys.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007); *Cook v. Home Depot U.S.A., Inc.*, 62

U.C.C. Rep. Serv. 2d (Callaghan) 197 (S.D. Ohio 2007); *Womack v. Nissan N. Am., Inc.*, 550 F.

Supp. 2d 630 (E.D. Tex. 2007); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755 (7th Cir. 2006);

*Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805 (7th Cir. 2005); *Knudsen v. Liberty Mut. Ins. Co.*,

405 F. Supp. 2d 916 (N.D. Ill. 2005); *Enzenbacher v. Browning-Ferris Indus. of Ill.*, 774 N.E.2d

858 (Ill. App. 2002); *In re Nat'l Life Ins. Co.*, 247 F. Supp. 2d 486 (D. Vt. 2002); *Kaskel v. N.*

*Trust Co.*, 45 U.C.C. Rep. Serv. 2d (Callaghan) 827 (N.D. Ill. 2001); *Wardrop v. Amway Asia Pac.*

*Ltd.*, Fed. Sec. L. Rep. (CCH) P91,346 (S.D.N.Y. Mar. 20, 2001); and *Grove v. Principal Mut.*

*Life Ins. Co.*, 14 F. Supp. 2d 1101 (S.D. Iowa 1998).

34.     Before joining Keogh Law, Ltd., Mr. Sweetnam began his career as a lawyer

representing plaintiffs in catastrophic injury cases in 1994. In 1995, he began defending corporate,

Exhibit A

insurance industry and insurance policyholder clients and ran a successful class action litigation boutique, Sweetnam LLC, established in 2008.

35.     Prior to that, Mr. Sweetnam was a partner at a Chicago class action litigation boutique, where he perfected his skills representing victims of consumer fraud and deceptive and anti-competitive practices.  Mr. Sweetnam has extensive litigation experience in a variety of nationwide class actions in state and federal courts alleging violations of consumer fraud and deceptive trade practices statutes, breach of warranty and violations of federal securities laws, shareholder derivative suits and appeals.

36.     Mr. Sweetnam began his career as a class action and complex litigation practitioner with what is now known as Kessler Topaz Meltzer & Check, LLP, one of the largest class action law firms in the United States, where he was part of a team of lawyers involved in prosecuting class actions challenging abusive marketing practices in several areas involving life insurance and annuities. These cases led to class settlements valued at hundreds of millions of dollars, and sometimes even billions of dollars, with such major life insurance companies as Prudential, Met Life, John Hancock, New York Life, State Farm, American Express/IDS, Transamerica, and many others, as well as to numerous changes in industry sales practices.

37.     Mr. Sweetnam continued his career at one of Chicago's oldest and most respected class action litigation firms, Krislov & Associates, Ltd., where he represented consumers and investors engaged in an array of nationwide class actions in state and federal courts involving everything from consumer fraud to breach of warranty and securities and shareholder derivative lawsuits and appeals.

Exhibit A

* 5 0 3 3 7 3 2 7 *

38.     Additionally, Ms. Sweetnam is also a member of a number of associations, including The Federal Bar Associations, Chicago Chapter, The Chicago Bar Association, and The Catholic Lawyers Guild of Chicago.

39.     Mr. Sweetnam received his bachelor's degree at The University of Michigan, Ann Arbor, Michigan in 1990. And later received his juris doctorate degree at the University of Michigan and the De Paul University College of Law where he received the American Jurisprudence Award in Constitutional Law and was a member of the Journal of Art and Entertainment Law. He has written and lectured on class actions and class action litigation reform.

40.     Mr. Sweetnam has lectured on and lectured on such topics as the following: (a) *Law of Remedies: Damages, Equity and Restitution,* at Chicago-Kent College of Law (2019); (b) *Law of Remedies: Class Actions and Complex Litigation,* at Chicago-Kent College of Law (2018); (c) *The Class Action Fairness Act of 2005: Selecting a Forum and Keeping It,* at the Illinois Institute for Continuing Legal Education in Chicago, Illinois (2008); (d) *Federalization of Consumer Class Action Litigation: The Class Action Fairness Act of 2005,* at the John Marshall Law School in Chicago, Illinois (2006).

I, Keith J. Keogh, certify under §1-109 that the above statements are true and correct to the best of my knowledge, information and belief.

Executed at Chicago, Illinois, on September 12, 2023.

By: *s/ Keith J. Keogh*
Keith J. Keogh (ARDC 6257811)
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
keith@keoghlaw.com

168945

Exhibit A

**DONOHUE BROWN**
**MATHEWSON & SMYTH LLC**

Attorneys at Law                              131 South Dearborn Street • Suite 1600 • Chicago, IL 60603
                                              Telephone (312) 422-0900 • Fax (312) 422-0909 • www.dbmslaw.com

**EMILY E. DORY**
Writer's Direct Line 312-422-0976
Email: dory@dbmslaw.com

November 2, 2023

keith@keoghlaw.com
mhilicki@keoghlaw.com
Keith J. Keogh
Keogh Law, Ltd.
55 W Monroe Street
Suite 3390
Chicago, IL 60603


Re:   Franklin T, et al. v Troy Design & Manufacturing Co.
      Court No.:   2023 CH 08102
      Our File:    230794

Dear Counsel:

Please find attached copies of Notice of Removal and Notice of Filing of Removal in *Timothy Franklin, et al., v. Troy Design & Manufacturing Co.*, Case No. 2023-CH-08102.


                         Very truly yours,

                         *Emily E. Dory*

                         Emily E. Dory

EED/ic
Enclosures

Exhibit B

## IN THE CIRCUIT COURT
## OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 2023CH08102 |
| vs. | ) ) | JUDGE THADDEUS L. WILSON |
| TROY DESIGN & MANUFACTURING CO., | ) ) | |
| Defendant. | | |

## <u>NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT</u>

Please take notice that on November 2, 2023, Defendant Troy Design & Manufacturing Co. filed a Notice of Removal of the above-entitled action with the Clerk of the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1441 and 1446. A true and correct copy of the Notice of Removal is attached hereto as Exhibit 1.

Exhibit C

Dated: November 2, 2023                    Respectfully submitted,


                                           By: /s/ *Karen Kies DeGrand*_____

                                           Karen Kies DeGrand, ARDC # 6191140
                                           Donohue Brown Mathewson & Smyth LLC
                                           140 S. Dearborn, Suite 800
                                           Chicago, Illinois 60603
                                           (312) 422-0900
                                           degrand@dbmslaw.com

                                           Attorney for Defendant Troy Design & Manufacturing
                                           Co.

2

Exhibit C

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2023, I caused to be filed the foregoing document with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, electronically, and I hereby certify that I have caused to be served via eFileIL:

Keith J. Keogh
Michael S. Hilicki
55 W. Monroe
Suite 3390
Chicago, IL 60603
Phone: (317) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.comS

_/s/ Karen Kies DeGrand_
Karen Kies DeGrand, ARDC # 6191140
Donohue Brown Mathewson & Smyth LLC
140 S. Dearborn, Suite 800
Chicago, Illinois 60603
(312) 422-0900
degrand@dbmslaw.com

Exhibit C



<div align="right">

**CT Corporation**
**Service of Process Notification**
10/03/2023
CT Log Number 544852784

</div>

## Service of Process Transmittal Summary

**TO:**   Ruth Seitz
Troy Design & Manufacturing CO.
14425 SHELDON RD
PLYMOUTH, MI 48170

**RE:**   **Process Served in Illinois**

**FOR:**   TROY DESIGN & MANUFACTURING CO.  (Domestic State: MI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated vs. TROY DESIGN & MANUFACTURING CO. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summonses, Attachment(s), Complaint, Cover Sheet, Motion, Exhibit(s) |
| **COURT/AGENCY:** | Cook County Circuit Court - Law Division, IL<br>Case # 2023CH08102 |
| **NATURE OF ACTION:** | Violation of the Illinois Biometric Privacy Act |
| **PROCESS SERVED ON:** | C T Corporation System, Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 10/03/2023 at 13:41 |
| **JURISDICTION SERVED:** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, not counting the day of service |
| **ATTORNEY(S)/SENDER(S):** | Keith J. Keogh<br>Timothy Franklin & Darien Evans<br>55 W. Monroe St, Suite 3390<br>Chicago, IL 60603<br>312-726-1092 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/03/2023, Expected Purge Date: 10/08/2023<br><br>Image SOP<br><br>Email Notification,  Georgette Robin  grobin48@troydm.com<br><br>Email Notification,  Ruth Seitz  rseitz10@troydm.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

<div align="right">

Page 1 of  2

</div>

<div align="center">

<span style="color:purple">**Exhibit 1**</span>        <span style="color:blue">**Exhibit C**</span>

</div>



**CT Corporation**
**Service of Process Notification**
10/03/2023
CT Log Number 544852784

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Exhibit 1                                     Exhibit C

 Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:** Tue, Oct 3, 2023
**Server Name:** Sheriff Drop

| Entity Served | TROY DESIGN & MANUFACTURING CO. |
|---|---|
| Case Number | 2023CH08102 |
| Jurisdiction | IL |

| Inserts | | |
|---|---|---|
| | | |



Exhibit 1                    Exhibit C

FILED
11/2/23 2:41 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24340537

* 5 0 3 3

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**                          **(12/01/20) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Timothy Franklin & Darien Evans, individually
and on behalf of others similarly situated,

                                        Plaintiff(s)

                    v.                              Case No.    2023CH08102

Troy Design & Manufacturing Co.,


c/o Registered Agent, C T Corporation System
208 S. LaSalle St., Ste. 814, Chicago, IL 60604

                    Address of Defendant(s)

Please serve as follows (check one):    ○ Certified Mail    • Sheriff Service    ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE
COURTHOUSE**. You will need: a computer with internet access; an email address; a completed
Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/
appearance.asp; and a credit card to pay any required fees.


**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Exhibit 1                                                    Exhibit C

Summons - Alias Summons - (12/01/20) GCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

---

☞ Atty. No.: 39042

○ Pro Se 99500

Name: Keith J. Keogh

Atty. for (if applicable):

Timothy Franklin & Darien Evans

Address: 55 W. Monroe St, Suite 3390

City: Chicago

State: IL     Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Witness date _____

9/12/2023 3:30 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

Exhibit 1                    Exhibit C

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

Exhibit 1                                         Exhibit C

earing Date: No hearing scheduled — Case: 1:23-cv-15610 Document #: 1 Filed: 11/02/23 Page 135 of 248 PageID #:1355 FILED
ocation: <<CourtRoomNumber>>
Jdge: Calendar, 1
IRIS Y. MARTINEZ
* 5 0 3 3 CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24340537

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**                                    (12/01/20) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Timothy Franklin & Darien Evans, individually
and on behalf of others similarly situated,

_____
                                    Plaintiff(s)

                    v.

Troy Design & Manufacturing Co.,            Case No.    2023CH08102
                                                        _____

_____

c/o Registered Agent, C T Corporation System
208 S. LaSalle St., Ste. 814, Chicago, IL 60604

_____
                    Address of Defendant(s)

Please serve as follows (check one):    ⸱ - Certified Mail    • Sheriff Service    ⸱⸱ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE**. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Exhibit 1                                                        Exhibit C

Summons - Alias Summons
• (12/01/20) GCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www. illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

---

• Atty. No.: 39042

○ Pro Se 99500

Name: Keith J. Keogh

Atty. for (if applicable):

Timothy Franklin & Darien Evans

Address: 55 W. Monroe St, Suite 3390

City: Chicago

State: IL  Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Witness date _____

9/12/2023 3:30 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

---

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3

Exhibit 1                Exhibit C

‎*‎ ‎5‎ ‎0‎ ‎3‎ ‎3‎ ‎7‎ ‎3‎ ‎2‎ ‎7‎ ‎*‎

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

Exhibit 1                    Exhibit C

earing Date: No hearing information was found.
ocation: No hearing information was found.
Judge: No hearing information was found.

Case: 1:23-cv-15610 Document #: 1 Filed: 11/02/23 Page 138 of 248 PageID #:138

9/12/2023 1:16 PM
* 5 0 3 3 IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
Firm No. 30243CH08102
Calendar, 1
24335345

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |
|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Case No.  2023CH08102 |
| v. | ) ) ) |
| TROY DESIGN & MANUFACTURING CO. | ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs, Timothy Franklin and Darien Evans, bring this class action complaint against Defendant, Troy Design & Manufacturing Co. ("Troy"), for its violation of the Illinois Biometric Privacy Act, and allege:

### NATURE OF THE ACTION

1.      When workers are hired at Troy, they scan their facial geometry into its biometric timekeeping system. Thenceforth, an employee must present their face to the system to "punch" in or out of work each day, so Troy can record the employee's arrival, departure and break times.

2.      The use of a biometric timekeeping system in the workplace entails serious risks. Unlike key fobs or identification cards, which can be changed or replaced if stolen or compromised, facial geometry is a permanent, unique biometric identifier associated with the worker. This exposes workers to serious and irreversible privacy risks. For example, if a device or database containing workers' facial geometry data is hacked, breached, or otherwise exposed,

1

workers have no means by which to prevent identity theft and unauthorized tracking.

3.      Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), to regulate companies that collect and store biometric information based on facial geometry or other biometric identifiers.

4.      Despite BIPA's protections, Troy disregarded its workers' privacy rights, unlawfully collected, stored, and/or used their biometric information in violation of the BIPA. Specifically, Troy violated the BIPA by failing to:

- • Inform its workers in writing it was storing their facial geometry data;

- • Inform its workers in writing of the specific purposes and length of time for which it was collecting, storing, and using their facial geometry data;

- • Provide a publicly available retention schedule and guidelines for permanently destroying its workers' facial geometry data; or

- • Obtain written releases from its workers allowing it to collect, capture, or otherwise obtain their geometry data.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Troy pursuant to 735 ILCS 5/2-209(a) because Troy transacts business and committed tortious acts in Illinois.

6.      Venue is proper because Troy employs Illinois staff at 3400 E. 126th Pl., Chicago, Illinois 60633, and the actions alleged herein occurred in whole or in part at that location.

## PARTIES

7.      Plaintiff, Timothy Franklin, is a natural person who resides in Cook County, Illinois.

8.      Plaintiff, Darien Evans, is a natural person who resides in Cook County, Illinois.

9.      Defendant Troy is a wholly owned subsidiary of Ford Motor Company, that owns and operates an Illinois workshop to modify or customize Ford fleet vehicles.

150834

Exhibit 1                                                  Exhibit C

## FACTUAL BACKGROUND

### I.  The Biometric Information Privacy Act.

10.  In the 2000's, major national corporations started using locations in Illinois to test new applications of biometric-facilitated transactions. *See* 740 ILCS 14/5(b).

11.  Biometrics are unlike other identifiers. For example, when an identification card or number is compromised, it can be changed. Biometrics, however, are biologically unique to the individual. Thus, once compromised, the individual has no recourse, and is at heightened risk for identity theft. *See* 740 ILCS 14/5(c).

12.  In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature because suddenly there was a serious risk that citizens' fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections. The bankruptcy also highlighted that many persons who used that company's biometric scanners were unaware that the scanners were transmitting their data to the now-bankrupt company, and that their biometric identifiers could then be sold to unknown third parties.

13.  Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); and *see* 740 ILCS 14/5(g).

14.  The BIPA makes it unlawful for a company to collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it *first*:

(1) informs the person in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the person in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the person whose biometric identifier or biometric information is being collected, stored, or used.

740 ILCS 14/15(b).

15.     These restrictions were specifically meant to apply to Illinois workers. The BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     The BIPA also requires companies to develop and comply with a written policy— made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

17.     The BIPA further prohibits a private entity in possession of a biometric identifier or information from selling, leasing, trading, or otherwise profiting from that information, and it generally prohibits disclosing or disseminating a person's biometric identifier or information without the person's consent. 740 ILCS 14/15(c) and (d).

18.     By the time Illinois enacted the BIPA in 2008, many companies that had experimented with using biometric data as an authentication method stopped. That is because Pay By Touch's bankruptcy, described above, was widely publicized and brought attention to the public's discomfort with the use of their biometric data. Despite the recognized dangers of using biometric data, a number of companies still use biometric scanners to identify their workers.

4

Exhibit 1                                                    Exhibit C

19.   Troy was one such company during Plaintiffs' time there. When Plaintiffs were hired to work at Troy, they had to scan their face into Troy's facial-recognition timekeeping system, which recorded their facial geometries.

20.   Unlike a traditional timekeeping system that allows workers to "punch" in and out using a card or key fob, Troy's system requires the employee to stand before a camera that "reads" the employee's facial points and contours, and then compares that information to stored facial geometry information the system has for that worker.

21.   The Federal Trade Commission ("FTC") has raised concerns about the use of facial-recognition technology, and released a "Best Practices" guide in 2012. In the guide, the FTC underscores the importance of obtaining affirmative consent before collecting a person's biometric identifiers and information, and maintaining appropriate "retention and disposal" practices for any biometric data collected.

22.   Despite using this technology, and despite the fact BIPA has been the law for more than a decade, Troy did not (a) inform its workers in writing that it would capture or store their facial geometry information; (b) inform its workers in writing of the specific purposes and length of time for which it would capture, store, and use their facial geometry information; or (c) obtain a written release from each worker authorizing Troy to capture or store their facial geometry information, thus violating BIPA.

23.   Also, Troy did not give its workers a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying its employees' facial geometry information when its initial purpose for capturing that information was no longer relevant, as required by the BIPA. Thus, when a worker stopped working for Troy, the worker was not told

150834

Exhibit 1                                             Exhibit C

when their biometric information would be removed from Troy's database—if ever—in further violation of BIPA.

## II. Plaintiffs' Factual Allegations

24.     Plaintiffs were each hired as temporary mechanics for Troy's Chicago location.

25.     Each workday, at the start and end of their shifts, Plaintiffs were required to look into a device attached to Troy's timekeeping system to allow it to scan their facial geometries. The system would then compare the scan to the facial geometry information the system had on file for them, so it could identify them and mark the time of their arrival or departure from work.

26.     Plaintiffs observed other workers clocking-in and out of Troy's timekeeping system in the same manner.

27.     Troy stored or caused Plaintiffs' and other workers' facial geometry information to be stored in its computer system.

28.     Plaintiffs were never specifically informed of the purposes or length of time for which Troy collected, stored, or used their facial geometry information.

29.     Plaintiffs were not informed of any biometric data retention policy at Troy, nor were they informed of whether Troy would ever permanently delete their facial geometry information.

30.     Plaintiffs were never provided with nor signed a written releases allowing Troy to collect or store their facial geometry information.

31.     As a result of Troy's actions, Plaintiffs are concerned about what happened to the biometric information Troy collected for them, whether Troy deleted their information, and whether (and with whom) Troy may have shared their information.

6

Exhibit 1                                                          Exhibit C

## CLASS ALLEGATIONS

32.     Plaintiffs bring this action on behalf of themselves and the following class of similarly-situated individuals:

> All persons whose face was scanned using Troy's timekeeping system in Illinois at any time from five years before the date of Plaintiffs' original complaint to the date the class is certified. The following people are excluded from the Class:  (1) any judge presiding over the action and their families and staff (2) Defendant and its owners, officers, directors, parents, subsidiaries, successors, predecessors; and (3) Plaintiffs' and Defendant's counsel and their staffs.

Plaintiffs reserve the right to amend this definition following discovery about the class.

33.     The class is so numerous that joinder is impracticable. Plaintiffs worked at Troy five to six days a week for months and, based on their observations, they estimate Troy had forty persons working at a time during their employment, and observed new temporary workers were brought in on a regular basis. Further, Plaintiffs observed Troy had its other workers use its facial-geometry-scanning timekeeping system to "punch" in and out, and thus it collected, captured, received, or otherwise obtained biometric identifiers or information from each worker.

34.     There are questions of law or fact common to the Class that predominate over any questions that may affect individual members. The common questions include, but are not necessarily limited to:

> a)  whether Troy collected, captured, or otherwise obtained the Class's biometric identifiers or information;
>
> b)  whether Troy informed Class members in writing of the specific purposes for collecting, using, and storing their biometric identifiers or information, and the length of time it would store or use them;
>
> c)  whether Troy obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the Class's biometric identifiers or information;

d)  whether Troy disclosed or re-disclosed the Class members' biometric identifiers or information to any third party;

e)  whether Troy sold, leased, traded, or otherwise profited from the Class's biometric identifiers or information;

f)  whether Troy developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information;

g)  whether Troy complies with any such written policy;

h)  whether Troy violated the BIPA; and

i)  whether Troy's BIPA violations were negligent, reckless, or intentional.

35. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex and class action litigation. Plaintiffs have no interests antagonistic to those of the Class.

36. A class action is appropriate to resolve the claims at issue because: (i) the prosecution of separate actions by the members of the Class would wastefully burden the judicial system with the need to resolve the common factual and legal questions this case presents over and over; (ii) requiring members of the Class to prosecute their own individual lawsuits would work an injustice, as it would prevent class members who are unaware they have a claim, or lack the time, ability, or wherewithal to bring their own lawsuit and find a lawyer willing to take their case, from obtaining relief; (iii) requiring individual class member lawsuits would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, or create conflicting and incompatible standards of conduct; and (iv) proceeding on a class basis will not create any significant difficulty in the management of this litigation, as the class members' claims can be proven from Troy's

150834

Exhibit 1          Exhibit C

business records and, having been employed by Troy, class members will be easily identified from

Troy's business records.

## COUNT I
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiffs and the Class)

37.     Plaintiffs incorporate the above allegations as if fully set forth herein.

38.     The BIPA requires companies to obtain informed written consent from workers

before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private

entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's ....

biometric identifier or biometric information, unless [the entity] first: (1) informs the subject ....

in writing that a biometric identifier or biometric information is being collected or stored; (2)

informs the subject .... in writing of the specific purpose and length of term for which a biometric

identifier or biometric information is being collected, stored, and used; and (3) receives a written

release executed by the subject of the biometric identifier or biometric information...." 740 ILCS

14/15(b) (emphasis added).

39.     The BIPA also mandates that companies in possession of a biometric identifiers or

information establish and maintain a satisfactory biometric data retention and—importantly—

deletion policy. Specifically, such companies must: (i) make publicly available a written policy

establishing a retention schedule and guidelines for permanently destroying biometric identifiers

and information when the initial purpose for collecting or obtaining that data has been satisfied

(*e.g.*, when the employment relationship ends); and (ii) actually adhere to that schedule. *See* 740

ILCS 14/15(a).

40.     Plaintiffs and class members are individuals whose "biometric identifiers" or

"biometric information," as defined by the BIPA, were collected by Troy. *See* 740 ILCS 14/10.

9

Exhibit 1

Exhibit C

41. Troy captured Plaintiffs' and the class members' facial geometry information to identify them.

42. Troy is a corporation, and thus a "private entity" subject to BIPA. *See* 740 ILCS 14/10.

43. Nevertheless, Troy negligently, recklessly, or intentionally violated the BIPA's mandates. Troy owed Plaintiffs and class members an obligation to comply with their BIPA rights, but instead violated their BIPA rights.

44. Troy's violation of Plaintiffs' and the class members' BIPA rights renders it liable to Plaintiffs and the Class members for $1,000 or $5,000 in liquidated damages per violation, plus equitable relief, attorneys' fees, and costs. 740 ILCS 14/20.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Timothy Franklin and Darien Evans, on behalf of themselves and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above (or on behalf of such other class the Court deems appropriate), appointing Plaintiffs as representatives of the Class, and appointing their attorneys as class counsel;

B. Awarding liquidated damages of $1,000 for each negligent violation, and $5,000 for each intentional or reckless violation, of the BIPA that Troy committed;

C. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an order requiring Troy to destroy their biometric identifiers and information after termination of their relationship;

D. Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs; and

E. Awarding such other and further relief as equity and justice may require.

150834

Exhibit 1          Exhibit C

Dated: September 12, 2023

Respectfully submitted,

s/*Keith J. Keogh*
Keith J. Keogh
Michael S. Hilicki
KEOGH LAW, LTD.
Firm No. 39042
55 W. Monroe
Ste. 3390
Chicago, IL 60603
312.726.1092 (ph)
312.726.1093 (fax)
keith@keoghlaw.com
mhilicki@keoghlaw.com

150834

Exhibit 1

Exhibit C

earing Date: No hearing information was found.
ocation: No hearing information was found.
Judge: No hearing information was found.

IRIS Y. MARTINEZ
* 5 0 3 3 CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24335345

**Chancery Division Civil Cover Sheet**
**General Chancery Section**

(12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Timothy Franklin & Darien Evans, individually and on behalf of o

**2023CH08102**

Plaintiff

v.

Case No: _____

Troy Design & Manufacturing Co.

Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | |
|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus |
| 0001 | ☑ Class Action | | 0018 | ☐ Ne Exeat |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title |
| | | | 0021 | ☐ Quo Warranto |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) |
| 0015 | ☐ Equitable Lien | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ |

◉ Atty. No.: 39042      ( ) Pro Se 99500

Atty Name: Keith J. Keogh

Atty. for: Timothy Franklin & Darien Evans

Address: 55 W. Monroe St, Suite 3390

City: Chicago      State: IL

Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

Exhibit 1

Exhibit C

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
9/12/2023 1:40 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH08102
Calendar, 1
24336215

TIMOTHY FRANKLIN & DARIEN EVANS,          )
individually and on behalf of others similarly   )
situated,                                         )
                                                  )
                              Plaintiffs,         )      Case No.: 2023CH08102
                                                  )
v.                                                )
                                                  )
                                                  )
TROY DESIGN & MANUFACTURING CO.                   )
                                                  )
                              Defendant.          )

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, Timothy Franklin and Darien Evans, pursuant to 735 ILCS 5/2-801, *et seq.*,

move for certification of this case as a class action to remedy Defendant's systematic violations of

the Biometric Information Privacy Act ("BIPA").

1.      Every court to consider the issue has found BIPA actions well-suited for class

treatment because BIPA cases involve identical claims arising under a single statutory scheme

where liability turns on a uniform course of conduct — the defendant's failure to comply with

BIPA's requirements before collecting and possessing the Class's biometric data. As one court put

the point when certifying analogous BIPA claims: "[t]his case involves a single statutory scheme

— BIPA — and the issues presented can be summarized in a straightforward way: Did the

[defendant] capture biometric information from members of the class, and if so, did they comply

with BIPA by doing so. These questions are what will consume the bulk of the time at trial."

Exhibit 1 (*Roberson v. Symphony Post Acute Care Network, et al.*, No. 17-L-733 (Cir. Ct. St. Clair

168932

Exhibit 1                                                         Exhibit C

Cty., March 12, 2019 Order)) at p.9; *see also Rogers v. Bnsf Ry. Co.*, No. 19 C 3083, 2022 U.S.

Dist. LEXIS 50847 at *8 (N.D. Ill. Mar. 22, 2022) ("[T]he questions of law and fact underlying

the class members' BIPA claims are essentially identical and will be premised on common proof.

Specifically, the common issue of demonstrating BNSF operated the AGS and collected biometric

information in violation of BIPA will predominate over any potential individualized issues.");[1] *In*

*re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no

doubt that a template-based class poses common legal and factual questions, namely: did

[defendant] … harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant]

give users prior notice of these practices and obtain their consent?"); and Exhibit 2 (*Morris v. Wow*

*Bao, LLC, et al.*, No. 17-L-12029 (Cir. Ct. Cook Cty, Dec. 14, 2021 Hearing Tr.)) at p.28 (granting

contested motion to certify class of customers who used defendants' facial recognition kiosks).

    2.    This case is no different. Plaintiffs allege Defendant violated these same obligations

in the exact same manner as to Plaintiffs and their co-workers, rendering Defendant liable to all of

them for statutory damages, and thus they seek to remedy this uniform conduct on a class basis.[2]

## I.    BIPA

    3.    The use of a biometric timekeeping system entails serious risks. Unlike key fobs

or identification cards—which can be changed or replaced if stolen or compromised—one's facial

geometry is a permanent, unique biometric identifier associated with the worker. Thus, once

---

[1] Because the procedural requisites of class certification are virtually the same as to certain requirements under 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal decisions cited herein. *See Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 761 (2d Dist. 2008).

[2] This motion is filed as a prophylactic measure to prevent the "pick off" of the named plaintiffs, and will be supplemented with a memorandum of law and additional support after adequate discovery. *See Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 457 (2011) (where a tender of relief is made before the filing of a motion for class certification, the interests of the other class members are not before the court, and the case may properly be dismissed.)

168932

compromised, the individual has no recourse, and is at heightened risk for identity theft. *See* 740

ILCS 14/5(c). For example, if a device or database containing facial geometric data is hacked,

breached, or otherwise exposed, workers have no means by which to prevent identity theft and

unauthorized tracking.

4.     In late 2007, a biometrics company called Pay by Touch—which provided

retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer

transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature

because suddenly there was a serious risk that citizens' fingerprint records—which, like other

unique biometric identifiers, can be linked to people's sensitive financial and personal data—

could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without

adequate protections.

5.     Recognizing the "very serious need [for] protections for the citizens of Illinois

when it [came to their] biometric information," Illinois enacted the BIPA the following year. *See*

Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); and *see* 740 ILCS

14/5(g).

6.     In order to vindicate BIPA's important privacy-protections, Plaintiffs seek to have

this Court certify the following class:

> All persons whose face was scanned using Troy's timekeeping
> system in Illinois at any time from five years before the date of
> Plaintiffs' original complaint to the date the class is certified. The
> following people are excluded from the Class:  (1) any judge
> presiding over the action and their families and staff (2) Defendant
> and its owners, officers, directors, parents, subsidiaries, successors,
> predecessors; and (3) Plaintiffs' and Defendant's counsel and their
> staffs.

7.     The proposed class is ideal for certification because each class member's claim

arises from the same uniform course of conduct by Troy, and is thus based on the same facts and

3

Exhibit 1                                                    Exhibit C

subject to the same defenses. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("there is no doubt that a template-based class poses common legal and factual questions, namely: did [defendant] … harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant] give users prior notice of these practices and obtain their consent?"), *aff'd* 932 F.3d 1264 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 937 (2020).[3]

## II.   FACTS

8.      The complaint's allegations are "taken as true for purposes of determining class certification." *Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 234 (1st Dist. 2010).

9.      Plaintiffs were each hired as temporary mechanics for Troy's Chicago location. [Cmplt. ¶24].

10.     Each workday, at the start and end of their shifts, Plaintiffs were required to look into a device attached to Troy's timekeeping system to allow it to scan their faces. The system would then compare the scan to the facial geometry information the system had on file for them, so it could identify them and mark the time of their arrival or departure from work. [*Id.* ¶25].

11.     Plaintiffs observed other workers clocking-in and out of Troy's timekeeping system in the same manner. [*Id.* ¶26].

12.     Plaintiffs were never specifically informed of the purposes or length of time for which Troy collected, stored, or used their facial geometry information. [*Id.* ¶28].

---

[3] Again, because the procedural requisites of class certification are virtually the same as to certain requirements under 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal decisions cited herein. *See Cruz*, 383 Ill. App. 3d at 761.

13.     Plaintiffs also were not informed of any biometric data retention policy at Troy, nor were they informed of whether Troy would ever permanently delete their facial geometry information. [Cmplt. ¶29].

14.     Plaintiffs were never provided with nor signed written releases allowing Troy to collect or store their facial geometry information. [*Id.* ¶30].

## III.     THIS CASE MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION.

15.     Class certification is a matter for the Court's discretion, so long as that discretion is "exercised within the framework of the rules of civil procedure governing class actions." *S37 Mgmt. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496 at ¶15 (citation omitted). In making this determination, however, "the court accepts the allegations of the complaint as true" and "should err in favor of maintaining class certification." *Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 234 (1st Dist. 2010) (citation omitted).

16.     Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable ("Numerosity"), (2) there are one or more questions of law or fact common to the class that predominate over any questions affecting only individual members ("Commonality"), (3) the representative parties will fairly and adequately protect the interests of the class ("Adequacy"); and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy ("Appropriateness"). 735 ILCS 5/2-801. As explained below, each of these requirements is easily met here.

17.     <u>Numerosity</u>. The class must be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). It is not necessary to provide a precise class-size figure, but rather simply present a basis to find the class is sufficiently large as to make joinder of all members impracticable. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("a good-

168932

Exhibit 1                    Exhibit C

faith, nonspeculative estimate will suffice . . . .") (citations omitted). In general, a class of at least

forty members is sufficient. *See Chavez v. Don Stoltzner Mason Contr., Inc.*, 272 F.R.D. 450, 454

(N.D. Ill. 2011);[4] *Faison v. RTFX, Inc.*, 2014 IL App (1st) 121893 at ¶65 (reversing order

dismissing the class allegations, finding "at least 52" members is enough).

18.     This low threshold is met here because Plaintiffs worked at Troy five to six days a

week, based on their observations they had approximately forty co-workers, they observed their

fellow co-workers also had to scan their faces into Troy's time-keeping system, and they observed

Troy brought in additional workers on a regular basis. [Cmplt. ¶33]. Thus, Plaintiffs reasonably

estimate the class includes well over forty members. *See Cruz, supra*, at 771 ("a good-faith, non-

speculative estimate will suffice"). Accordingly, §2-801(1)'s numerosity requirement is met.

19.     <u>Commonality</u>. "Determining whether issues common to the class predominate over

individual issues requires the court to identify the substantive issues that will control the outcome,

assess which issues will predominate, and then determine whether these issues are common to the

class." *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 54-55 (1st Dist. 2007).

This requirement is met because the substantive issues that control the outcome of this case are

common, including but not limited to:

    a.  Whether Troy collected, captured, or otherwise obtained the Class's biometric
        identifiers or information;

    b.  Whether Troy informed the Class in writing of the specific purposes for
        collecting, using, and storing their biometric identifiers or information, and the
        length of time it would store or use them;

    c.  Whether Troy obtained a written release (as defined in 740 ILCS 14/10) to
        collect, use, and store the Class's biometric identifiers or information;

---

[4]  Because the procedural prerequisites of class certification are virtually the same under both 735
ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt
the reasoning of the federal decisions cited herein. *See Cruz*, 383 Ill. App. 3d at 761.

**Exhibit 1**                                                                                    **Exhibit C**

d. Whether Troy developed a written policy, available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information, and complied with its policy;

e. Whether Troy violated the BIPA; and

f. Whether Troy's BIPA violations were negligent, reckless, or intentional

20. These common questions predominate because their "successful adjudication" for Plaintiffs "will establish a right of recovery in favor of the other class members." *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶17. For example, a finding Troy systematically failed to inform the Class in writing of the specific purposes for collecting, using, and storing their biometric identifiers or information, and the length of time it would store or use them, or establish a publicly-available written policy for retaining and destroying this information, or obtain signed releases from them, would establish a right of recovery for both Plaintiffs and the entire class. *See* Exhibit 1 (*Roberson*, No. 17-L-733 (Cir. Ct. St. Clair Cty., March 12, 2019 Order)) at p.10 ("the Court finds that common questions of fact or law will predominate this case as a whole ... it arises under a single simple statute ..."); *see also Rogers*, 2022 U.S. Dist. LEXIS 50847 at *8 ("[T]he questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof."); *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 545 ("[T]here is no doubt that a template-based class poses common legal and factual questions, namely: did [defendant] ... harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant] give users prior notice of these practices and obtain their consent?").

21. Adequacy. This element requires that the named plaintiffs' interests not be antithetical to the interests of the unnamed class members, and that the plaintiffs' counsel be "qualified, experienced and generally able to conduct the proposed litigation." *See Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 338-39 (1977); *Ramirez*, 378 Ill. App. 3d at 56. Plaintiffs

168932

Exhibit 1                    Exhibit C

meet these requirements because their interests are fully-aligned with the Class's interests. [See Exhibit 3 (Franklin Declaration) at ¶7; and Exhibit 4 (Evans Declaration) at ¶7]. Their claims each arise from the same underlying uniform course of conduct, and materially identical violations of the BIPA. Moreover, as a result of Troy's uniform violations, Plaintiffs and Class are entitled to recover the same statutory damages under BIPA. *See* 740 ILCS 14/20. Thus, Plaintiffs are adequate. *See Steinberg*, 69 Ill. 2d at 338 ("Here plaintiffs' interests are not antithetical to those of other members of the class, but are the same.").

22.    Likewise, Plaintiffs' counsel have decades of class action litigation experience, and have been found adequate and appointed class counsel in numerous cases. [*See* Exhibit 5 (Keogh Declaration) at ¶2-¶9].

23.    Appropriateness. A class action satisfies the "appropriateness" requirement if it "can best secure economies of time, effort, and expense or accomplish the other ends of equity and justice that class actions seek to obtain." *Ramirez*, 378 Ill.App.3d at 56. This case easily meets the test.

24.    A class action will best secure economies of time, effort and expense here because it will resolve thousands of identical claims in one fell swoop instead of requiring individual litigation of the same issues over and over. Likewise, a class action will accomplish the ends of equity and justice because the class members are individuals, their claims are relatively small, and there is no reason to assume that most or even many of them possess the time, energy and wherewithal to try to vindicate their rights on their own. As noted by the Illinois Appellate Court:

> Our courts have recognized that, 'in a large and impersonal society, class actions are often the last barricade of consumer protection.' [citation omitted] The consumer class action is an inviting procedural device to address frauds that cause small damages to large groups. When brought by plaintiffs who have no other avenue

> of legal redress, the consumer class action provides restitution to the
> injured and deterrence to the wrongdoer.

*Gordon v. Boden*, 224 Ill. App. 3d 195, 204 (1st Dist. 1991); *see also In re Facebook Biometric*

*Info. Privacy Litig.*, 326 F.R.D. at 545 ("A class action is clearly superior to individual proceedings

here. While not trivial, BIPA's statutory damages are not enough to incentivize individual

plaintiffs … The class will be manageable because members can be identified in a straightforward

way."); and Exhibit 1 (*Roberson*, No. 17-L-733 (Cir. Ct. St. Clair Cty., March 12, 2019 Order)) at

p.14 ("Seeking the answers to these questions – questions applicable across the class, and the

common answers which will be generated – makes proceeding on a class basis an appropriate

method for the fair and efficient adjudication of these controversies.").

25.     Finally, our appellate court holds the demonstration "the first three prerequisites of

section 2-801 have been established makes it evident that the fourth requirement has been fulfilled

as well." *Gordon*, 224 Ill. App. 3d at 204 (citing *Steinberg*, 69 Ill. 2d at 339). As shown, that is the

case here. Accordingly, for all of the above reasons, a class action is appropriate for resolving this

dispute.

26.     Because this case meets all of the requirements for class certification, this motion

should be granted, and the proposed class should be certified.

27.     Plaintiffs will submit a supplemental memorandum in support of this motion upon

the completion of appropriate discovery.

## IV.     CONCLUSION

It is beyond reasonable dispute this case satisfies the class requirements of 735 ILCS 5/2-

801. To the extent Troy nonetheless chooses to contest class certification, discovery will quickly

confirm that the requirements of 735 ILCS 5/2-801 are met. Accordingly, Plaintiffs request the

following relief:

168932

Exhibit 1                                                          Exhibit C

a.      Entry of a scheduling order setting dates for Plaintiffs to file a memorandum in support of this motion (and for the parties to file response and reply briefs) after the completion of appropriate discovery;

b.      An order certifying the proposed class as defined above (or such amended definition the Court finds to be appropriate under the law and facts);

c.      Appointment of Plaintiffs as representative of the class; and

d.      Appointment of Plaintiffs' attorneys as class counsel.

Dated: September 12, 2023                    Respectfully submitted,

By:      s/*Keith J. Keogh*
         Keith J. Keogh
         Michael S. Hilicki
         KEOGH LAW, LTD.
         55 West Monroe Street, Suite 3390
         Chicago, Illinois 60603
         (312) 726-1092
         keith@keoghlaw.com
         mhilicki@keoghlaw.com
         Firm 39042

         *Counsel for Plaintiffs*

168932

Exhibit 1

Exhibit C

# EXHIBIT 1

Exhibit 1

Exhibit C

* 5 0 3 3 7 3 2 7 *

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on )
behalf of all others similarly situated, )
)
Plaintiff, )
) Case No. 17 -L- 733
v. )
)
SYMPHONY POST ACUTE CARE )
NETWORK; SYMPHONY SYCAMORE )
LLC; SYMPHONY HEALTHCARE LLC; )
SYMPHONY M.L. LLC; SYMPHONY )
MONARCH HOLDINGS, LLC; and DOE )
DEFENDANTS 1-100, )
)
Defendants. )

> FILED
> ST. CLAIR COUNTY
>
> MAR 1 2 2019
>
> *Kahilah a. Clay*
> 35      CIRCUIT CLERK

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1] The Court hereby **ORDERS**:

I.    **NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois. Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA"). Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

1

Exhibit 1                                              Exhibit C

* 5 0 3 3 7 3 2 7 *

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id.* at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers

or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

Exhibit 1                                    Exhibit C

Plaintiff alleges none of these requirements were met when capturing her biometric information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . against an offending party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network"). She seeks to certify a class of Illinois citizens who had their biometric information or biometric identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

## II.    LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

3

Exhibit 1                                    Exhibit C

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.,* 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

### III.    FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

Exhibit 1                                    Exhibit C

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV.  SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

Exhibit 1                    Exhibit C

* 5 0 3 3 7 3 2 7 *

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case. All class members are citizens of Illinois. All are proceeding principally under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

a. Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra,* the Court also does not consider which class members will ultimately prevail. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

Exhibit 1                    Exhibit C

authorized representative?

e.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.    Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.    whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

7

Exhibit 1                                    Exhibit C

b.      whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.      whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.      whether that injury exceeds the liquidated damages provision in BIPA,

e.      whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.      whether that entity acted negligently or willfully with respect to that particular class member,

g.      whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019). As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification. "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same). At most, if damage questions do present significant issues, they can be handled in ancillary proceedings. "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

8

Exhibit 1          Exhibit C

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

9

Exhibit 1                    Exhibit C

* 5 0 3 3 7 3 2 7 *

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V. THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

Exhibit 1                                    Exhibit C

* 5 0 3 3 7 3 2 7 *

two components: (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate. Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson. The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive. Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members. Her deposition responses did not contradict that. In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein. Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

11

Exhibit 1                                      Exhibit C

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI. FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

12

Exhibit 1                    Exhibit C

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline. This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously established, it is not the province of the Court to decide these issues on a motion to certify a class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability." Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea. Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities. Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network. Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

Exhibit 1                    Exhibit C

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

## VII. ORDER AND FINDINGS.

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

14

Exhibit 1                                    Exhibit C

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE**: March 12, 2019.

ICelHalni

Hon. Kevin T. Hoerner

Exhibit 1          Exhibit C

# EXHIBIT 2

Exhibit 1

Exhibit C

MORRIS v WOW BAO — 17-CH-12029
COURT HEARING — 11/17/2021

```
 1        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

 2           COUNTY DEPARTMENT, CHANCERY DIVISION

 3

 4   REGINA MORRIS, on behalf of        )
     herself and all others similarly  )
 5   situated,                          )
                                        )
 6           Plaintiff,                 )
                                        )
 7       vs.                            )No. 17-CH-12029
                                        )
 8   WOW BAO LLC, WOW BAO FRANCHISING   )
     LLC and LETTUCE ENTERTAIN YOU      )
 9   ENTERPRISES, INC.,                 )
                                        )
10           Defendants.                )

11

12

13             TRANSCRIPT OF PROCEEDINGS

14   at the hearing in the above-entitled cause before

15   THE HONORABLE ALLEN P. WALKER, Judge of said Court,

16   on December 14, 2021, via Zoom remote videoconference

17   platform, reported by Nohemi Salazar-Pitts, Certified

18   Shorthand Reporter for the State of Illinois,

19   commencing at 2:00 p.m. Central Time.

20

21

22

23

24
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  REMOTE APPEARANCES:

2

3  STEPHAN ZOURAS, LLP
   BY:  MR. ANDREW C. FICZKO, ESQUIRE
4  100 North Riverside Plaza
   Suite 2150
5  Chicago, Illinois  60606
   Phone:  (312) 233-1550
6  E-mail:  aficzko@stephanzouras.com

7             Appeared on behalf of the Plaintiffs;

8

9  FOLEY & LARDNER LLP
   BY:  MR. CHRISTOPHER G. WARD, ESQUIRE
10 321 North Clark Street
   Chicago, Illinois  60654
11 Phone:  (312) 832-4364
   E-mail:  cward@foley.com

12
             Appeared on behalf of Defendant Wow
13           Bao LLC.

14

15

16

17

18

19

20

21

22

23

24

Exhibit 1                                    Exhibit C

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
 1                    (The following proceedings were had
 2                    via remote videoconferencing:)
 3            THE CLERK:  Morris vs. Wow Bao,
 4   17-CH-12029.
 5            MR. FICZKO:  Good afternoon, your Honor.
 6   Andy Ficzko on behalf of the Plaintiff.
 7            MR. WARD:  And Christopher Ward on behalf
 8   of the Defendant.
 9            THE COURT:  Good afternoon.  All right
10   there's also a Jessica.
11                    (Whereupon, a discussion was had
12                    off the record.)
13            THE COURT:  This is on the Plaintiff's
14   petition to certify a class?
15            MR. FICZKO:  Correct, your Honor.
16            THE COURT:  You may proceed.
17            MR. FICZKO:  Thank you, your Honor.  As
18   you just indicated before the court, it is Plaintiff's
19   motion to certify a class of a little over 1300
20   Illinois consumers asserting identical claims under
21   the Biometric Information Privacy Act, or BIPA.
22                    Specifically, these individuals were
23   customers of a Wow Bao restaurant who used facial
24   recognition at an ordering kiosk at one of Wow Bao's
```

1  stores from approximately 2016 through 2017.   To
2  facilitate faster checkouts and higher sales volume,
3  while minimizing payroll costs, the Defendants
4  implemented facial recognition self-ordering kiosks at
5  three of its restaurants that used a customer's facial
6  geometry as a means of identification for ordering
7  food and drinks.

8          When a customer chooses the facial
9  recognition feature, the kiosk built-in facial
10 recognition camera collects the customer's facial
11 geometry and stores the data on its database.  When a
12 customer returns to place a later order, they can
13 recall their previous orders with facial recognition.

14         The facial recognition cameras
15 compare basically the live image of a customer's face
16 with the facial geometry stored in the cloud database
17 until it makes a match.  When a match is found, the
18 kiosk pulls up the customer's orders associated with
19 the customer's guest account.  So basically what
20 happens is a customer would simply walk up to the
21 kiosk and the kiosk would recognize them from their
22 facial geometry for purposes of recalling and placing
23 orders.

24         Through this biometric tracking

Exhibit 1                    Exhibit C

 1   system, the Defendants collected, used, stored, and

 2   disclosed its customers' facial geometry when they

 3   were customers at their restaurants, all while failing

 4   to comply with the simple, easy-to-follow BIPA

 5   requirements.

 6                   For example, Defendants did not

 7   inform them of the purpose and the length of time that

 8   their biometric data was being collected, stored, and

 9   used, and it did not make available to the public a

10   retention schedule and guidelines for the destruction

11   of its customers' biometric data, and they did not

12   receive a release to collect, store, and use their

13   biometric information, nor did they receive consent to

14   disclose this biometric data to third parties such as

15   Nextep Systems Inc. in this case which hosted the

16   biometric data.

17                   The same evidence, the same common

18   evidence shows that the Defendants uniformly violated

19   BIPA in the same way for all 1,369 customers who used

20   their facial recognition kiosk by collecting and

21   disclosing their biometric data.  And what I mean by

22   "biometric data" is biometric information and

23   biometric identifiers as defined by BIPA, all without

24   complying with BIPA.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

```
1               Basically, the Defendants concede
2   that this case meets the requirements for class
3   certification; they only argue that this motion should
4   be denied because it may be more difficult than they
5   anticipated to compile a class list.  But the law is
6   clear:  We don't need to name specific individuals who
7   are possible class members.  There's no such rule that
8   requires a so-called administrative feasibility
9   requirement.
10              Policy reasons also call for this
11  court to reject such a requirement because it's
12  inconsistent with the general rule that direct notice
13  to the class is not required by due process.  In fact,
14  there are a number of ways to identify class members,
15  including through self-identification.  Notice can
16  also be made by publication if necessary.
17              With all that said, these means
18  shouldn't even be necessary here.  All we need here is
19  the transaction data to call a class list, and
20  discovery showed that the necessary data was collected
21  and stored through the kiosk and the software used
22  therein.
23              Nextep and Defendants had a cloud
24  system that they can access that contains not only
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   facial geometry data of its customers but also

2   connects the customers' facial geometry to their

3   credit card numbers and phone numbers in what's called

4   a guest account.

5           Discovery also revealed that the

6   ordering kiosk housed what's called a transaction

7   manager software on the computer within the actual

8   kiosk that store log files, credit card transaction

9   files, and order transaction files which communicate

10  up to the cloud.

11          The kiosk also interfaced with the

12  point of sale system for the purposes of communicating

13  customer information.  All we need to do here is

14  simply connect a user facial geometry file to their

15  order history, get the dates and store locations of

16  these user orders, which would obviously then be

17  connected to other data such as payment data which we

18  could then use to identify class members or even

19  contact them for the purposes of sending notice.

20          With that said, though, what's

21  concerning is that after the lawsuit was filed, there

22  were a total of six facial recognition kiosks used at

23  Wow Bao at the three locations, but all but one or two

24  of these kiosks have either been destroyed or lost,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  and not a single representative of Defendants could

2  testify as to who ordered the kiosk to be destroyed or

3  why they were destroyed despite the obligation to

4  preserve evidence for litigation purposes.

5          Finally, Defendants submit a

6  declaration from Brian Leary, an employee of Nextep.

7  Mr. Leary attempts to contradict all of the evidence

8  in the record that confirms a customer's facial

9  geometry data is linked in guest accounts to their

10  credit card numbers, phone numbers, in addition to

11  their order history.

12          It's worth noting, though, that

13  there's a pending BIPA lawsuit against Nextep, so

14  Mr. Leary clearly has an interest in ensuring that no

15  precedent is set in this case that may impact the case

16  against his company.  But again, there simply is zero

17  evidence to support his contentions.  Nextep's own

18  documents and employee testimony clearly contradict

19  Mr. Leary's unsupported assertions.

20          At the end of the day, Defendants do

21  not challenge that Plaintiff failed to satisfy the

22  actual prerequisites to class certification.  This

23  class should be certified as a class action,

24  Ms. Morris should be appointed as class

Exhibit 1                                    Exhibit C

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   representative, counsel for Plaintiff should be

2   appointed class counsel, and notice should go out to

3   the 1,369 customers who had their personal and private

4   biometric data illegally collected, used, stored, and

5   disseminated by Defendants in violation of BIPA.

6           THE COURT:  Thank you.

7               Mr. Ward?

8           MR. WARD:  Your Honor, I won't call it

9   omission, but I think it's certainly a downplaying of

10  the critical detail in this case.  Mr. Ficzko said and

11  he alluded to Nextep multiple times, but tried to sort

12  of convolute the Defendants in this case with Nextep

13  and calls Nextep as hosting the data.

14              The reality and the evidence on this

15  across the entire record is clear that Defendants in

16  this case have no access to that data, it's entirely

17  captive within the Nextep system.  So what happens is

18  the Nextep technology captures the data at issue here,

19  uploads it to the Nextep cloud, and there's simply a

20  series of Nextep -- or, I'm sorry, files within the

21  Nextep cloud that is solely within the control of

22  Nextep.

23          THE COURT:  Why does that matter?

24          MR. WARD:  It matters because here is the

1  way this works out.  If you look at the Brian Leary

2  declaration, he's the only one with actual personal

3  knowledge in this case that has provided testimony

4  evidence as to how this technology works.  The other

5  two individuals to whom Mr. Ficzko alluded, both

6  testified at their deposition that they have no

7  personal knowledge of how these systems work.

8              One guy is a sales person who does

9  not have any sense of the technology, the other was an

10  installer, essentially, who wrote one e-mail which is

11  what Mr. Ficzko alluded to, and then during his

12  deposition contradicted that e-mail, which is cited in

13  footnote 3 of our brief, the specific testimony he

14  gave saying, no, there is not a link between any

15  identifying data and these facial geometry files.

16              But this is important because the way

17  the system works is -- and this is all laid out very

18  clearly in the Brian Leary declaration -- there's no

19  identifying information within these 1369 files.

20  They're not individuals, by the way, your Honor,

21  they're simply files, they're just facial geometry

22  files.  We have no idea if that, in fact, corresponds

23  to 1369 people or less than that, but it's simply an

24  algorithmic file, and Nextep is in complete possession

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  of those data, and it has testified it has no way to

2  unpack those files to identify any single individual.

3              So the only putative class member who

4  we can absolutely identify in this case is the

5  Plaintiff, and that's simply because she's the named

6  party here.

7              Now, I'm not saying that this is a

8  heightened ascertainability standard as they have

9  argued in their reply, and I'm not saying that the

10 court needs to be able to identify all of the class

11 representatives -- or all of the putative class

12 members rather, before it can certify the class.  What

13 I am saying is the court's got to be able to identify

14 at least some of them or have some process --

15             THE COURT:  But the process would

16 simply -- there are two ways to, in the court's

17 mind -- notwithstanding Plaintiff's argument, there

18 are two ways or methodologies that immediately come to

19 mind, number one is publication, number two is simply

20 putting up a sign in the stores, assuming they still

21 exist, inviting anyone who within the time period in

22 question was a customer and submitted themselves to

23 providing their biometric data by facial recognition.

24             MR. WARD:  Sure.

MORRIS v WOW BAO — 17-CH-12029
COURT HEARING — 11/17/2021

1           THE COURT:  Why is that a problem?

2           MR. WARD:  Well, let me just make the

3    first point, your Honor, which is if there is a

4    mechanism to identify any class members, that

5    should've been part of the Plaintiff's burden.  This

6    issue and the key part of why this case is not

7    certifiable was not even addressed in their moving

8    papers.  This is now scrambling on reply.

9                So this should have all been vetted

10   ahead of time, this should have been sorted in

11   discovery.  If they thought that there was a

12   contradiction in the evidence between what we have

13   always asserted, which is you can't identify class

14   members here, and they can think the evidence clearly

15   shows that you can, then that needed to be vetted in

16   discovery and proven in their moving papers.  And if

17   we need a supplemental briefing on that, then so be

18   it, but that is their burden to sort.

19                As to the question of publication or

20   posting, couple things that I think are really

21   important.  The time period here is 2016 to 2017; we

22   are nearing 2022 at this point.  These three stores —

23   well, one of them no longer exists; that was the one

24   near 900 North Michigan Avenue.  The other two are

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  within Water Tower and at State and Lake, which is

2  incredibly high traffic areas, incredibly high traffic

3  areas for individuals who are tourists, who are

4  itinerant in Chicago.

5                    The likelihood that we would capture

6  a representative and sufficient number of

7  self-identified individuals who used this technology

8  of Nextep almost five years ago in these high traffic

9  locations is very unreliable.  And if you look at the

10 authority on this, the courts don't say that

11 publication or a posting is sufficient in all

12 circumstances, right, it's going to be case-specific.

13                    And while I agree -- for example,

14 there's a Seventh Circuit case that deals with a bar

15 and a couple of ATMs in a college town where you're

16 going to have much more repeat traffic, there was not

17 nearly the amount of time gap between the

18 certification issue.  And important in that case, by

19 the way, the Seventh Circuit also said we're not even

20 sure what records they do have, versus here we're

21 talking about something 500 years ago -- or, I'm

22 sorry, five years ago in Water Tower and at State and

23 Lake where the amount of traffic and the amount of

24 capture or false hits we might get here, right, what

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  is the court going to do if we publish this and we get

2  zero response?

3              You know, I mean, these are issues

4  that are coming down the path potentially in this

5  case, and I think they needed to be vetted at this

6  stage in class certification and they weren't.  And

7  that's the reason why I bring up the Plaintiff's

8  burden, is because this stuff should have been vetted

9  out or we still need to vet it out, because I think

10  this is really important and we can't simply say, oh,

11  it's a simple combination of looking at the cloud and

12  corresponding it to a transaction data, because I

13  believe the evidence says that's not how it works and

14  it's impossible to get to that stage.

15              So if we have a contradiction in how

16  we look at what the evidence shows, then either the

17  Plaintiff needed to sort that out in their moving

18  papers and satisfy their burden when they sought class

19  certification or, at a minimum, we need to have

20  supplemental briefing on it.

21              THE COURT:  Can I ask you a follow-up

22  question?

23              MR. WARD:  Sure.

24              THE COURT:  It seems to me that the

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  company would have kept data on how many people -- and

2  I think this is argued -- how many people used the

3  facial recognition software, how many orders were

4  placed as a consequence of it, if for no other reason,

5  to monitor its effectiveness, and wouldn't that be a

6  source of information in terms of the parameters of

7  how many people would be in this class.

8           MR. WARD:  So, your Honor, the answer to

9  that is Nextep did keep that data, and during the time

10  that our clients were customers of Nextep --

11          THE COURT:  Yeah, but did Nextep destroy

12  that information?

13          MR. WARD:  No.  As I understand it, from

14  my information --

15          THE COURT:  They're subject to subpoena;

16  aren't they?

17          MR. WARD:  They are subject to subpoena,

18  and they are subject to exploration of these issues

19  that I have been raising in terms of whether these

20  1369 files can be linked to 1300-and-some individuals

21  or whatever.

22               My point is that that was never

23  discovered by the Plaintiff, they never went down that

24  route to search that from Nextep; we did.  I

```
 1   interviewed Mr. Leary, and he was willing to provide
 2   the affidavit that he provided.  He is the only one
 3   with the personal knowledge on this that we have been
 4   able to identify.
 5               So I agree with you, this should have
 6   been addressed, but --
 7          THE COURT:  Let me ask you one more
 8   question, and it's really one of certification,
 9   because are you suggesting to the court that the
10   parent company, Lettuce Entertain You, is saying they
11   never kept this kind of information for its stores,
12   and particularly Wow Bao, in particular; that Wow Bao,
13   the management company or the management folks at
14   Wow Bao never within their own -- within the confines
15   of their own facilities never kept this kind of data
16   on who was using this biometric data and whether it
17   was effective and how effective of a marketing tool it
18   was and how effective of a tool for tracking foot
19   traffic in and out of its stores and its customers?
20          MR. WARD:  Your Honor, I think my answer
21   to that is sort of.  Right?  I guess I take issue with
22   the verb "kept," because that meant that they had
23   access to these data at some point, and the reality
24   is -- and again, I have explored this extensively, it
```

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1    wasn't really addressed in the Plaintiff's moving

2    papers, but our clients never had access to their

3    data.  The way these kiosks worked is that they would

4    literally take this process and immediately upload it

5    to the cloud --

6                    THE COURT:  So they never got reports?

7                    MR. WARD:  I'm sorry?

8                    THE COURT:  They never got reports?

9                    MR. WARD:  What they could do is go onto a

10   dashboard.  That was, again, maintained by Nextep to

11   get some basic customer data, but when Nextep

12   discontinued that service, our clients no longer had

13   access to that.

14                    But, again, nothing from that

15   dashboard, your Honor, would provide the customer

16   information.  It's the same issue, it was -- it would

17   simply be sort of bland data about the number of

18   transactions without any idea, any mechanism to trail

19   any single transaction to a user.

20                    THE COURT:  Well, yes, but part of this

21   discussion is about how many people are actually in

22   this class, and the transactional data would give you

23   some indication, correct?

24                    MR. WARD:  What I understand, your Honor,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  from Nextep is that it can say it has 1369 files.  As

2  far as whether those are 1369 --

3              THE COURT:  No.  No.  No.  My question

4  goes to the reports that Wow Bao could get off, as you

5  described it, the dashboard as to how many people on a

6  given day or in given month could use this particular

7  system, correct?

8              MR. WARD:  I don't know the answer to that

9  question.  I presume that would have been available in

10  real time, your Honor.  It's not available now because

11  it would correlate back to the Nextep data, but it

12  still would suffer from the same problem, which is

13  it's just very superficial data about a number of

14  transactions, not a number of users and without any

15  ability to identify a specific user to a specific

16  transaction.

17              THE COURT:  Yeah, but the court finds it

18  relatively hard to believe that this would be

19  superficial data in light of the fact that they're

20  doing this anyway.  I mean, they're collecting data.

21  Usually when people collect data, they collect all

22  kinds of data, and that's sort of why the statute is

23  in place in the first place, because of the basic

24  overreaching of companies who are collecting data,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  biometric or otherwise.

2              So the court finds it somewhat hard

3  to believe that, nah, it's just a limited amount of

4  data relative to the folks who were using this system,

5  and it no longer exists.  That seems fairly

6  implausible to the court.  Tell me why that's the case

7  when we are at this juncture, a data-driven society in

8  every aspect.

9              MR. WARD:  Sure.  And at a superficial

10  level, your Honor, I totally understand the

11  skepticism, right, but again, we go back to this idea

12  of the distinction between my client and Nextep

13  Systems.

14              Nextep has all of the data, has all

15  of the relevant data, and it could have been

16  discovered, it could have been disclosed or explored

17  in discovery by the other side prior to bringing this

18  motion, and they didn't.  So we are left to explain

19  why something seems implausible because, to my view,

20  this record hasn't been totally established and

21  developed by the Plaintiff to show they've met their

22  burden.

23              THE COURT:  Okay.  Humor me one more time,

24  Counsel, because I don't know why your client wouldn't

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  have tons of data, because your client put this system

2  up in the first place, and they did it for a reason.

3           They did it because they thought

4  that, number one, it would improve customer service,

5  presumably that it would make their operation go

6  faster; and I would imagine there was a whole host of

7  other data that they were going to get, biometric,

8  demographic, and so forth, that they thought would be

9  useful to them in marketing their store, in traffic in

10  and out of their store, and what their company is

11  buying when they come in, what their favorites are,

12  what they come in and order all the time, how often

13  they do it, when they do it, where they do it, whether

14  it gets delivered or they pick it up, or any number of

15  data points.

16           So, again, I'm just struggling with

17  this notion that, nah, we don't have a whole lot of

18  stuff, most of it is with the company who provided the

19  software.  That seems to be contrary to the point of

20  putting this system in in the first place so they

21  don't get a lot of data.

22           MR. WARD:  Sure.  And I think part of the

23  court's understandable skepticism again comes from the

24  fact that this record is underdeveloped.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1            The way that this all happened is

2    that Nextep had actually been providing kiosks to the

3    Wow Bao stores for a number of years before.  As part

4    of a scheduled upgrade -- and, you know, all this

5    evidence is out there if we need to demonstrate it

6    through briefing or whatever -- before a scheduled

7    upgrade, Nextep installed these three kiosks at

8    these -- it's actually six kiosks at three stores.

9    Without any request to do so from our client, they

10   essentially put facial recognition in as an upgrade.

11            Our clients protested if they were

12   going to have to pay more for it, and Nextep said no.

13   And the evidence fully developed in this case through

14   multiple depositions basically says our clients had no

15   involvement in the process.  Literally, the only thing

16   they did was provide power to the kiosks, a network

17   connection, and then Nextep did everything from there.

18   All of the data are theirs, all of the processes are

19   within their software and their hardware.

20            And so any time -- and this is what

21   our client's witnesses consistently testified to, is

22   anytime they needed any information at all about what

23   was going on with these systems, they had to go to

24   Nextep.  So it's not accurate that our clients put

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  these machines with facial recognition into their
2  stores trying to gather additional data and take
3  additional biometrics; they were put in by Nextep at
4  Nextep's choice. And, yeah, they got used for a
5  little while, although not that well as people
6  testified.
7           But I go back to this point that I
8  think these are important questions; I think these are
9  important aspects of whether this is a certifiable
10 class. And I have these explanations, your Honor, but
11 ultimately the legal burden is for the Plaintiff to
12 answer that and show why this class can be certified
13 in light of these concerns, and that was never
14 addressed in their moving papers and only scrambled to
15 in response to our opposition.
16           So either the motion should be denied
17 for failure to carry the burden, or at least they
18 should be ordered to brief these issues and
19 demonstrate why these concerns are not surmountable.
20           THE COURT: All right. Thank you.
21           Counsel?
22           MR. FICZKO: Your Honor, just to reiterate
23 my point, Defendant simply has not to this point
24 challenged any of the requirements that we need for

1  class certification.  The so-called ascertainability

2  is not a reason to deny class certification.

3              Defense counsel kept harping on that

4  his client has limited data.  Well, the reason why

5  they have limited data is for -- they have to blame

6  themselves because there is no reason why four, five,

7  all of the kiosks have been destroyed or lost.  We

8  simply -- and no one at Nex- -- or excuse me, at Wow

9  Bao could indicate where they were, why they were

10 destroyed or otherwise.

11             Defendants also contradict what was

12 indicated in Mr. Leary's declaration.

13         THE COURT:  Can I ask you a question?  A

14 question, Mr. --

15         MR. FICZKO:  Sure.

16         THE COURT:  Why does the kiosk having been

17 destroyed matter?  All the data, it sounds to me,

18 would have been uploaded to the cloud, so who cares

19 whether or not the kiosk exists?  Isn't the ultimate

20 issue whether the data itself exists?

21         MR. FICZKO:  That's inaccurate.  There is

22 what's called a Transaction Manager Software that is

23 installed in each computer within the kiosk which

24 stores transaction files, credit card transaction

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  files, log files.  This all goes to connect to the
2  facial geometry, which --
3           THE COURT:  But that data doesn't get
4  uploaded to the cloud?  Those files don't get uploaded
5  to the cloud; they remain resident on the hard drive
6  in the kiosk?  That doesn't make sense to me.
7           MR. FICZKO:  I believe it may be both,
8  your Honor.
9           THE COURT:  Well, if it's both, again, my
10  question is why does it matter where the kiosk is if
11  the data exists somewhere?
12           MR. FICZKO:  Well, we're saying both, that
13  the data exists both in the cloud and it would exist
14  in the computers if Defendants would have kept them.
15           THE COURT:  Okay.
16           MR. WARD:  Your Honor, may I respond on
17  that point?
18           THE COURT:  Just a second, Counsel.  I'll
19  give you an opportunity.
20           MR. WARD.  Sure.  Thank you.
21           MR. FICZKO:  And we did, your Honor,
22  explore this.  And as I indicated, before we filed a
23  lawsuit against Nextep and conveniently this
24  declaration was submitted, all of the evidentiary

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  evidence indicates that the geometries, the facial

2  geometries, are linked to the customer's credit card

3  and phone number, and there's documents from Nextep

4  that clearly show that, which we submitted that

5  describe how their facial recognition kiosks worked,

6  and how it's link to tender, and how it even says that

7  one of the whole purposes is now that the customer

8  doesn't even have to bring back a credit card for the

9  next time use because it's already saved in the kiosk.

10            THE COURT:  Okay.  Anything else?

11            MR. FICZKO:  No, your Honor.  Thank you.

12            THE COURT:  All right.  Mr. Ward?

13            MR. WARD:  Your Honor, this is just

14  another issue of underdeveloped or misleading of the

15  evidence.  It's not what the evidence shows here from

16  Nextep's own documents.  In fact, the witnesses

17  testified that they never linked credit card to facial

18  recognition because they couldn't either get it to

19  work or it wasn't something they were deploying at

20  Wow Bao.

21            But I think it's critical on this

22  kiosk question because I think you've hit on an

23  important point.  Again, our understanding, and I

24  hired a forensic expert to investigate this once we

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  learned that some of these kiosks had gone because I
2  wanted to determine did we lose anything of importance
3  to this case, we spent quite a bit of money to do it.
4              Mr. Ficzko had the opportunity to
5  depose individuals on it, and what we know is that
6  because everything is cloud-based, there isn't
7  anything lost.  And, in fact, our expert said there is
8  nothing stored on these local hard drives that relates
9  to facial geometry whatsoever.
10             And, again, if the other side wants
11  to contest that point, that's something they have the
12  burden to establish.  So we either need to brief it
13  and they can try and show you the evidence, or we need
14  to deny certification of these -- this is a critical
15  point.  But it's not accurate that we have no one but
16  ourselves to blame here, because we made sure before
17  we made these arguments to the court that we had a
18  full understanding of what we were dealing with, with
19  these data.
20             And Mr. Ficzko just said all of the
21  evidence says that, you know, you can link these
22  things.  Well, then they should have showed it.  They
23  should have showed it in their briefing instead of
24  arguing it in a scrambled reply and making a bunch of

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   assertions in oral argument when the actual evidence
2   and testimony says otherwise.
3              So, again, either we need to deny
4   this motion because not being able to identify a
5   single class member and not having had a mechanism
6   proposed for how we could administer this class that
7   is actually feasible is a critical part of the
8   certification inquiry, and that was not met.  So
9   either we need to deny the motion or at least give the
10  Plaintiff the opportunity to certify these burdens.
11             THE COURT:  All right.  Mr. Ficzko, it's
12  your motion, you have the last word.
13             MR. FICZKO:  Thank you, your Honor.
14                As I indicated, ascertainability is
15  not a means to deny a motion for class certification.
16  At this stage, we do not need to identify every
17  individual.  There are means that do not violate due
18  process through which direct notice is not necessary.
19                For example, the Defendants cannot
20  produce the credit card transaction data, the parties
21  may need to subpoena credit card companies, or the
22  parties may need to rely on class member
23  self-identification at the claims stage, or notice, as
24  we previously discussed, by publication or by posting

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   it at these Wow Bao restaurants.

2                Class members can simply be

3   identified during the claims administration process.

4   This is not a reason to deny class certification at

5   this stage.

6                THE COURT:  All right.  The court is going

7   to grant the motion for class certification.  The

8   court finds that the Plaintiff has met the

9   requirements of identifying that the class is so

10  numerous that joinder of all members is impracticable,

11  that there are questions of fact and law that are

12  common to the class that predominate over any

13  questions affecting only individual members, that the

14  representative parties will fairly and adequately

15  protect the interest of the class, and that the class

16  action is an appropriate method for the fair and

17  efficient adjudication of controversy.  The court also

18  grants class counsel as well as the motion to appoint

19  class representative.

20               So, gentlemen, where does that leave

21  us in terms of next steps?

22               MR. FICZKO:  The next steps will be the

23  notice process, your Honor, which we'll need to decide

24  how to best go about that business.

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1          THE COURT:  All right.  Let's have a
2   status 60 days out or so.
3               Mark, do we have a date that's
4   available 60 days out?
5          THE CLERK:  Yes, Judge, we can do
6   March 15th at 10:00 a.m.
7          MR. WARD:  Your Honor, I'll be in trial in
8   California on that date.  If we can either go a week
9   before or a couple weeks after, I'd appreciate it.
10         THE COURT:  A couple weeks after, Mark?
11         THE CLERK:  Would April 4th work for
12   counsel?
13         MR. WARD:  That should be fine for me,
14   your Honor.  I appreciate it.
15         MR. FICZKO:  That works for Plaintiff.
16         THE COURT:  April 4th at 10:00.
17             All right?
18         MR. FICZKO:  Yes, your Honor.
19             Should we write an order?
20         THE COURT:  Yes.
21         MR. FICZKO:  Will do.
22         THE COURT:  Ms. Pitts, is there anything
23   you need from the court?
24             THE REPORTER:  There isn't.  Thank you,

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1   your Honor.

2            THE COURT:  All right.  Then, gentlemen,

3   thank you.  You folks have a great holiday.

4                    (Which were all the proceedings

5                    that were had in the above-entitled

6                    cause on this date.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MORRIS v WOW BAO - 17-CH-12029
COURT HEARING - 11/17/2021

1  STATE OF ILLINOIS     )
                         )  SS:
2  COUNTY OF C O O K     )

3

4          I, NOHEMI SALAZAR-PITTS, a Certified

5  Shorthand Reporter doing business in the City of

6  Chicago, certify that I reported in shorthand the

7  proceedings of said hearing, and that the foregoing is

8  a true and correct transcript of my shorthand notes so

9  taken as aforesaid and contains the proceedings given

10  at said hearing.

11

12

13
                    _____
                    Certified Shorthand Reporter
14                  LICENSE NO.:  084-4648

15

16

17

18

19

20

21

22

23

24

**A**

a.m 29:6
ability 18:15
able 11:10,13
 16:4 27:4
above-entitled
 1:14 30:5
absolutely 11:4
access 6:24 9:16
 16:23 17:2,13
account 4:19 7:4
accounts 8:9
accurate 21:24
 26:15
Act 3:21
action 8:23
 28:16
actual 7:7 8:22
 10:2 27:1
addition 8:10
additional 22:2
 22:3
addressed 12:7
 16:6 17:1
 22:14
adequately
 28:14
adjudication
 28:17
administer 27:6
administration
 28:3
administrative
 6:8
affidavit 16:2
aficzko@step...
 2:6
aforesaid 31:9
afternoon 3:5,9
ago 13:8,21,22
agree 13:13 16:5
ahead 12:10
algorithmic
 10:24

**ALLEN** 1:15
alluded 9:11
 10:5,11
amount 13:17
 13:23,23 19:3
**ANDREW** 2:3
**Andy** 3:6
answer 15:8
 16:20 18:8
 22:12
anticipated 6:5
anytime 21:22
anyway 18:20
**APPEARAN...**
 2:1
**Appeared** 2:7
 2:12
appoint 28:18
appointed 8:24
 9:2
appreciate 29:9
 29:14
appropriate
 28:16
approximately
 4:1
**April** 29:11,16
areas 13:2,3
argue 6:3
argued 11:9
 15:2
arguing 26:24
argument 11:17
 27:1
arguments
 26:17
ascertainability
 11:8 23:1
 27:14
aspect 19:8
aspects 22:9
asserted 12:13
asserting 3:20
assertions 8:19

27:1
associated 4:18
assuming 11:20
**ATMs** 13:15
attempts 8:7
authority 13:10
available 5:9
 18:9,10 29:4
**Avenue** 12:24

**B**

back 18:11
 19:11 22:7
 25:8
**Bao** 1:8,8 2:13
 3:3,23 7:23
 16:12,12,14
 18:4 21:3 23:9
 25:20 28:1
**Bao's** 3:24
bar 13:14
basic 17:11
 18:23
basically 4:15
 4:19 6:1 21:14
behalf 1:4 2:7
 2:12 3:6,7
believe 14:13
 18:18 19:3
 24:7
best 28:24
biometric 3:21
 4:24 5:8,11,13
 5:14,16,21,22
 5:22,23 9:4
 11:23 16:16
 19:1 20:7
biometrics 22:3
**BIPA** 3:21 5:4
 5:19,23,24
 8:13 9:5
bit 26:3
blame 23:5
 26:16

bland 17:17
**Brian** 8:6 10:1
 10:18
brief 10:13
 22:18 26:12
briefing 12:17
 14:20 21:6
 26:23
bring 14:7 25:8
bringing 19:17
built-in 4:9
bunch 26:24
burden 12:5,18
 14:8,18 19:22
 22:11,17 26:12
burdens 27:10
business 28:24
 31:5
buying 20:11

**C**

C 2:3 31:2
California 29:8
call 6:10,19 9:8
called 7:3,6
 23:22
calls 9:13
camera 4:10
cameras 4:14
captive 9:17
capture 13:5,24
captures 9:18
card 7:3,8 8:10
 23:24 25:2,8
 25:17 27:20,21
cares 23:18
carry 22:17
case 5:15 6:2
 8:15,15 9:10
 9:12,16 10:3
 11:4 12:6
 13:14,18 14:5
 19:6 21:13
 26:3

case-specific
 13:12
cause 1:14 30:6
**Central** 1:19
certainly 9:9
certifiable 12:7
 22:9
certification 6:3
 8:22 13:18
 14:6,19 16:8
 23:1,2 26:14
 27:8,15 28:4,7
certified 1:17
 8:23 22:12
 31:4,13
certify 3:14,19
 11:12 27:10
 31:6
challenge 8:21
challenged
 22:24
**CHANCERY**
 1:2
checkouts 4:2
**Chicago** 2:5,10
 13:4 31:6
choice 22:4
chooses 4:8
**Christopher** 2:9
 3:7
**Circuit** 1:1
 13:14,19
circumstances
 13:12
cited 10:12
**City** 31:5
claims 3:20
 27:23 28:3
**Clark** 2:10
class 3:14,19 6:2
 6:5,7,13,14,19
 7:18 8:22,23
 8:23,24 9:2
 11:3,10,11,12

12:4,13 14:6
14:18 15:7
17:22 22:10,12
23:1,2 27:5,6
27:15,22 28:2
28:4,7,9,12,15
28:15,18,19
clear 6:6 9:15
clearly 8:14,18
10:18 12:14
25:4
CLERK 3:3
29:5,11
client 19:12,24
20:1 21:9 23:4
client's 21:21
clients 15:10
17:2,12 21:11
21:14,24
cloud 4:16 6:23
7:10 9:19,21
14:11 17:5
23:18 24:4,5
24:13
cloud-based
26:6
collect 5:12
18:21,21
collected 5:1,8
6:20 9:4
collecting 5:20
18:20,24
collects 4:10
college 13:15
combination
14:11
come 11:18
20:11,12
comes 20:23
coming 14:4
commencing
1:19
common 5:17
28:12

communicate
7:9
communicating
7:12
companies
18:24 27:21
company 8:16
15:1 16:10,13
20:10,18
compare 4:15
compile 6:5
complete 10:24
complying 5:24
comply 5:4
computer 7:7
23:23
computers
24:14
concede 6:1
concerning 7:21
concerns 22:13
22:19
confines 16:14
confirms 8:8
connect 7:14
24:1
connected 7:17
connection
21:17
connects 7:2
consent 5:13
consequence
15:4
consistently
21:21
consumers 3:20
contact 7:19
contains 6:24
31:9
contentions 8:17
contest 26:11
contradict 8:7
8:18 23:11
contradicted

10:12
contradiction
12:12 14:15
contrary 20:19
control 9:21
controversy
28:17
conveniently
24:23
convolute 9:12
COOK 1:1
correct 3:15
17:23 18:7
31:8
correlate 18:11
corresponding
14:12
corresponds
10:22
costs 4:3
counsel 9:1,2
19:24 22:21
23:3 24:18
28:18 29:12
COUNTY 1:1,2
31:2
couple 12:20
13:15 29:9,10
court 1:1,15 3:9
3:13,16,18
6:11 9:6,23
11:10,15 12:1
14:1,21,24
15:11,15 16:7
16:9 17:6,8,20
18:3,17,17
19:2,6,23
22:20 23:13,16
24:3,9,15,18
25:10,12 26:17
27:11 28:6,6,8
28:17 29:1,10
29:16,20,22,23
30:2

court's 11:13,16
20:23
courts 13:10
credit 7:3,8 8:10
23:24 25:2,8
25:17 27:20,21
critical 9:10
25:21 26:14
27:7
customer 4:8,12
4:20 7:13
11:22 17:11,15
20:4 25:7
customer's 4:5
4:10,15,18,19
8:8 25:2
customers 3:23
5:3,19 7:1 9:3
15:10 16:19
customers' 5:2
5:11 7:2
cward@foley....
2:11

**D**

dashboard
17:10,15 18:5
data 4:11 5:8,11
5:14,16,21,22
6:19,20 7:1,17
7:17 8:9 9:4,13
9:16,18 10:15
11:1,23 14:12
15:1,9 16:15
16:16,23 17:3
17:11,17,22
18:11,13,19,20
18:21,22,24
19:4,14,15
20:1,7,15,21
21:18 22:2
23:4,5,17,20
24:3,11,13
26:19 27:20

data-driven
19:7
database 4:11
4:16
date 29:3,8 30:6
dates 7:15
day 8:20 18:6
days 29:2,4
dealing 26:18
deals 13:14
December 1:16
decide 28:23
declaration 8:6
10:2,18 23:12
24:24
Defendant 2:12
3:8 22:23
Defendants 1:10
4:3 5:1,6,18
6:1,23 8:1,5,20
9:5,12,15
23:11 24:14
27:19
Defense 23:3
defined 5:23
delivered 20:14
demographic
20:8
demonstrate
21:5 22:19
denied 6:4 22:16
deny 23:2 26:14
27:3,9,15 28:4
DEPARTME...
1:2
deploying 25:19
depose 26:5
deposition 10:6
10:12
depositions
21:14
describe 25:5
described 18:5
despite 8:3

destroy 15:11
destroyed 7:24
  8:2,3 23:7,10
  23:17
destruction 5:10
detail 9:10
determine 26:2
developed 19:21
  21:13
difficult 6:4
direct 6:12
  27:18
disclose 5:14
disclosed 5:2
  19:16
disclosing 5:21
discontinued
  17:12
discovered
  15:23 19:16
discovery 6:20
  7:5 12:11,16
  19:17
discussed 27:24
discussion 3:11
  17:21
disseminated
  9:5
distinction
  19:12
DIVISION 1:2
documents 8:18
  25:3,16
doing 18:20 31:5
downplaying
  9:9
drinks 4:7
drive 24:5
drives 26:8
due 6:13 27:17

——— E ———
e-mail 2:6,11
  10:10,12

easy-to-follow
  5:4
effective 16:17
  16:17,18
effectiveness
  15:5
efficient 28:17
either 7:24
  14:16 22:16
  25:18 26:12
  27:3,9 29:8
employee 8:6,18
ensuring 8:14
ENTERPRIS...
  1:9
Entertain 1:8
  16:10
entire 9:15
entirely 9:16
ESQUIRE 2:3,9
essentially 10:10
  21:10
establish 26:12
established
  19:20
evidence 5:17,18
  8:4,7,17 9:14
  10:4 12:12,14
  14:13,16 21:5
  21:13 25:1,15
  25:15 26:13,21
  27:1
evidentiary
  24:24
example 5:6
  13:13 27:19
excuse 23:8
exist 11:21
  24:13
exists 12:23 19:5
  23:19,20 24:11
  24:13
expert 25:24
  26:7

explain 19:18
explanations
  22:10
exploration
  15:18
explore 24:22
explored 16:24
  19:16
extensively
  16:24

——— F ———
face 4:15
facial 3:23 4:4,5
  4:8,9,10,13,14
  4:16,22 5:2,20
  7:1,2,14,22 8:8
  10:15,21 11:23
  15:3 21:10
  22:1 24:2 25:1
  25:5,17 26:9
facilitate 4:2
facilities 16:15
fact 6:13 10:22
  18:19 20:24
  25:16 26:7
  28:11
failed 8:21
failing 5:3
failure 22:17
fair 28:16
fairly 19:5 28:14
false 13:24
far 18:2
faster 4:2 20:6
favorites 20:11
feasibility 6:8
feasible 27:7
feature 4:9
Ficzko 2:3 3:5,6
  3:15,17 9:10
  10:5,11 22:22
  23:15,21 24:7
  24:12,21 25:11

26:4,20 27:11
  27:13 28:22
  29:15,18,21
file 7:14 10:24
filed 7:21 24:22
files 7:8,9,9 9:20
  10:15,19,21,22
  11:2 15:20
  18:1 23:24
  24:1,1,4
Finally 8:5
finds 18:17 19:2
  28:8
fine 29:13
first 12:3 18:23
  20:2,20
five 13:8,22 23:6
FOLEY 2:9
folks 16:13 19:4
  30:3
follow-up 14:21
following 3:1
food 4:7
foot 16:18
footnote 10:13
foregoing 31:7
forensic 25:24
forth 20:8
found 4:17
four 23:6
FRANCHISI...
  1:8
full 26:18
fully 21:13

——— G ———
G 2:9
gap 13:17
gather 22:2
general 6:12
gentlemen 28:20
  30:2
geometries 25:1
  25:2

geometry 4:6,11
  4:16,22 5:2 7:1
  7:2,14 8:9
  10:15,21 24:2
  26:9
give 17:22 24:19
  27:9
given 18:6,6
  31:9
go 9:2 17:9
  19:11 20:5
  21:23 22:7
  28:24 29:8
goes 18:4 24:1
going 13:12,16
  14:1 20:7
  21:12,23 28:6
Good 3:5,9
grant 28:7
grants 28:18
great 30:3
guess 16:21
guest 4:19 7:4
  8:9
guidelines 5:10
guy 10:8

——— H ———
happened 21:1
happens 4:20
  9:17
hard 18:18 19:2
  24:5 26:8
hardware 21:19
harping 23:3
hearing 1:14
  31:7,10
heightened 11:8
high 13:2,2,8
higher 4:2
hired 25:24
history 7:15
  8:11
hit 25:22

hits 13:24
holiday 30:3
Honor 3:5,15,17
   9:8 10:20 12:3
   15:8 16:20
   17:15,24 18:10
   19:10 22:10,22
   24:8,16,21
   25:11,13 27:13
   28:23 29:7,14
   29:18 30:1
HONORABLE
   1:15
host 20:6
hosted 5:15
hosting 9:13
housed 7:6
Humor 19:23

**I**

idea 10:22 17:18
   19:11
identical 3:20
identification
   4:6
identified 28:3
identifiers 5:23
identify 6:14
   7:18 11:2,4,10
   11:13 12:4,13
   16:4 18:15
   27:4,16
identifying
   10:15,19 28:9
illegally 9:4
Illinois 1:1,18
   2:5,10 3:20
   31:1
image 4:15
imagine 20:6
immediately
   11:18 17:4
impact 8:15
implausible 19:6

19:19
implemented
   4:4
importance 26:2
important 10:16
   12:21 13:18
   14:10 22:8,9
   25:23
impossible
   14:14
impracticable
   28:10
improve 20:4
inaccurate
   23:21
including 6:15
inconsistent
   6:12
incredibly 13:2
   13:2
indicate 23:9
indicated 3:18
   23:12 24:22
   27:14
indicates 25:1
indication 17:23
individual 11:2
   27:17 28:13
individuals 3:22
   6:6 10:5,20
   13:3,7 15:20
   26:5
inform 5:7
information
   3:21 5:13,22
   7:13 10:19
   15:6,12,14
   16:11 17:16
   21:22
inquiry 27:8
installed 21:7
   23:23
installer 10:10
interest 8:14

28:15
interfaced 7:11
interviewed
   16:1
investigate
   25:24
inviting 11:21
involvement
   21:15
issue 9:18 12:6
   13:18 16:21
   17:16 23:20
   25:14
issues 14:3
   15:18 22:18
itinerant 13:4

**J**

Jessica 3:10
joinder 28:10
Judge 1:15 29:5
juncture 19:7

**K**

K 31:2
keep 15:9
kept 15:1 16:11
   16:15,22 23:3
   24:14
key 12:6
kind 16:11,15
kinds 18:22
kiosk 3:24 4:9
   4:18,21,21
   5:20 6:21 7:6,8
   7:11 8:2 23:16
   23:19,23 24:6
   24:10 25:9,22
kiosks 4:4 7:22
   7:24 17:3 21:2
   21:7,8,16 23:7
   25:5 26:1
know 14:3 18:8
   19:24 21:4
   26:5,21

knowledge 10:3
   10:7 16:3

**L**

laid 10:17
Lake 13:1,23
LARDNER 2:9
law 6:5 28:11
lawsuit 7:21
   8:13 24:23
learned 26:1
Leary 8:6,7,14
   10:1,18 16:1
Leary's 8:19
   23:12
leave 28:20
left 19:18
legal 22:11
length 5:7
Let's 29:1
Lettuce 1:8
   16:10
level 19:10
LICENSE 31:14
light 18:19
   22:13
likelihood 13:5
limited 19:3
   23:4,5
link 10:14 25:6
   26:21
linked 8:9 15:20
   25:2,17
list 6:5,19
literally 17:4
   21:15
litigation 8:4
little 3:19 22:5
live 4:15
LLC 1:8,8 2:13
LLP 2:3,9
local 26:8
locations 7:15
   7:23 13:9

log 7:8 24:1
longer 12:23
   17:12 19:5
look 10:1 13:9
   14:16
looking 14:11
lose 26:2
lost 7:24 23:7
   26:7
lot 20:17,21

**M**

machines 22:1
maintained
   17:10
making 26:24
management
   16:13,13
manager 7:7
   23:22
March 29:6
Mark 29:3,10
marketing 16:17
   20:9
match 4:17,17
matter 9:23
   23:17 24:10
matters 9:24
mean 5:21 14:3
   18:20
means 4:6 6:17
   27:15,17
meant 16:22
mechanism 12:4
   17:18 27:5
meets 6:2
member 11:3
   27:5,22
members 6:7,14
   7:18 11:12
   12:4,14 28:2
   28:10,13
met 19:21 27:8
   28:8

method 28:16
methodologies
  11:18
Michigan 12:24
mind 11:17,19
minimizing 4:3
minimum 14:19
misleading
  25:14
money 26:3
monitor 15:5
month 18:6
Morris 1:4 3:3
  8:24
motion 3:19 6:3
  19:18 22:16
  27:4,9,12,15
  28:7,18
moving 12:7,16
  14:17 17:1
  22:14
multiple 9:11
  21:14

**N**

nah 19:3 20:17
name 6:6
named 11:5
near 12:24
nearing 12:22
nearly 13:17
necessary 6:16
  6:18,20 27:18
need 6:6,18 7:13
  12:17 14:9,19
  21:5 22:24
  26:12,13 27:3
  27:9,16,21,22
  28:23 29:23
needed 12:15
  14:5,17 21:22
needs 11:10
network 21:16
never 15:22,23

16:11,14,15
17:2,6,8 22:13
25:17
Nex- 23:8
Nextep 5:15
  6:23 8:6,13
  9:11,12,13,17
  9:18,19,20,21
  9:22 10:24
  13:8 15:9,10
  15:11,24 17:10
  17:11 18:1,11
  19:12,14 21:2
  21:7,12,17,24
  22:3 24:23
  25:3
Nextep's 8:17
  22:4 25:16
Nohemi 1:17
  31:4
North 2:4,10
  12:24
notes 31:8
notice 6:12,15
  7:19 9:2 27:18
  27:23 28:23
noting 8:12
notion 20:17
notwithstandi...
  11:17
number 6:14
  11:19,19 13:6
  17:17 18:13,14
  20:4,14 21:3
  25:3
numbers 7:3,3
  8:10,10
numerous 28:10

**O**

O 31:2,2
obligation 8:3
obviously 7:16
oh 14:10

Okay 19:23
  24:15 25:10
omission 9:9
once 25:24
operation 20:5
opportunity
  24:19 26:4
  27:10
opposition
  22:15
oral 27:1
order 4:12 7:9
  7:15 8:11
  20:12 29:19
ordered 8:2
  22:18
ordering 3:24
  4:6 7:6
orders 4:13,18
  4:23 7:16 15:3
overreaching
  18:24

**P**

P 1:15
p.m 1:19
papers 12:8,16
  14:18 17:2
  22:14
parameters 15:6
parent 16:10
part 12:5,6
  17:20 20:22
  21:3 27:7
particular 16:12
  18:6
particularly
  16:12
parties 5:14
  27:20,22 28:14
party 11:6
path 14:4
pay 21:12
payment 7:17

payroll 4:3
pending 8:13
people 10:23
  15:1,2,7 17:21
  18:5,21 22:5
period 11:21
  12:21
person 10:8
personal 9:3
  10:2,7 16:3
petition 3:14
phone 2:5,11 7:3
  8:10 25:3
pick 20:14
Pitts 29:22
place 4:12 18:23
  18:23 20:2,20
placed 15:4
placing 4:22
Plaintiff 1:6 3:6
  8:21 9:1 11:5
  14:17 15:23
  19:21 22:11
  27:10 28:8
  29:15
Plaintiff's 3:13
  3:18 11:17
  12:5 14:7 17:1
Plaintiffs 2:7
platform 1:17
Plaza 2:4
point 7:12 12:3
  12:22 15:22
  16:23 20:19
  22:7,23,23
  24:17 25:23
  26:11,15
points 20:15
Policy 6:10
possession 10:24
possible 6:7
posting 12:20
  13:11 27:24
potentially 14:4

power 21:16
precedent 8:15
predominate
  28:12
prerequisites
  8:22
preserve 8:4
presumably
  20:5
presume 18:9
previous 4:13
previously 27:24
prior 19:17
Privacy 3:21
private 9:3
problem 12:1
  18:12
proceed 3:16
proceedings
  1:13 3:1 30:4
  31:7,9
process 6:13
  11:14,15 17:4
  21:15 27:18
  28:3,23
processes 21:18
produce 27:20
proposed 27:6
protect 28:15
protested 21:11
proven 12:16
provide 16:1
  17:15 21:16
provided 10:3
  16:2 20:18
providing 11:23
  21:2
public 5:9
publication 6:16
  11:19 12:19
  13:11 27:24
publish 14:1
pulls 4:18
purpose 5:7

**purposes** 4:22
7:12,19 8:4
25:7
**put** 20:1 21:10
21:24 22:3
**putative** 11:3,11
**putting** 11:20
20:20

**Q**

**question** 11:22
12:19 14:22
16:8 18:3,9
23:13,14 24:10
25:22
**questions** 22:8
28:11,13
**quite** 26:3

**R**

**raising** 15:19
**real** 18:10
**reality** 9:14
16:23
**really** 12:20
14:10 16:8
17:1
**reason** 14:7 15:4
20:2 23:2,4,6
28:4
**reasons** 6:10
**recall** 4:13
**recalling** 4:22
**receive** 5:12,13
**recognition** 3:24
4:4,9,10,13,14
5:20 7:22
11:23 15:3
21:10 22:1
25:5,18
**recognize** 4:21
**record** 3:12 8:8
9:15 19:20
20:24
**records** 13:20

**REGINA** 1:4
**reiterate** 22:22
**reject** 6:11
**relates** 26:8
**relative** 19:4
**relatively** 18:18
**release** 5:12
**relevant** 19:15
**rely** 27:22
**remain** 24:5
**remote** 1:16 2:1
3:2
**repeat** 13:16
**reply** 11:9 12:8
26:24
**reported** 1:17
31:6
**Reporter** 1:18
29:24 31:5,13
**reports** 17:6,8
18:4
**representative**
8:1 9:1 13:6
28:14,19
**representatives**
11:11
**request** 21:9
**required** 6:13
**requirement** 6:9
6:11
**requirements**
5:5 6:2 22:24
28:9
**requires** 6:8
**resident** 24:5
**respond** 24:16
**response** 14:2
22:15
**restaurant** 3:23
**restaurants** 4:5
5:3 28:1
**retention** 5:10
**returns** 4:12
**revealed** 7:5

**right** 3:9 13:12
13:24 16:21
19:11 22:20
25:12 27:11
28:6 29:1,17
30:2
**Riverside** 2:4
**route** 15:24
**rule** 6:7,12

**S**

**Salazar-Pitts**
1:17 31:4
**sale** 7:12
**sales** 4:2 10:8
**satisfy** 8:21
14:18
**saved** 25:9
**saying** 10:14
11:7,9,13
16:10 24:12
**says** 14:13 21:14
25:6 26:21
27:2
**schedule** 5:10
**scheduled** 21:4
21:6
**scrambled** 22:14
26:24
**scrambling** 12:8
**search** 15:24
**second** 24:18
**self-identificat...**
6:15 27:23
**self-identified**
13:7
**self-ordering**
4:4
**sending** 7:19
**sense** 10:9 24:6
**series** 9:20
**service** 17:12
20:4
**set** 8:15

**Seventh** 13:14
13:19
**shorthand** 1:18
31:5,6,8,13
**should've** 12:5
**show** 19:21
22:12 25:4
26:13
**showed** 6:20
26:22,23
**shows** 5:18
12:15 14:16
25:15
**side** 19:17 26:10
**sign** 11:20
**similarly** 1:4
**simple** 5:4 14:11
**simply** 4:20 7:14
8:16 9:19
10:21,23 11:5
11:16,19 14:10
17:17 22:23
23:8 28:2
**single** 8:1 11:2
17:19 27:5
**situated** 1:5
**six** 7:22 21:8
**skepticism**
19:11 20:23
**so-called** 6:8
23:1
**society** 19:7
**software** 6:21
7:7 15:3 20:19
21:19 23:22
**solely** 9:21
**somewhat** 19:2
**sorry** 9:20 13:22
17:7
**sort** 9:11 12:18
14:17 16:21
17:17 18:22
**sorted** 12:10
**sought** 14:18

**sounds** 23:17
**source** 15:6
**specific** 6:6
10:13 18:15,15
**Specifically** 3:22
**spent** 26:3
**SS** 31:1
**stage** 14:6,14
27:16,23 28:5
**standard** 11:8
**State** 1:18 13:1
13:22 31:1
**status** 29:2
**statute** 18:22
**STEPHAN** 2:3
**steps** 28:21,22
**store** 5:12 7:8,15
20:9,10
**stored** 4:16 5:1,8
6:21 9:4 26:8
**stores** 4:1,11
11:20 12:22
16:11,19 21:3
21:8 22:2
23:24
**Street** 2:10
**struggling** 20:16
**stuff** 14:8 20:18
**subject** 15:15,17
15:18
**submit** 8:5
**submitted** 11:22
24:24 25:4
**subpoena** 15:15
15:17 27:21
**suffer** 18:12
**sufficient** 13:6
13:11
**suggesting** 16:9
**Suite** 2:4
**superficial**
18:13,19 19:9
**supplemental**
12:17 14:20

support 8:17
sure 11:24 13:20
  14:23 19:9
  20:22 23:15
  24:20 26:16
surmountable
  22:19
system 5:1 6:24
  7:12 9:17
  10:17 18:7
  19:4 20:1,20
systems 5:15
  10:7 19:13
  21:23

**T**

take 16:21 17:4
  22:2
taken 31:9
talking 13:21
technology 9:18
  10:4,9 13:7
Tell 19:6
tender 25:6
terms 15:6,19
  28:21
testified 10:6
  11:1 21:21
  22:6 25:17
testify 8:2
testimony 8:18
  10:3,13 27:2
thank 3:17 9:6
  22:20 24:20
  25:11 27:13
  29:24 30:3
theirs 21:18
thing 21:15
things 12:20
  26:22
think 9:9 12:14
  12:20 14:5,9
  15:2 16:20
  20:22 22:8,8

25:21,22
third 5:14
thought 12:11
  20:3,8
three 4:5 7:23
  12:22 21:7,8
time 1:19 5:7
  11:21 12:10,21
  13:17 15:9
  18:10 19:23
  20:12 21:20
  25:9
times 9:11
tons 20:1
tool 16:17,18
total 7:22
totally 19:10,20
tourists 13:3
Tower 13:1,22
town 13:15
tracking 4:24
  16:18
traffic 13:2,2,8
  13:16,23 16:19
  20:9
trail 17:18
transaction 6:19
  7:6,8,9 14:12
  17:19 18:16
  23:22,24,24
  27:20
transactional
  17:22
transactions
  17:18 18:14
transcript 1:13
  31:8
trial 29:7
tried 9:11
true 31:8
try 26:13
trying 22:2
two 7:23 10:5
  11:16,18,19

12:24

**U**

ultimate 23:19
ultimately 22:11
underdeveloped
  20:24 25:14
understand
  15:13 17:24
  19:10
understandable
  20:23
understanding
  25:23 26:18
uniformly 5:18
unpack 11:2
unreliable 13:9
unsupported
  8:19
upgrade 21:4,7
  21:10
upload 17:4
uploaded 23:18
  24:4,4
uploads 9:19
use 5:12 7:18
  18:6 25:9
useful 20:9
user 7:14,16
  17:19 18:15
users 18:14
Usually 18:21

**V**

verb 16:22
versus 13:20
vet 14:9
vetted 12:9,15
  14:5,8
videoconference
  1:16
videoconferen...
  3:2
view 19:19
violate 27:17

violated 5:18
violation 9:5
volume 4:2
vs 1:7 3:3

**W**

walk 4:20
WALKER 1:15
wanted 26:2
wants 26:10
Ward 2:9 3:7,7
  9:7,8,24 11:24
  12:2 14:23
  15:8,13,17
  16:20 17:7,9
  17:24 18:8
  19:9 20:22
  24:16,20 25:12
  25:13 29:7,13
wasn't 17:1
  25:19
Water 13:1,22
way 5:19 10:1
  10:16,20 11:1
  13:19 17:3
  21:1
ways 6:14 11:16
  11:18
we'll 28:23
we're 13:19,20
  24:12
week 29:8
weeks 29:9,10
went 15:23
weren't 14:6
whatsoever 26:9
willing 16:1
witnesses 21:21
  25:16
word 27:12
work 10:7 25:19
  29:11
worked 17:3
  25:5

works 10:1,4,17
  14:13 29:15
worth 8:12
wouldn't 15:5
  19:24
Wow 1:8,8 2:12
  3:3,23,24 7:23
  16:12,12,14
  18:4 21:3 23:8
  25:20 28:1
write 29:19
wrote 10:10

**X**

**Y**

yeah 15:11
  18:17 22:4
years 13:8,21,22
  21:3

**Z**

zero 8:16 14:2
Zoom 1:16
ZOURAS 2:3

**0**

084-4648 31:14

**1**

1,369 5:19 9:3
10:00 29:6,16
100 2:4
1300 3:19
1300-and-some
  15:20
1369 10:19,23
  15:20 18:1,2
14 1:16
15th 29:6
17-CH-12029
  1:7 3:4

**2**

2:00 1:19

# EXHIBIT 3

Exhibit 1                    Exhibit C

* 5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE
CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN and DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.:2023CH08102 |
| v. | ) ) ) | |
| TROY MANUFACTURING & DESIGN CO., | ) ) | |
| Defendant. | ) | |

**DECLARATION OF TIMOTHY FRANKLIN
IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Timothy Franklin, certify under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.     I am over the age of 18 and the named Plaintiff in this lawsuit.

2.     I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I could and would competently do so.

3.     I understand that this is a proposed class action and that I am the proposed class representative.

4.     I understand that a class action is a lawsuit brought by at least one person on behalf of a group of people who have been treated in the same or essentially the same manner by the defendant.

5.     I understand the proposed class here includes other persons who, like me, Troy Manufacturing and Design ("Troy") did not: (a) inform in writing that it would store their facial

170615

Exhibit 1        Exhibit C

information; (b) inform in writing of the specific purposes and length of time for which it would collect, store, and use their facial information; (c) get a written release authorizing Troy to collect or store their facial information; or (d) give a written, publicly-available policy identifying Troy's retention schedule, or guidelines for permanently destroying worker facial information.

6.  I am willing to be a representative of the class.

7.  To my knowledge, I have no interests antagonistic to those of the class members. I believe my interests are entirely consistent with the class members' interests because I seek relief for myself and the class for Troy's common violation of its obligation to: (a) inform us in writing that it would store our facial information; (b) inform us in writing of the specific purposes and length of time for which it would collect, store, and use our facial information; (c) get written releases from us authorizing it to collect or store our facial information; and (d) maintain a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying our facial information.

8.  I understand that as a class representative I have the responsibility: a) to consider the class's interests when making any decisions about the case and make all such decisions in the interests of the class, not just my own interests; b) to participate in the case and consult with my attorneys about the case; and c) to testify at a deposition and/or trial and provide documents and information for use in the case if needed.

9.  I have arranged for my attorneys to advance all costs of this action, including the cost of notification of the class.

10.  I understand that courts have sometimes awarded people money for serving the class representative, but that I am not entitled to any such payment, and that I have not been promised or guaranteed money for being the class representative.

2

Exhibit 1                    Exhibit C

11. I am not employed by or related to my attorneys in this matter.

Timothy Franklin (Sep 7, 2023 16:55 CDT)

Timothy Franklin

Exhibit 1                                    Exhibit C

# EXHIBIT 4

Exhibit 1

Exhibit C

*5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| TIMOTHY FRANKLIN and DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| TROY MANUFACTURING & DESIGN CO., | ) ) |
| Defendant. | ) |

Case No.: 2023CH08102

**DECLARATION OF DARIEN EVANS**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Darien Evans, certify under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.    I am over the age of 18 and the named Plaintiff in this lawsuit.

2.    I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I could and would competently do so.

3.    I understand that this is a proposed class action and that I am the proposed class representative.

4.    I understand that a class action is a lawsuit brought by at least one person on behalf of a group of people who have been treated in the same or essentially the same manner by the defendant.

5.    I understand the proposed class here includes other persons who, like me, Troy Manufacturing and Design ("Troy") did not: (a) inform in writing that it would store their facial

170611

Exhibit 1                                                Exhibit C

information; (b) inform in writing of the specific purposes and length of time for which it would collect, store, and use their facial information; (c) get a written release authorizing Troy to collect or store their facial information; or (d) give a written, publicly-available policy identifying Troy's retention schedule, or guidelines for permanently destroying worker facial information.

6.     I am willing to be a representative of the class.

7.     To my knowledge, I have no interests antagonistic to those of the class members. I believe my interests are entirely consistent with the class members' interests because I seek relief for myself and the class for Troy's common violation of its obligation to: (a) inform us in writing that it would store our facial information; (b) inform us in writing of the specific purposes and length of time for which it would collect, store, and use our facial information; (c) get written releases from us authorizing it to collect or store our facial information; and (d) maintain a written, publicly-available policy identifying its retention schedule, or guidelines for permanently destroying our facial information.

8.     I understand that as a class representative I have the responsibility: a) to consider the class's interests when making any decisions about the case and make all such decisions in the interests of the class, not just my own interests; b) to participate in the case and consult with my attorneys about the case; and c) to testify at a deposition and/or trial and provide documents and information for use in the case if needed.

9.     I have arranged for my attorneys to advance all costs of this action, including the cost of notification of the class.

10.     I understand that courts have sometimes awarded people money for serving the class representative, but that I am not entitled to any such payment, and that I have not been promised or guaranteed money for being the class representative.

2

Exhibit 1                                        Exhibit C

11. I am not employed by or related to my attorneys in this matter.

Darien Evans
Darien Evans (Sep 7, 2023 13:42 CDT)

Darien Evans

Exhibit 1                                    Exhibit C

# EXHIBIT 5

Exhibit 1

Exhibit C

* 5 0 3 3 7 3 2 7 *

Firm No. 39042

**IN THE**
**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN & DARIEN EVANS, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.: 2023CH08102 |
| v. | ) ) ) | |
| TROY DESIGN & MANUFACTURING CO. | ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF KEITH J. KEOGH**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

I, Keith J. Keogh, state:

1. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify to the matters stated herein, I could and would do so competently.

2. My firm has regularly engaged in major complex litigation, including class actions involving the Illinois Biometric Information Privacy Act ("BIPA"), and other consumer and privacy issues. My firm has the resources necessary to conduct complex class litigation, and experience prosecuting class actions of similar size, scope, and complexity to the instant case.

3. Keogh Law, Ltd. consists of six attorneys and focuses on consumer protection class actions. I am a shareholder of the firm and member of the bars of the United States Court of Appeals for the First, Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits, Eastern District

168945

Exhibit 1                    Exhibit C

of Wisconsin, Northern District of Illinois, Central District of Illinois, Southern District of Indiana, District of Colorado, Middle District of Florida, Southern District of Florida, the Illinois State Bar, and the Florida State Bar, as well as several bar associations and the National Association of Consumer Advocates.

      4.      My firm was recently appointed as class counsel in five class actions arising under BIPA — *Heidelberg v. Forman Mills Inc.*, 2020 CH 04079 (Cir. Ct. Cook Cnty.); *Marquez v. Bobak Sausage Co.*, 2020 CH 04259 (Cir. Ct. Cook Cnty.); *Bayeg v. The Admiral at the Lake*, 2019 CH 08828 (Cir. Ct. Cook Cnty.); *Quarles v. Pret A Manger (USA) Ltd.*, 20-cv-7179, ECF No. 46 (N.D. Ill. Jan 18, 2022); and *Sherman v. Brandt Industries USA Ltd.*, 20-cv-1185, ECF No. 78 (C.D. Ill. March 22, 2022). My firm has also litigated dozens of other putative class actions arising under BIPA, including *Hanlon ex rel. G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill.); *Svoboda v. Frames for America, Inc.*, 1:21-cv-05509 (N.D. Ill.); *Steinberg v. Charles Indus., L.L.C.*, 2021 CH 01793 (Cir. Ct. Cook Cnty.); *Ortega v. The Expediting Co., Inc.*, 2021 CH 00969 (Cir. Ct. Cook Cnty.); *Fells v. Carl Buddig & Co.*, 2021 CH 00508 (Cir. Ct. Cook Cnty.); *Mathews v. Brightstar US, LLC*, 2021 CH 00167 (Cir. Ct. Lake Cnty.); *Roberts v. Graphic Packaging Int'l, LLC*, 3:21-cv-00750 (S.D. Ill.); *Willem v. Karpinske Enters., L.L.C.*, 2021 CH 00031 (Cir. Ct. Jo Daviess Cnty., Ill.); *Shafer v. Rodebrad Mgmt. Co., Inc.*, 2021 CH 00008 (Cir. Ct. Montgomery Cnty., Ill.); *Roberts v. TDS Servs., Inc.*, 2021 CH 00005 (Cir. Ct. Washington Cnty., Ill.); *Jenkins v. Regal Cinemas, Inc.*, 1:20-cv-03782 (N.D. Ill.); *Turner v. Crothall Healthcare, Inc.*, 1:20-cv-03026 (N.D. Ill.); *McFerren, et al. v. World Class Distribution, Inc.*, 1:20-cv-02912 (N.D. Ill.); *Stein v. Clarifai, Inc.*, 1:20-cv-01937 (N.D. Ill.); *Barton v. Swan Surfaces, LLC*, 3:20-cv-00499-SPM (S.D. Ill.); *Wells v. Medieval Times U.S.A., Inc.*, 2020 CH 06658 (Cir. Ct. Cook Cnty.); *Young v. Van Ru Credit Corp.*, 2020 CH 04303 (Cir. Ct. Cook Cnty.);

*Isychko v. Jidd Motors, Inc.*, 2020 CH 04244 (Cir. Ct. Cook Cnty.); *Heidelberg v. Forman Mills Inc.*, 2020 CH 04079 (Cir. Ct. Cook Cnty.); *Hirmer v. Elite Med. Transp., LLC*, 2020 CH 04069 (Cir. Ct. Cook Cnty.); *Magner v. SMS-NA, LLC*, 2020 CH 00520 (Cir. Ct. Cook Cnty.); *Gumm v. Vonachen Servs., Inc.*, 2020 CH 00139 (Cir. Ct. Peoria Cnty., Ill.); *Bayeg v. Eden Mgmt., LLC*, 2019 CH 08821 (Cir. Ct. Cook Cnty.); and *Tran v. Simple Labs., LLC*, 2019 CH 07937 (Cir. Ct. Cook Cnty.).

5. Keogh Law has been class counsel in a number of large all-cash class action settlements involving statutory privacy rights. *Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D. Fla. Mar. 11, 2019) ($30.9 million); *Richardson v. IKEA N. America Servs., LLC*, 2021 CH 5392 (Cir. Ct. Cook Ctny., Ill.) ($24.25 million); *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill.) ($20 million); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla. Feb. 18, 2016) ($11 million); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC (S.D. Fla. Aug. 2, 2016) ($7.5 million dollars); and *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May 13, 2021) ($6.3 million).

6. The firm also was class counsel in two of the largest Telephone Consumer Protection Act ("TCPA") settlements in the country. *See Hageman v. AT&T Mobility LLC, et al.*, Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation*, et al., 12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel)(Final Approval Granted February 12, 2015 for a $75 million settlement).

7. In addition to the above, the firm was lead or class counsel in the following class settlements: *Gebka v. Allstate Ins. Co.*, 19-cv-6662 (N.D. Ill. Sept. 27, 2022) (TCPA); *Iverson v.*

168945

Exhibit 1                    Exhibit C

*Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022) (TCPA);

*Breda v. Cellco Partnership, et al.*, 16-cv-11512-DJC (D. Mass. Nov. 18, 2021) (TCPA); *Braver*

*v. Northstar Alarm Services, LLC*, No. 5:17-cv-00383-F (W.D. Okla. Nov. 3, 2020) (TCPA); *Goel*

*v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty. Jun. 8, 2020); *Cook*

*v. Wal-Mart Stores, Inc., et al.*, No. 3:16-cv-673-BRD-JRK (M.D. Fla. Jun. 4, 2020) (TCPA);

*Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo. May 18, 2020) (TCPA); *Keim*

*v. ADF MidAtlantic, LLC*, 2018 U.S. Dist. LEXIS 204548 (S.D. Fla. Mar. 20, 2020) (TCPA);

*Guarisma v. Alpargatas USA, Inc. d/b/a Havaianas*, Case No. 1:18-cv-24351-JEM (S.D. Fla. Feb.

27, 2020) (FACTA) (preliminary approval); *Hennessy, et al. v. Mid-America Apartment*

*Communities, Inc., et al.*, 4:17-cv-00872-BCW (W.D. Mo. Aug. 8, 2019); *Detter v. KeyBank, N.A.*,

No. 1616-cvl0036 (Jackson Cty., Mo. July 12, 2019) (FCRA); *Leung v XPO Logistics, Inc.*, 15

CV 03877 (N.D. Ill. 2018) (TCPA); *Martinez v. Medicredit*, 4:16CV01138 ERW (E.D. Mo. 2018)

(TCPA); *Martin v. Wells Fargo Bank, N.A.*, 16-cv-09483 (N.D. Ill. 2018) (FCRA); *Town &*

*Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al*, 15-CV-02419-PGS-LHG

(D. N.J. 2018)(TCPA); *Legg v. Am. Eagle Outfitters*, 2017 U.S. Dist. LEXIS 147645 (S.D.N.Y.

Sept. 8, 2017), *aff'd* 923 F.3d 85 (2d Cir. 2019) (TCPA); *Stahl v. RMK Mgmt. Corp.*, 2015 CH

13459 (Cir. Ct. Cook Cty. Sept. 14, 2017); *Tripp v. Berman & Rabin, P.A.*, 2017 U.S. Dist. LEXIS

3971 (D. Kan. Jan. 9, 2017); *Markos v Wells Fargo*, 15-cv-01156-LMM (N.D. Ga.) (TCPA);

*Ossola v Amex* 1:13-cv-04836 (N.D. Ill. 2016) (TCPA); *Luster v. Wells Fargo*, 15-1058-TWT

(N.D. Ga.) (TCPA); *Prather v Wells Fargo*, 15-CV-04231-SCJ (ND. Ga) (TCPA); *Joseph et al. v.*

*TrueBlue, Inc. et al.*, Case No. 3:14-cv-05963 (D. Wa.) (TCPA); *Willett, et al. v. Redflex Traffic*

*Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS; *In re Convergent Outsourcing, Inc.*

*Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn)

Exhibit 1                                         Exhibit C

(Interim Co-Lead); *De Los Santos v Millword Brown, Inc.*, 9:13-cv-80670-DPG (S.D. Fla.) (TCPA); *Allen v. JPMorgan Chase Bank, N.A.* 13-cv-08285 (N.D. Ill. Judge Pallmeyer) (TCPA); *Cooper v NelNet*, 6:14-cv-314-Orl-37DAB (M.D. Fl.) (TCPA); *Thomas v Bacgroundchecks*.com, 3:13-CV-029-REP (E.D. Va.) (additional class counsel); *Lopera v RMS*, 12-c-9649 (N.D. Ill. Judge Wood); *Kubacki v Peapod*, 13-cv-729 (N.D. Ill. Judge Mason); *Wojcik v. Buffalo Bills, Inc.*, 8:12 CV 2414-SDM-TBM (M.D. Fla. Judge Merryday) (TCPA); *Curnal v. LVNV Funding, LLC.*, 10 CV 1667 (Wyandotte County, KS 2014) (Unlicensed debt collector under KS law); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. Judge Gottschall) (TCPA) (co-lead); *Brian J. Wanca, J.D., P.C. v. L.A. Fitness International, LLC*, Case No. 11-CV-4131 (Lake County, Ill. Judge Berrones) (TCPA); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA class); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, L.L.C., et al*, 12-cv-3671 (N.D. Ill. 2013 Judge Gottschall) (TCPA); *Saf-T-Gard v TSI*, 10-c-7671, (N.D. Ill. Judge Rowland) (TCPA); *Cain v Consumer Portfolio Services, Inc.* 10-cv-02697 (N.D. Ill. Judge Keys) (TCPA); *Iverson v Rick Levin & Associates*, 08 CH 42955 Circuit Court Cook County (Judge Cohen) (TCPA); *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. Judge Bucklo) (TCPA); *Jones v. Furniture Bargains, LLC*, 09 C 1070 (N.D. Ill) (FLSA collective action); *Saf-T-Gard v Metrolift*, 07 CH 1266 Circuit Court Cook County (Judge Rochford) (Co-Lead) (TCPA); *Bilek v Countrywide*, 08 C 498 (N.D. Ill. Judge Gottschell); *Pacer v. Rochenback*, 07 C 5173 (N.D. Ill. Judge Cole); *Overlord Enterprises* v. *Wheaton Winfield Dental Associates*, 04 CH 01613, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. SunGard*, 03 CH 21135, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. Golndustry*, 03 CH 21136, Circuit Court Cook County (Judge McGann) (TCPA); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D. Ill. 2008) (FACTA); *Harris v. Best Buy Co.*, 254 F.R.D. 82 (N.D. Ill. 2008) (FACTA); *Matthews*

Exhibit 1                                                    Exhibit C

*S 0 3 3 7 3 2 7 *

*v. United Retail, Inc.,* 248 F.R.D. 210 (N.D. Ill. 2008) (FACTA); *Redmon v. Uncle Julio's, Inc.,* 249 F.R.D. 290 (N.D. Ill. 2008) (FACTA); *Harris v. Circuit City Stores, Inc.,* No. 07 C 2512, 2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008) (FACTA); and *Pacer v. Rockenbach Chevrolet Sales, Inc.,* 07 C 5173 (N.D. Ill. 2008) (FACTA).

8.     In addition, I was the attorney primarily responsible for the following class settlements: *Wollert v. Client Services,* 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas* v. *Vacation Break USA,* 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald* v. *Washington Mutual Bank,* supra; *Wright* v. *Bank One Credit Corp.,* 99 C 7124 (N.D. Ill. Judge Guzman); *Arriaga* v. *Columbia Mortgage,* 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier* v. *Provident Mortgage,* 00 C 5464 (N.D. Ill. Judge Coar); *Largosa* v. *Universal Lenders,* 99 C 5049 (N.D. Ill. Judge Leinenweber); *Arriaga* v. *GNMortgage,* (N.D. Ill. Judge Holderman); *Williams* v. *Mercantile Mortgage,* 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid* v. *First American Title,* 00 C 4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant* v. *Old Kent, 99* C 6846 (N.D. Ill. Magistrate Judge Bobrick); *Mendelovits* v. *Sears,* 99 C 4730 (N.D. Ill. Magistrate Judge Brown); *Leon* v. *Washington Mutual,* 01 C 1645 (N.D. Ill. Judge Alesia).

9.     Some reported cases of the firm involving consumer protection include*: Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021); *Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019); *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (finding a "nuisance and invasion of privacy resulting from a single prerecorded telephone call"); *Franklin v. Parking Revenue Recovery Servs.,* 832 F.3d 741 (7th Cir. 2016); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015); *Galvan v. NCO Portfolio Mgmt. Inc.*, 794 F.3d 716, 721 (7th Cir. 2015); S*mith v. Greystone,* 772 F.3d 448 (7th Cir. 2014); *Clark v Absolute Collection Agency,* 741 F.3d 487 (4th 2014); *Lox v. CDA, Ltd.,*

Exhibit 1                    Exhibit C

689 F.3d 818 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967 (7th Cir. Ill. 2012);

*Catalan v. GMAC Mortgage Corp.*, No. 09-2182 (7th Cir. 2011); *Gburek v. Litton Loan*, 614 F.3d

380 (7th Cir. 2010); *Sawyer v. Ensurance Insurance Services* consolidated with *Killingsworth v.

HSBC Bank Nev., NA.*, 507 F3d 614, 617 (7th Cir. 2007), *Echevarria et al. v. Chicago Title and

Trust Co.*, 256 F3d 623 (7th Cir. 2001*); Demitro* v. *GMAC*, 388 Ill. App. 3d 15, 16 (1st Dist. 2009);

*Hill v. St. Paul Bank*, 329 Ill. App. 3d 7051, 1768 N.E.2d 322 (1st Dist. 2002); *In re Mercedes-

Benz Tele Aid Contract Litig.*, 2009 U.S. Dist. LEXIS 35595 (D.N.J. 2009); *Catalan v. RBC Mortg.

Co.*, 2009 U.S. Dist. LEXIS 26963 (N.D. Ill. 2009); *Elkins v. Equifax, Inc.*, 2009 U.S. Dist. LEXIS

18522 (N.D. Ill. 2009); *Harris v. DirecTV Group, Inc.*, 2008 U.S. Dist. LEXIS 8240 (N.D. Ill.

2008); *In re TJX Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S.

Dist. LEXIS 38258 (D. Kan. 2008); *Martin v. Wal- Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS

89715 (N.D. Ill. 2007); *Elkins v. Ocwen Fed. Sav. Bank Experian Info. Solutions, Inc.*, 2007 U.S.

Dist. LEXIS 84556 (N.D. Ill. 2007); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012

(N.D. Ill. 2007); *Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303 (N.D. Ill.

2007); *Cook v. River Oaks Hyundai, Inc.*, 2006 U.S. Dist. LEXIS 21646 (N.D. Ill. 2006); *Gonzalez

v. W. Suburban Imps.*, Inc., 411 F. Supp. 2d 970 (N.D. Ill. 2006); *Eromon v. GrandAuto Sales,

Inc.*, 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams v. Precision Recovery, Inc.*, 2004 U.S. Dist.

LEXIS 6190 (N.D. Ill. 2004); *Doe v. Templeton*, 2003 U.S. Dist. LEXIS 24471 (N.D. Ill. 2003);

*Ayala v. Sonnenschein Fin. Servs.*, 2003 U.S. Dist. LEXIS 20148 (N.D. Ill. 2003); *Gallegos v.

Rizza Chevrolet, Inc., 2003* U.S. Dist. LEXIS 18060 (N.D. Ill. 2003); *Szwebel v. Pap's Auto Sales,

Inc.*, 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone v. Bank of America*, 173 F. Supp.2d

809 (N.D. Ill. 2001); *Leon v. Washington Mutual Bank*, 164 F. Supp.2d 1034 (N.D. Ill. 2001);

*Ploog v. HomeSide Lending*, 2001 WL 987889 (N.D. Ill. 2001); *Christakos* v. *Intercounty Title*,

196 F.R.D. 496 (N.D. Ill. 2000); *Batten v. Bank One,* 2000 WL 1364408 (N.D. Ill. 2000); *McDonald v. Washington Mutual Bank,* 2000 WL 875416 (N.D. Ill. 2000); and *Williamson v. Advanta Mtge Corp.,* 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The *Christakos* case significantly broadened title and mortgage companies' liability under Real Estate Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a class regarding mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

10.    My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide.*

11.    I have lectured extensively on consumer litigation.  For example:

a.   Presented at the 2018 Fair Debt Collection Training Conference for two sessions on the TCPA.

b.   Presented at the National Consumer Law Center 2017 annual conference on the TCPA.

c.   Presented at the National Consumer Law Center 2016 annual conference on the TCPA.

d.   Presented at the 2016 Fair Debt Collection Training Conference for a session on TCPA Developments.

e.   Presented for the National Association of Consumer Advocates November 2015 webinar titled Developments and Anticipated Impact of Recent FCC TCPA Rules.

f.   Presented at the National Consumer Law Center 2015 annual conference in San Antonio, Tx. on the TCPA.

g.   Presented at the 2015 Fair Debt Collection Training Conference for three sessions on the TCPA.

h.   Presented at the National Consumer Law Center 2014 annual conference in Tampa Fl. for two sessions on the TCPA.

168945

Exhibit 1                    Exhibit C

i.  Panelist for the December 2013 Strafford CLE Webinar titled TCPA Class Actions: Pursuing or Defending Claims Over Phone, Text and Fax Solicitations.

j.  Panelist for the December 2014 Chicago Bar Association Class Action Seminar titled "Class Action Settlements in the Seventh Circuit: Navigating Turbulent Waters."

k.  Presented at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

l.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPI lectured at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

m.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology.

n.  Presented for the National Association of Consumer Advocates November 2013 webinar titled Current Telephone Consumer Protection Act Issues Regarding Cell Phones.

o.  Presenter for the November 2013 Chicago Bar Association Class Action Committee presentation titled Future of TCPA Class Actions.

p.  Speaker at the Social Security Administration's Chicago office in August 2013 on a presentation on identity theft, which included consumers' rights under the Fair Credit Reporting Act.

q.  Panelist for the May 14, 2013 Chicago Bar Association Class Action Seminar titled "The Shifting Landscape of Class Litigation" as well as for the March 20, 2013 Strafford CLE webinar titled "Class Actions for Telephone and Fax Solicitation and Advertising Post-

Exhibit 1                    Exhibit C

* S 0 3 3 7 3 2 7 *

Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology."

r.  Lectured at the June 6, 2013 Consumer Law Committee of the Chicago Bar Association on the topic "Employment Background Reports under the Fair Credit Reporting Act: Improper consent forms to failure to provide background report prior to adverse action."

s.  Lectured at the 2013 Fair Debt Collection Training Conference for three sessions on the TCPA.

t.  Presented at the 2012 National Consumer Law Center annual conference for a session on the TCPA.

u.  Presented at the 2012 Fair Debt Collection Training Conference for a session on the TCPA.

v.  Panelist for Solutions for Employee Classification & Wage/Hour Issues at the 2011 Annual Employment Law Conference hosted by Law Bulletin Seminars.

w.  Lectured at the 2011 National Consumer Law Center conference for a session titled Telephone Consumer Protection Act: Claims, Scope, Remedies as well as lectured at the same 2011 National Consumer Law Center conference for a double session titled ABC's of Class Actions.

x.  Taught *Defenses to Foreclosures* for Lorman Education Services, which was approved for CLE credit, in 2008 and 2010.

y.  Guest lecturer on privacy issues at University of Illinois at Urbana-Champaign School of Law. In March 2010.

z.  Guest speaker for the Legal Services Office of The Graduate School and Kellogg MBA Program at Northwestern University for its seminar titled: "Financial Survival Guide: Legal Strategies for Graduate Students During A Period of Economic Uncertainty."

Exhibit 1                                    Exhibit C

12.     I was selected as an Illinois Super Lawyer in 2014-2021 and an Illinois Super Lawyer Rising Star each year from 2008 through 2013 and my cases have been featured in local newspapers such as the Chicago Tribune, Chicago Sun-Times, The Naperville Sun, Daily Herald and RedEye.

**Timothy J. Sostrin**

13.     Timothy J. Sostrin is a partner with the firm joining in 2011. He is a member in good standing of the Illinois bar, the U.S. District Court District of Colorado, U.S. District Court Northern District of Illinois, U.S. District Court Northern and Southern Districts of Indiana, U.S. District Court Eastern and Western Districts of Michigan, U.S. District Court Eastern District of Missouri, U.S. District Court Southern District of Texas and U.S. District Court Eastern and Western Districts of Wisconsin.

14.     Timothy J. Sostrin has zealously represented consumers in Illinois and in federal litigation nationwide against creditors, debt collectors, retailers, and other businesses engaging in unlawful practices. Tim has extensive experience with consumer claims brought under the Fair Debt Collection Practices Act, The Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Electronic Fund Transfer Act, and Illinois law. Some of Tim's representative cases include: *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (argued); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015) (argued); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (granting class certification); *Galvan v. NCO Financial Systems, Inc.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012) (granting class certification); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, LLC*, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (granting class certification); *Jelinek v. The Kroger Co.*, 2013 U.S. Dist. LEXIS 53389 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Hanson*

*v. Experian Information Solutions, Inc.*, 2012 U.S. Dist. LEXIS 11450 (N.D. Ill. January 27, 2012) (denying defendant's motion for summary judgment); *Warnick v. DISH Network, LLC*, 2013 U.S. Dist. LEXIS 38549 (D. Colo. 2013) (denying defendant's motion to dismiss); *Torres v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31238 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011) (denying defendant's motion for summary judgment); *Frydman et al v. Portfolio Recovery Associate*, 2011 U.S. Dist. LEXIS 69502 (N.D. Ill 2011) (denying defendant's motion to dismiss); *Rosen Family Chiropractic S.C. v. Chi-Town Pizza*, 2013 U.S. Dist. LEXIS 6385 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010) (granting summary judgment on TCPA claim);

15.     Tim is a member of the National Association of Consumer Advocates and ISBA. He received his Juris Doctorate, *cum laude*, from Tulane University Law School in 2006.

**Michael S. Hilicki**

16.     In 2014, Michael Hilicki joined the firm. He has spent nearly all of his nearly 30-year legal career helping consumers and workers subjected to unfair and deceptive business practices, and unpaid wage practices. He is experienced in a variety of consumer and wage-related areas including, but not limited to, the Fair and Accurate Credit Transactions Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud & Deceptive Business Practices Act, Telephone Consumer Protection Act, Fair Labor Standards Act and the Illinois Wage & Hour Law. He is experienced in all aspects of consumer and wage litigation, including arbitrations, trials and appeals.

Exhibit 1                          Exhibit C

17,    Examples of the numerous certified class actions in which Michael has represented

consumers or workers include: *Fausett v. Walgreen Co.*, 19 CH 675 (Cir. Ct. Lake Cnty., Ill., Mar.

1, 2023); *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill., May 4, 2022); *Iverson*

*v. Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022); *Altman*

*v. White House Black Market, Inc.*, No. 21-A-735 (Cobb Cnty., Ga., Dec. 9, 2021); *Guarisma v.*

*Alpargatas USA, Inc. d/b/a Havaianas,* Case No. 2020 CH 7426 (Cir. Ct. Cook Ctny., May 24,

2021); *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May 13,

2021); *Goel v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty.);

*Muransky v. Godiva Chocolatier, Inc.*, No. 15-cv-60716-WPD (S.D. Fla.); *Guarisma v. Microsoft*

*Corp.*, No. 15-cv-24326-CMA (S.D. Fla.); *Stahl v. RMK Mgmt. Corp.*, 2015 CH 13459 (Cir. Ct.

Cook Cty.); *Altman v. White House Black Market, Inc.*, 15-cv-2451-SCJ (N.D. Ga.); *Legg v. Spirit*

*Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.); *Legg v. Laboratory Corporation of America,*

*Holdings, Inc.*, No. 14-cv-61543-RLR (S.D. Fla.); *Joseph v. TrueBlue, Inc.*, 14-cv-5963-BHS

(W.D. Wash.); *In Re Convergent Outsourcing, Inc. Telephone Consumer Protection Act*

*Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn); *Tripp v. Berman & Rabin, P.A.*,

310 F.R.D. 499 (D. Kan. 2015); *Lanteri v. Credit Protection Ass'n, L.P.*, 2018 U.S. Dist. LEXIS

166345 (S.D. Ind. Sept. 26, 2018); *Eibert v. Jaburg & Wilk, P.C.*, 13-cv-301 (D. Minn.); *Kraskey*

*v. Shapiro & Zielke, LLP*, 11-cv-3307 (D. Minn.); *Short v. Anastasi & Associates, P.A.*, 11-cv-

1612 SRN/JSM (D. Minn.); *Kimball v. Frederick J. Hanna & Associates, P.C.*, 10-cv-130

MJD/JJG (D. Minn.); *Murphy v. Capital One Bank*, 08 C 801 (N.D. Ill.); *Nettles v. Allstate Ins.*

*Co.*, 02 CH 14426 (Cir. Ct. Cook Cty.); *Sanders v. OSI Educ. Servs., Inc.*, 01 C 2081 (N.D. Ill.);

*Kort v. Diversified Collection Servs., Inc.*, 01 C 0689 (N.D. Ill.); *Hamid v. Blatt Hasenmiller, et*

*al.*, 00 C 4511 (N.D. Ill.); *Durkin v. Equifax Check Servs., Inc.*, 00 C 4832 (N.D. Ill.); *Torres v.*

*Diversified Collection Services, et al.*, 99-cv-00535 (RL-APR) (N.D. Ind.); *Morris v. Trauner*

*Cohen & Thomas*, 98 C 3428 (N.D. Ill.), *Mitchell v. Schumann*, 97 C 240 (N.D. Ill.); *Pandolfi, et*

*al. v. Viking Office Prods., Inc.*, 97 CH 8875 (Cir. Ct. Cook Cty.); *Trull v. Microsoft Corp.*, 97 CH

3140 (Cir. Ct. Cook Cty.); *Deatherage v. Steven T. Rosso, P.A.*, 97 C 0024 (N.D. Ill.); *Young v.*

*Meyer & Njus, P.A.*, 96 C 4809 (N.D. Ill.); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 96 C

3233 (N.D. Ill.); *Holman v. Red River Collections, Inc.*, 96 C 2302 (N.D. Ill.); *Farrell v. Frederick*

*J. Hanna*, 96 C 2268 (N.D. Ill.); *Blum v. Fisher and Fisher*, 96 C 2194 (N.D. Ill.); *Riter v. Moss*

*& Bloomberg, Ltd.*, 96 C 2001 (N.D. Ill.); *Clayton v. Cr Sciences Inc.*, 96 C 1401 (N.D. Ill.);

*Thomas v. MAC/TCS Inc., Ltd.*, 96 C 1519 (N.D. Ill.); *Young v. Bowman, et al.*, 96 C 1767 (N.D.

Ill.); *Depcik v. Mid-Continent Agencies, Inc.*, 96 C 8627 (N.D. Ill.); and *Dumetz v. Alkade, Inc.*,

96 C 4002 (N.D. Ill.).

18.     Michael also has successfully argued a number of appeals, including *Evans v.*

*Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018); *Muransky v. Godiva Chocolatier,*

*Inc.*, 922 F.3d 1175 (11th Cir. 2019) *(vacated for rehearing en banc)*; *Franklin v. Parking Rev.*

*Recovery Servs.*, 832 F.3d 741 (7th Cir. 2016); *Smith v. Greystone Alliance, LLC*, 772 F.3d 448

(7th Cir. 2014); *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004); and *Weizeorick v. ABN AMRO*

*Mortg. Group, Inc.*, 337 F.3d 827 (7th Cir. 2003).

19.     Michael has lectured on consumer law issues at Upper Iowa University, the

Chicago Bar Association, and the National Consumer Law Center. He is a member of the Trial

Bar of the United States District Court for the Northern District of Illinois, and he has represented

consumers in state and federal courts around the country on a *pro hac vice* basis.

* 5 0 3 3 7 3 2 7 *

20.     Michael's published work includes *"AND THE SURVEY SAYS..." When Is*
*Evidence of Actual Consumer Confusion Required to Win a Case Under Section 1692g of the Fair*
*Debt Collection Practices Act in the Seventh Circuit?*, 13 Loy. Consumer L. Rev. 224 (2001).

**Theodore H. Kuyper**

21.     In March 2018, Theodore H. Kuyper joined the firm. Ted is currently a member in
good standing of the Illinois State Bar, the United States District Court for the Northern District
of Illinois, and the Seventh Circuit Court of Appeals, and has been admitted to practice *pro hac*
*vice* in several additional United States District Courts.

22.     Ted has diverse experience prosecuting and defending class action and other large-
scale litigation in trial and appellate courts under a variety of substantive laws, including without
limitation the Telephone Consumer Protection Act, the Racketeer Influenced & Corrupt
Organizations Act (RICO), the Fair Credit Reporting Act, the Illinois Consumer Fraud &
Deceptive Business Practices Act, and the Real Estate Settlement Procedures Act, as well as
Illinois and other state statutory and common law.

23.     Since joining the firm, Ted has represented consumers as counsel of record or
otherwise in the following putative class actions: *Cranor v. Skyline Metrics, LLC*, No. 4:18-cv-
00621-DGK (W.D. Mo.); *Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo.);
*Cranor v. Classified Advertising Ventures, LLC, et al.*, No. 4:18-cv-00651-HFS (W.D. Mo.);
*Morgan v. Orlando Health, Inc., et al.*, No. 6:17-cv-01972-CEM-GJK (M.D. Fla.); *Morgan v.*
*Adventist Health System/Sunbelt, Inc.*, No. 6:18-cv-01342-PGB-DCI (M.D. Fla.); *Burke v. Credit*
*One Bank, N.A., et al.*, No. 8:18-cv-00728-EAK-TGW (M.D. Fla.); *Motiwala v. Mark D.*
*Guidubaldi & Associates, LLC*, No. 1:17-cv-02445 (N.D. Ill.); *Buja v. Novation Capital, LLC*, No.

Exhibit 1                                    Exhibit C

9:15-cv-81002-KAM (S.D. Fla.); and *Detter v. Keybank, N.A.*, No. 1616-CV10036 (Circuit Ct. of Jackson County, Missouri).

24.     Immediately prior to joining Keogh Law, Ted worked at a boutique Chicago law firm where he represented clients in a range of complex commercial and other litigation, including contract, tort, professional liability, premises and products liability, bad faith and class action. Previously, he was an associate at a nationally-renowned class action law firm, where he focused on complex commercial, consumer, class action and other large-scale, high-stakes litigation.

25.     Ted earned his Juris Doctorate from Washington University School of Law in St. Louis in 2007. During law school, he worked as a Summer Extern for Magistrate Judge Morton Denlow (Ret.) of the United States District Court for the Northern District of Illinois, served as primary editor and executive board member of the Global Studies Law Review, and authored a student note that was published in 2007. Ted also earned a number of scholarships and other academic accolades, including the Honors Scholar Award (top 10% for academic year) and repeated appearances on the Dean's List.

**Gregg Barbakoff**

26.     Gregg Barbakoff joined the firm in 2019. He is a civil litigator who focuses his practice on consumer law. Gregg has extensive experience litigating individual and class claims arising under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud and Deceptive Practices Act, Magnuson-Moss Warranty Act, and various consumer protection statutes.

27.     Gregg graduated *magna cum laude* from the Chicago-Kent College of law, where he was elected to the Order of the Coif. While in law school, Gregg received the Class of 1976

Exhibit 1                    Exhibit C

Honors Scholarship, competed as a senior member of the Chicago-Kent Moot Court Team, and served as an editor for The Seventh Circuit Review, in which he was also published. Gregg earned his undergraduate degree from the University of Colorado at Boulder.

28.     Gregg has been named an Illinois Rising Star by *Superlawyers* Magazine each year since 2015, and was named an Associate Fellow by the Litigation Counsel of America. He is licensed to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Seventh Circuit

29.     Prior to joining Keogh Law, Gregg worked at a mid-size litigation firm that specialized in consumer litigation, and leading plaintiff's firm that focused on commercial disputes and consumer class actions.

30.     The following are representative class actions in which Gregg has served as counsel of record or otherwise: *Roberts v. TIAA, FSB* (Case No. 2019 CH 04089, Cook County, Ill.); *Corrigan v. Seterus* (Case No. 17-cv-02348); *Gentleman v. Mass. Higher Ed. Corp., et al* (Case No. 16-cv-3096, N.D. Ill.); *Cibula v. Seterus* (Case No. 2015CA010910, Palm Beach County, Fla.); *Ciolini v. Seterus* (Case No. 15-cv-09427, N.D. Ill.); *Mednick v. Precor Inc.* (Case No. 14-cv-03624, N.D. Ill.); *Illinois Nut & Candy Home of Fantasia Confections, LLC v. Grubhub, Inc., et al.* (Case No. 14-cv-00949, N.D. Ill.); *Dr. William P. Gress et al. v. Premier Healthcare Exchange West, Inc.* (Case No. 14-cv-501, N.D. Ill.); *Stephan Zouras LLP v. American Registry LLC* (Case No. 14-cv-943, N.D. Ill.); *Mullins v. Direct Digital* (Case No. 13-cv-01829, N.D. Ill.); *In Re Prescription Pads TCPA Litig.* (Case No. 13-cv-06897, N.D. Ill); *Townsend v. Sterling* (Case No. 13-cv-3903, N.D. Ill); *Windows Plus, Incorporated v. Door Control Services, Inc.* (Case No. 13-cv-07072, N.D. Ill); *In re Energizer Sunscreen Litig.*, (Case No. 13-cv-00131, N.D. Ill.); *Padilla v. DISH Network LLC* (Case No. 12-cv-07350, N.D. Ill.); *Lloyd v. Employment Crossing*

(Case No. BC491068 (Los Angeles County, Cal.); *In re Southwest Airlines Voucher Litig.* (Case No. 11-cv-8176, N.D. Ill.).

**William Sweetnam**

31.    William Sweetnam joined the firm in 2020 as of counsel. Mr. Sweetnam concentrates his practice on class action and complex litigation and appeals, having prosecuted hundreds of consumer, shareholder and antitrust class action in federal and state courts across the country. In addition to representing both plaintiffs and defendants in a wide variety of cases involving both economic and non-economic injuries, Mr. Sweetnam has acted as lead counsel, co-lead counsel and has been a member of the executive and steering committees in consumer, antitrust and other class action, complex and multidistrict litigation matters.

32.    Notably, Mr. Sweetnam was appointed sole lead counsel in *Kelly v. Old National Bank*, 82C01-1012-CT-627 (Cir. Ct Vanderburgh Cty., Ind.), in which he obtained a settlement valued at more than 90% of the class' damages incurred as a result of the unlawful overdraft fee scheme alleged therein, far exceeding the results obtained by much larger firms against some the countries' largest banks, resulting in individual consumers receiving several thousand dollars in refunded overdraft fees.

33.    Additionally, Mr. Sweetnam has numerous published, class action decisions including *Jett v. Warrantech Corp.*, ---F.Supp.3d---, 2020 WL 525045 (S.D. Ill. 2020); *Old Nat. Bank v. Kelly*, 31 N.E.3d 522 (Ind. App. 2014); *Nava v. Sears, Roebuck & Co.*, 995 N.E.2d 303 (1st Dist. 2013); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010); *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010); *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249 (S.D. W. Va. 2010); *Aleman v. Park West Galleries, Inc.*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009); *In re Park West Galleries, Inc. Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358 (J.P.M.L. 2009); *In re*

Exhibit 1                    Exhibit C

* 5 0 3 3 7 3 2 7 *

*Digitek Prod. Liab. Litig.*, 648 F. Supp. 2d 795 (S.D. W. Va. 2009); *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758 (N.D. Ohio 2009); *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 626 F. Supp. 2d 1353 (J.P.M.L. 2009); *In re Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320 (J.P.M.L. 2009); *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009); *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248 (W.D. Wash. 2009); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *In re Digitek Prods. Liab. Litig.*, 571 F. Supp. 2d 1376 (J.P.M.L. 2008); *In re BP Prods. N. Am., Inc.*, 560 F. Supp. 2d 1377 (J.P.M.L. 2008); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008); *In re Nissan N. Am., Inc. Odometer Litig.*, 542 F. Supp. 2d 1367 (J.P.M.L. 2008); *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007); *Cook v. Home Depot U.S.A., Inc.*, 62 U.C.C. Rep. Serv. 2d (Callaghan) 197 (S.D. Ohio 2007); *Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630 (E.D. Tex. 2007); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755 (7th Cir. 2006); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805 (7th Cir. 2005); *Knudsen v. Liberty Mut. Ins. Co.*, 405 F. Supp. 2d 916 (N.D. Ill. 2005); *Enzenbacher v. Browning-Ferris Indus. of Ill.*, 774 N.E.2d 858 (Ill. App. 2002); *In re Nat'l Life Ins. Co.*, 247 F. Supp. 2d 486 (D. Vt. 2002); *Kaskel v. N. Trust Co.*, 45 U.C.C. Rep. Serv. 2d (Callaghan) 827 (N.D. Ill. 2001); *Wardrop v. Amway Asia Pac. Ltd.*, Fed. Sec. L. Rep. (CCH) P91,346 (S.D.N.Y. Mar. 20, 2001); and *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101 (S.D. Iowa 1998).

34.     Before joining Keogh Law, Ltd., Mr. Sweetnam began his career as a lawyer representing plaintiffs in catastrophic injury cases in 1994. In 1995, he began defending corporate,

Exhibit 1                                    Exhibit C

* 5 0 3 3 7 3 2 7 *

insurance industry and insurance policyholder clients and ran a successful class action litigation boutique, Sweetnam LLC, established in 2008.

35.     Prior to that, Mr. Sweetnam was a partner at a Chicago class action litigation boutique, where he perfected his skills representing victims of consumer fraud and deceptive and anti-competitive practices.  Mr. Sweetnam has extensive litigation experience in a variety of nationwide class actions in state and federal courts alleging violations of consumer fraud and deceptive trade practices statutes, breach of warranty and violations of federal securities laws, shareholder derivative suits and appeals.

36.     Mr. Sweetnam began his career as a class action and complex litigation practitioner with what is now known as Kessler Topaz Meltzer & Check, LLP, one of the largest class action law firms in the United States, where he was part of a team of lawyers involved in prosecuting class actions challenging abusive marketing practices in several areas involving life insurance and annuities. These cases led to class settlements valued at hundreds of millions of dollars, and sometimes even billions of dollars, with such major life insurance companies as Prudential, Met Life, John Hancock, New York Life, State Farm, American Express/IDS, Transamerica, and many others, as well as to numerous changes in industry sales practices.

37.     Mr. Sweetnam continued his career at one of Chicago's oldest and most respected class action litigation firms, Krislov & Associates, Ltd., where he represented consumers and investors engaged in an array of nationwide class actions in state and federal courts involving everything from consumer fraud to breach of warranty and securities and shareholder derivative lawsuits and appeals.

Exhibit 1                                                    Exhibit C

38.     Additionally, Ms. Sweetnam is also a member of a number of associations, including The Federal Bar Associations, Chicago Chapter, The Chicago Bar Association, and The Catholic Lawyers Guild of Chicago.

39.     Mr. Sweetnam received his bachelor's degree at The University of Michigan, Ann Arbor, Michigan in 1990. And later received his juris doctorate degree at the University of Michigan and the De Paul University College of Law where he received the American Jurisprudence Award in Constitutional Law and was a member of the Journal of Art and Entertainment Law. He has written and lectured on class actions and class action litigation reform.

40.     Mr. Sweetnam has lectured on and lectured on such topics as the following: (a) *Law of Remedies: Damages, Equity and Restitution,* at Chicago-Kent College of Law (2019); (b) *Law of Remedies: Class Actions and Complex Litigation,* at Chicago-Kent College of Law (2018); (c) *The Class Action Fairness Act of 2005: Selecting a Forum and Keeping It,* at the Illinois Institute for Continuing Legal Education in Chicago, Illinois (2008); (d) *Federalization of Consumer Class Action Litigation: The Class Action Fairness Act of 2005,* at the John Marshall Law School in Chicago, Illinois (2006).

I, Keith J. Keogh, certify under §1-109 that the above statements are true and correct to the best of my knowledge, information and belief.

Executed at Chicago, Illinois, on September 12, 2023.

By: *s/ Keith J. Keogh*
Keith J. Keogh (ARDC 6257811)
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
keith@keoghlaw.com

168945

<span style="color:purple">Exhibit 1</span>          <span style="color:blue">Exhibit C</span>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TIMOTHY FRANKLIN and DARIEN EVANS, individually and on behalf of others similarly situated, | Removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division No. 2023-CH-08102 |
| *Plaintiffs*, | |
| v. | |
| TROY DESIGN & MANUFACTURING CO., | |
| *Defendant.* | Civil Action No. _____ |

### DECLARATION OF DAVID KAMIENECKI IN SUPPORT OF DEFENDANT TROY DESIGN & MANUFACTURING CO.'S NOTICE OF REMOVAL

I, David Kamienecki, declare as follows:

1.      I am currently employed by Troy Design & Manufacturing ("TDM") as HR Director. In this position, I have access to the business records and information described in this declaration.

2.      TDM has its headquarters and principal place of business in Plymouth, Michigan.

3.      TDM is incorporated in Michigan.

4.      TDM is a wholly owned subsidiary of Ford Motor Company.

5.      Ford Motor Company has its principal place of business in Dearborn, Michigan.

6.      Ford Motor Company is incorporated in Delaware.

Executed at Plymouth, Michigan, on this _2_ day of November, 2023.

David Kamienecki

1

Exhibit D

## CERTIFICATE OF SERVICE

I certify that on November 2, 2023, I caused the foregoing Declaration to be electronically

filed through ECF and to be sent via email to the following attorneys representing Plaintiffs:


     Keith J. Keogh
     Michael S. Hilicki
     55 W. Monroe
     Suite 3390
     Chicago, IL 60603
     Phone: (312) 726-1092
     keith@keoghlaw.com
     mhilicki@keoghlaw.com

*/s/ Karen Kies DeGrand*
Karen Kies DeGrand, ARDC # 6191140
Donohue Brown Mathewson & Smyth LLC
140 S. Dearborn, Suite 800
Chicago, Illinois 60603
(312) 422-0900
degrand@dbmslaw.com

106770203.1

Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY FRANKLIN<br>and DARIEN EVANS, individually and on<br>behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>TROY DESIGN & MANUFACTURING CO.,<br><br>*Defendant.* | Removed from the Circuit Court of<br>Cook County, Illinois, County<br>Department, Chancery Division<br>No. 2023-CH-08102<br><br><br>Civil Action No. _____ |

**DECLARATION OF DAVID KAMIENECKI IN SUPPORT OF DEFENDANT**
**TROY DESIGN & MANUFACTURING CO.'S NOTICE OF REMOVAL**

I, David Kamienecki, declare as follows:

1.      I am currently employed by Troy Design & Manufacturing ("TDM") as HR Director.  In this position, I have access to the business records, information, and data described in this declaration.

2.      In the five years preceding September 12, 2023, TDM hired more than 250 employees for hourly positions at TDM-CMC in Illinois.  During this same timeframe, TDM utilized over 1,000 agency workers at TDM-CMC through a contract with Best Practices.

Executed at Plymouth, Michigan, on this _2_ day of November, 2023.

.

_____
                                                   David Kamienecki

Exhibit E

## CERTIFICATE OF SERVICE

I certify that on November 2, 2023, I caused the foregoing Declaration to be electronically

filed through ECF and to be sent via email to the following attorneys representing Plaintiffs:

Keith J. Keogh
Michael S. Hilicki
55 W. Monroe
Suite 3390
Chicago, IL 60603
Phone: (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

_/s/  Karen Kies DeGrand_
Karen Kies DeGrand, ARDC # 6191140
Donohue Brown Mathewson & Smyth LLC
140 S. Dearborn, Suite 800
Chicago, Illinois 60603
(312) 422-0900
degrand@dbmslaw.com

106770323.2

Exhibit E