**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN, *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-15610 |
| v. | ) | |
| | ) | |
| TROY DESIGN & MANUFACTURING, | ) | Judge Georgia N. Alexakis |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------------- | ) | |
| | ) | |
| PEOPLESHARE, LLC AND PEOPLESHARE | ) | |
| BEST PRACTICES, LLC, | ) | |
| | ) | |
| Intervenors. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

233800

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     CASE BACKGROUND .......................................................................................2

        A.      The Illinois Biometric Information Act ...................................................2

        B.      The Alleged BIPA Violations and TDM's Alleged Defenses ................................3

        C.      Procedural History and Work Leading to the Settlement .......................................4

III.    SUMMARY OF THE PROPOSED SETTLEMENT ...........................................................8

        A.      Settlement Class Definition ....................................................................8

        B.      Monetary Relief for Settlement Class Members........................................8

        C.      Class Representative Service Payment .....................................................9

        D.      Payment of Attorneys' Fees and Expenses ...........................................10

        E.      The Release Is Limited to TDM – Claims Against PeopleShare Are Preserved...10

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................11

        A.      Numerosity Is Met ................................................................................11

        B.      Commonality and Predominance Are Met ..............................................12

        C.      Typicality Is Met...................................................................................13

        D.      Adequacy Is Met ...................................................................................13

        E.      A Class Action Is Superior to Individual Lawsuits ..............................14

V.      THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............................15

        A.      The class has been adequately represented............................................17

        B.      The Settlement is the product of arm's-length negotiations ..................17

        C.      The relief provided is more than adequate..............................................18

                1.      The risks of continued litigation weigh in favor of approval....................19

                2.      The proposed method of distribution is effective ......................................21

i

          3.      The proposed attorney fee award and timing of payment..........................21

    D.      The proposed Settlement treats Settlement Class Members equitably .................22

VI.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED......................................23

VII.    THE MATTER SHOULD BE SET FOR A FINAL APPROVAL HEARING ...............24

VIII.    CONCLUSION.....................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 15

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305, 312-13 (7th Cir. 1980) ................................................................... 16

*Barnes v. Air Line Pilots Ass'n*,
  310 F.R.D. 551 (N.D. Ill. Sept. 30, 2015) ........................................................... 15

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
  797 F.3d 426 (7th Cir. 2015) ................................................................................. 12

*City of Greenville v. Syngenta Crop Prot., Inc.*,
  904 F.Supp.2d 901 (S.D. Ill. 2012) ...................................................................... 24

*Cothron v. White Castle Sys.*,
  2023 IL 128004 .................................................................................................. 3, 19

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ................................................................................. 16

*Fournigault v. Indep. One Mortg. Corp.*,
  234 F.R.D. 641 (N.D. Ill. 2006) ........................................................................... 14

*Garcia v. J.C. Penny Corp.*,
  2017 U.S. Dist. LEXIS 131890 (N.D. Ill. Aug. 9, 2017) ...................................... 8

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ................................................................................. 16

*Goldsmith v. Tech. Sols. Co.*,
  1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) ...................................... 20

*Greco v. Ginn Dev. Co., LLC*,
  635 F. App'x 628 (11th Cir. 2015) ........................................................................ 24

*Gupta v. Power Sols. Int'l, Inc.*,
  2019 U.S. Dist. LEXIS 83984 (N.D. Ill. May 13, 2019) ...................................... 24

iii

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ...................................................... 21

*Heidelberg v. Forman Mills Inc.*,
    No. 2020-CH-4079 (Cir. Ct. Cook Cnty. Aug. 22, 2023) .......................................................... 9

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587 (7th Cir. 2021) .................................................................................................. 13

*Howe v. Speedway LLC*,
    2024 U.S. Dist. LEXIS 176263 (N.D. Ill. Sept. 29, 2024) ........................................... 11, 13, 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................................ 19

*In re Tiktok, Inc., Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................................. 11, 16

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .................................................................................................. 16

*Kusinski v. ADP, LLC*,
    2017-CH-12364 (Cook Cnty. Feb. 10, 2021) ..................................................................... 1, 18

*Marshal v. Life Time Fitness, Inc.*,
    2017-CH-14262 (Cir. Ct. Cook Cty.) ................................................................................ 2, 18

*Messner v. NorthShore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .................................................................................................. 12

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .................................................................................................. 11

*Mulvania v. Sheriff of Rock Island Cnty.*,
    850 F.3d 849 (7th Cir. 2017) .................................................................................................. 11

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
    2019-CH-11575 (Cir. Ct. Cook Cnty.) ............................................................................. 2, 18

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................................................................ 22

*Pelka v. Saren Restaurants Inc.*,
    2019-CH-14664 (Cir. Ct. Cook Cnty.)....................................................................... 1, 18

*Prelipceanu v. Jumio* Corp.,
    18-CH-15883 (Cir. Cook Cnty. July 21, 2020)...................................................... 1, 18

*Rapai v. Hyatt Corp.*,
    No. 2017-CH-14483 (Cir. Ct. Cook Cnty. Jan. 26, 2022) ........................................ 9

*Reyes v. Summit Health Mgmt., LLC*,
    2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 6, 2024) ........................................... 8

*Roach v. Walmart Inc.*,
    No. 2019-CH-01107 (Cir. Ct. Cook Cnty. June 16, 2021) ..................................... 10

*Rogers v. BNSF Ry. Co.*,
    2022 U.S. Dist. LEXIS 50847 (N.D. Ill. Mar. 22, 2022) ....................................... 13

*Rosenbach v. Six Flags Ent't Corp.*,
    2019 IL 123186 ...................................................................................................... 22

*Rysewyk v. Sears Holdings Corp.*,
    2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) ...................................... 16

*Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*,
    2018-CH-02651 (Cir. Ct. Cook Cnty.)..................................................................... 2, 19

*Schulte v. Fifth Third Bank*,
    2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010).................................... 18

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................... 20

*Snyder v. Ocwen Loan Servicing, LLC,*
    2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ....................................... 18

*Svoboda v. Amazon.com, Inc.*,
    2024 U.S. Dist. LEXIS 58867 (N.D. Ill. Mar. 30, 2024) ..................................... 11, 12, 13, 14

*Sykes v. Clearstaff, Inc.*,
    2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) ............................................. 1, 18

*T.K. v. Bytedance Tech. Co. Ltd.*,
    2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022) ....................................................... 21

*Tapia-Rendon v. United Tape & Finishing Co.*,
    2023 U.S. Dist. LEXIS 142773 (N.D. Ill. Aug. 15, 2023) ..................................................... 12

*Thomas v. Weatherguard Constr. Co.*,
    2018 IL App (1st) 171238 .................................................................................................... 22

*Trotter v. Summit Staffing,*
    Case No. 2019-CH-02731 (Cir. Ct. Cook Cnty.) ............................................................... 1, 18

*Zhirovetskiy v. Zayo Group, LLC,*
    No. 2017-CH-09323 ............................................................................................................ 2, 19

**Statutes**

740 ILCS 14/1, *et seq* ................................................................................................................... 4

740 ILCS 14/10 ............................................................................................................................ 2

740 ILCS 14/15 ............................................................................................................................ 3

740 ILCS 14/20 ............................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

**Other**

4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed.) ..................................................................... 21

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Timothy Franklin moves for preliminary approval of his class action Settlement with Intervenors, PeopleShare, LLC and PeopleShare Best Practices, LLC (collectively "PeopleShare"). This Settlement would resolve Plaintiff's and the class members' claims against Defendant Troy Design & Manufacturing ("TDM") under the Illinois Biometric Information Privacy Act ("BIPA"). The Settlement Agreement is attached at *Appendix 1*, and the proposed order certifying the Settlement Class and granting preliminary approval of the Settlement is attached at *Appendix 2*.

## I.    INTRODUCTION

Under the Settlement, PeopleShare will resolve the claims of the Settlement Class against TDM by paying $212,500.00 into a non-reversionary Settlement Fund to be divided *pro rata* among the 331 Settlement Class Members, net of the costs of notice and administration and court-approved class representative incentive award. Counsel estimates each Settlement Class Member will receive a net cash payment of $582 without the need to even submit a claim. This is a substantial portion of the liquidated damages available under BIPA, and significantly larger than the net recovery in many other BIPA settlements granted approval.[1] Further, this payment will not be reduced to pay class counsel's court-approved attorneys' fees and expenses, as PeopleShare will pay that award on top of the class recovery.

Plus, the Settlement expressly preserves any claims the Settlement Class Members may have against PeopleShare, allowing them to separately recover on those claims, including those

---

[1] *See, e.g.*, *Trotter v. Summit Staffing*, 2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) (net recovery of $102); *Sekura v. L.A. Tan Enters.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant); *Pelka v. Saren Restaurants Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289); *Sykes v. Clearstaff, Inc*., 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) (net recovery of $298.04); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $375 per

raised in the class action currently pending against PeopleShare in state court, *Gunn v. PeopleShare Best Practices, LLC*, 2023 CH 8596 (Cir. Ct. Cook Cnty.), or elsewhere.

As further explained below, the Settlement Class meets the requirements for class certification, the Settlement merits a preliminary determination of reasonableness under the factors for evaluating settlements, and thus notice should be sent to the class to advise them of the Settlement and give them a chance to comment on it or opt out.

Accordingly, Plaintiff respectfully moves the Court to: (a) certify the Settlement Class; (b) appoint Mr. Franklin class representative; (c) appoint his attorneys Keith Keogh and Michael Hilicki of Keogh Law, Ltd. class counsel; (d) grant preliminary approval of the Settlement and the plan for giving notice to the Settlement Class as set forth in the Settlement Agreement; (e) set this matter for a final approval hearing; and (f) grant such other relief as deemed just.

## II.    CASE BACKGROUND

### A.    The Illinois Biometric Information Privacy Act

Recognizing the importance of the security of individuals' biometrics, the Illinois General Assembly enacted BIPA, which features several safeguards to protect Illinois citizens' ability to maintain control over their "biometric identifiers" and "biometric information" (collectively referred to herein as "biometric data"). Under BIPA, "biometric identifiers" include scans of individuals facial geometry, and "biometric information" is any information based on an individual's biometric identifier used to identify an individual. 740 ILCS 14/10.

---

claimant); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Marshal v. Life Time Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (net recovery of about $270 per claimant, plus dark web monitoring valued at approximately $130 per claimant); *Zhirovetskiy v. Zayo Grp., LLC*, 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (net recovery capped at $400 per claimant); and *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*, 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) (net recovery of $256-$510).

One such safeguard is Section 15(b)'s informed consent regime, which prohibits collecting a person's biometric data without first: (1) informing the person in writing that biometric data is being collected or stored, and the purpose and length of term for which it is being collected, stored, and used; and (2) having the person sign a written release consenting to collection of their biometric data. 740 ILCS 14/15(b).

A second safeguard is Section 15(a), which requires private entities in possession of a person's biometric data to develop a written, publicly-available policy establishing a retention schedule and guidelines for destroying the data when the initial purpose for collecting or obtaining it has been satisfied, or 3 years after the person's last interaction with the entity, whichever occurs first, and to actually destroy the data within those timeframes. 740 ILCS 14/15(a).

To facilitate enforcement of these protections, BIPA provides for recovery of $1,000 liquidated damages for any negligent violation and $5,000 liquidated damages for any intentional violation, subject to reduction at the court's discretion, plus recovery of the successful plaintiff's attorneys' fees and expenses. 740 ILCS 14/20; and *see Cothron v. White Castle Sys.*, 2023 IL 128004, ¶42 (courts may award less than the liquidated damages BIPA provides).

### B.     The Alleged BIPA Violations and TDM's Alleged Defenses

Plaintiff and other temporary mechanics were assigned to work at TDM's vehicle modification facility in Chicago. (*See* ECF 26 (TDM Answer) at ¶9, ¶24). To track their time for payroll purposes, the temps used two iT100 "biometric" clocks installed in TDM's facility to punch in/out for each shift, which Plaintiff alleges captured their facial-geometry data. (*See* ECF 76 (Class Cert. Brief) at p.4).

Plaintiff also alleged that despite TDM permitting this daily capture of its workers' facial data at its facility, it had no policy for handling their biometric data as required by BIPA § 15(a),

and did not inform them their facial or other biometric data would be captured or kept or have them sign releases authorizing that capture, as required by BIPA § 15(b). (ECF 76 (Class Cert. Brief) at pp. 4-5).

Accordingly, Plaintiff sued TDM for violating his and the other temps' BIPA's rights, to recover liquidated damages, expenses, and attorneys' fees, as BIPA provides.

TDM disputes Plaintiff's contentions. Also, TDM contends it cannot be held liable because: (a) allegedly it never used, owned, or operated a biometric device at its Chicago facility or possessed or obtained any data from such a device; (b) its staffing vendor PeopleShare allegedly employed the temps and supplied, owned, and operated the iT100 clock; and (b) PeopleShare allegedly collected signed releases from Plaintiff and the class members authorizing the capture of their biometric data. (*Id.* at pp. 5-6). Plaintiff disputes TDM's contentions. (*See id.*).

### C.   <u>Procedural History and Work Leading to the Settlement</u>

On September 12, 2023, Plaintiff filed this Action in the Circuit Court of Cook County, Illinois, alleging that TDM violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. On November 2, 2023, TDM removed the action to this Court.

On November 21, 2023, Plaintiff moved for jurisdictional discovery substantiating the class size to ensure TDM's removal under the Class Action Fairness Act ("CAFA") was proper. (ECF 11). After several hearings, a meet and confer process and the preparation of a joint report arguing the parties' respective positions on the same, the motion was granted. (ECF 17, 20).

TDM produced the class details it had sufficient to satisfy CAFA, but insisted complete information about the class could only be obtained from its staffing vendor PeopleShare. Accordingly, Plaintiff subpoenaed PeopleShare for the full class information, as well as information it held concerning the merits. (ECF 29-2).

On March 5, 2025, PeopleShare moved to quash, which Plaintiff was forced to brief and argue multiple times during the ensuing eight months because over time PeopleShare changed the grounds for its motion. (*See* ECF 29, 32, 33, 36, 44-46, 54, 60, 63). Initially, PeopleShare argued the information was not discoverable or that Plaintiff should get it from TDM (even though TDM insisted PeopleShare exclusively held the information). Later it argued there was no reason to produce the information because PeopleShare had entered into a class settlement in an unrelated case, *Reyes v. PeopleShare, LLC*, 23 LA 69 (Kendall Cnty.), that would extinguish the class claims here. Ultimately, the Court ordered most of the subpoenaed information produced. (ECF 57, 67).

Plaintiff defeated PeopleShare's argument that *Reyes* obviated the need to comply with the subpoena by challenging the *Reyes* settlement. First, he moved, briefed, and successfully argued for the right to intervene in *Reyes* to object to the settlement that had been granted preliminary approval there because of the threat it posed to the class members' claims here. (*Appendix 3* (Keogh Decl.) at ¶8). Second, he moved, briefed, and successfully argued the *Reyes* court should vacate approval of the settlement because its plaintiff lacked standing to represent and compromise the claims of the class members in this case. (ECF 54 at ¶8). Significantly, the settlement here would not have been possible without this extensive work to stop Peopleshare from mooting the class members' claims by extinguishing them as part of the *Reyes* settlement.[2]

During the proceedings on PeopleShare's subpoena objections, at TDM's request, the Court also ordered the parties to brief the viability of Plaintiff's theories for holding TDM liable

---

[2] It is worth noting the now-vacated *Reyes* settlement was categorically inferior to the instant Settlement because, unlike here, it: (a) did not allow class members to separately recover on their claims against TDM and PeopleShare; (b) only offered $316 net in cash per class member (plus a dark web monitoring service); (c) required each class member to file a claim to receive a payment; and (d) provided that all unclaimed funds would revert back to PeopleShare, thus ensuring the vast majority of class members would release their claims in exchange for nothing.

5

given TDM's argument PeopleShare solely owned and operated the biometric clocks at issue. (ECF 38). Each party filed a detailed brief on the matter (ECF 39, 42) and the Court found Plaintiff's theories plausible. (Nov. 4, 2024 Hrg. Transcript at p.4) ("I find plausible plaintiffs' argument that even if a third party rather than the defendant owned the clocks, the defendant might still be liable under BIPA.")).

Subsequently, also at TDM's request, the Court ordered briefing on TDM's argument Plaintiff could be compelled to amend his complaint to specifically plead his legal theories, and to change allegations TDM claimed discovery had shown to be incorrect, so TDM could bring motion practice against the amended complaint. (ECF 57). This matter was fully briefed, and again the Court rejected TDM's arguments. (Nov. 4, 2024 Hrg. Transcript at pp. 4-5) ("defendant hasn't cited to any authority showing that courts in fact use this power to require a plaintiff to amend its complaint. * * * Plaintiffs are not required to plead legal theories in their complaint.").

The parties also conducted full discovery. This included preparing a lengthy initial discovery report and proposed discovery schedule, drafting Rule 26(a)(1) disclosures, and drafting and answering one-another's written discovery requests. (*Appendix 3* (Keogh Decl.) at ¶11). This in turn required multiple Rule 37.2 conferences and correspondence regarding the sufficiency and completeness of the responses, and on numerous occasions Plaintiff convinced TDM to provide supplemental answers and produce additional documents. Ultimately TDM produced more than a thousand pages of documents, a significant portion of which consisted of emails Plaintiff had to individually analyze. (*Id.*).

Plaintiff also conducted substantial additional third-party discovery. This included subpoenaing the maker of the iT100, Iris ID Systems, Inc., for discovery on how the clock works, to help prove it captures information subject to BIPA, subpoenaing PeopleShare's clock vendor

for related information, and also deposing Iris ID. TDM moved for a protective order to try to stop the deposition, Plaintiff filed an opposition brief, and the Court denied the motion. (ECF 93, 98).

In January 2025, PeopleShare sought intervention on account of joint employment and other issues, and Plaintiff contemporaneously moved for class certification. (ECF 71, 76). The Court elected to resolve the motion to intervene first. (*See* ECF 80). During the briefing, PeopleShare withdrew its motion and filed an amended motion to intervene (ECF 86), that motion was fully briefed, and ultimately granted on March 18, 2025. (ECF 99).

This prompted a second litigation's worth of written and document discovery, with Plaintiff and PeopleShare drafting and answering extensive interrogatories and document requests (as well as requests for admission to Plaintiff), conducting written and oral Rule 37.2 discussions regarding the sufficiency of the same, and preparing and producing supplemental responses and productions. PeopleShare produced nearly 5,700 pages of documents Plaintiff had to analyze. (*Appendix 3* (Keogh Decl.) at ¶14).

Each side commenced party depositions as well, with Plaintiff deposing a key TDM employee, and TDM and PeopleShare deposing Plaintiff Franklin for approximately five and a half hours. (*Id.* at ¶15).

During preparation for the remaining depositions, the parties discussed settlement, eventually reaching agreement on material terms. (*Id.* at ¶16). Thereafter, Plaintiff's counsel drafted a detailed settlement agreement, proposed class mail notice, proposed class website notice, and the proposed preliminary and final approval orders. Substantial additional negotiations followed, with the parties revising and exchanging multiple drafts of the foregoing documents, the finals of which are attached at *Appendix 1*.

## III. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed Settlement are:

### A. <u>Settlement Class Definition</u>

The Settlement Class is defined as follows:

All persons who used an iT100 Device while assigned to or working at TDM's Chicago Modification Center in Chicago, Illinois at any time from November 29, 2022 through April 5, 2023.

The class contains no more than 331 members. (*Appendix 1* (Settlement Agreement) at ¶34).

### B. <u>Monetary Relief for Settlement Class Members</u>

The Settlement Agreement requires PeopleShare to create a non-reversionary Settlement Fund of Two-Hundred-Twelve Thousand, Five Hundred, and No/100 Dollars ($212,500.00), from which each Settlement Class Member will receive, without the need to submit a claim, a *pro rata* share after deduction of the costs of notice and administration, and the court-approved class representative incentive award. (*See Appendix 1* (Settlement Agreement), ¶52.c). No portion of the Settlement Fund will revert to PeopleShare, and no amount will be deducted from the fund for the court-approved attorney's fee and expense award, which PeopleShare will pay on top of the Settlement Fund. (*See id.*, ¶54). As such, the settlement administrator[3] will automatically issue checks to each Settlement Class Member who does not opt out, and the checks will remain valid

---

[3] Subject to the Court's approval, the parties agreed to engage American Legal Claim Services, LLC as settlement administrator, which has been appointed settlement administrator in numerous class cases. *See, e.g., Garcia v. J.C. Penny Corp.*, 2017 U.S. Dist. LEXIS 131890, *7-8 (N.D. Ill. Aug. 9, 2017); *Lateano v. Chicago Cubs Baseball Club, LLC*, 23-cv-02757 at ECF 43, p.15 (N.D. Ill.); *see also Reyes v. Summit Health Mgmt., LLC*, 2024 U.S. Dist. LEXIS 21061, *9-10 (S.D.N.Y. Feb. 6, 2024) ("The distribution plan here … is being overseen by American Legal Claim Services LLC, an experienced claims administrator.")

for 120 days from issuance. (*Id.*, ¶6, ¶71). Thus, each of the 331 Settlement Class Members (minus any opt-outs) will receive an estimated $582 net.[4]

If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members. (*Id.*, ¶72). If there is not enough money to pay at least $10.00 to each Settlement Class Member who cashed their initial award check, or if any checks from the subsequent distribution remain uncashed after the stale date, those funds shall be paid to a mutually agreeable *cy pres* recipient determined by Plaintiff and PeopleShare, subject to Court approval. (*Appendix 1* (Settlement Agreement), ¶71).

### C.      Class Representative Service Payment

Plaintiff will petition for a service payment for bringing this suit for the class, answering multiple sets of written discovery and supplementing his responses to the same, producing documents, sitting for a lengthy deposition, regularly communicating with class counsel about the case for nearly two years, and achieving this settlement for the class. Plaintiff's efforts included successfully moving to intervene in the *Reyes* case to prevent the proposed settlement there from extinguishing the class members' claims here.

Service payments are routinely approved in class actions, including class actions under BIPA.[5] There is no clear sailing provision for this request. (*See Appendix 1* (Settlement

---

[4] The $582 payout is calculated by subtracting the Settlement Administrator's estimated cost of notice and administration ($9,814) and the proposed class representative incentive award ($10,000) from $212,500, and dividing the remainder by 331 Settlement Class Members.

[5] *See, e.g.*, *Rapai v. Hyatt Corp.*, No. 2017-CH-14483 (Cir. Ct. Cook Cnty. Jan. 26, 2022) (awarding $12,500 incentive award to BIPA class representative); *Dixon v. Wash. & Jane Smith Cmty.*, No. 1:17-cv-08033 (N.D. Ill., Aug. 20, 2019), ECF No. 103 (awarding $10,000 service award to BIPA class representative); *Heidelberg v. Forman Mills Inc.*, No. 2020-CH-4079 (Cir.

Agreement), ¶55). The notice shall advise the Settlement Class of the request. (*Id.* at Ex. 1 (Mail Notice) ("What does the Settlement provide?"), and at Ex. 2 (Web Notice), §7).

### D.     <u>Payment of Attorneys' Fees and Expenses</u>

Plaintiff will also petition for an award of $200,000.00 for his counsel's attorneys' fees and expenses, which is significantly less than the fees and out-of-pocket expenses counsel actually incurred.

Further, as will be explained in detail in the separate fee petition counsel will be filing at the time notice of the Settlement is sent to the Settlement Class (which will set out the fee request), this proposed award is well-earned given the substantial work class counsel had to perform to achieve the Settlement in this heavily-litigated case, as well as the additional work counsel still has to perform to complete the Settlement and finish the case. (*See Appendix 3* (Keogh Decl.) at ¶17). The notice shall also advise the class of the request. (*Appendix 1* (Settlement Agreement) at Ex. 1 (Mail Notice) ("What does the Settlement provide?"); and Ex. 2 (Web Notice) §7).

### E.     <u>The Release Is Limited to TDM – Claims Against PeopleShare Are Preserved</u>

In exchange for the relief described above, Plaintiff and the Settlement Class will release any claims under BIPA or similar laws they may have, but <u>only</u> as to Defendant TDM. Claims against PeopleShare are expressly preserved, and thus Plaintiff and the Settlement Class Members remain free to pursue or continue pursuing any claims they may have against PeopleShare arising from or relating to their use of the iT100 clock at TDM, including in the lawsuit pending against PeopleShare Best Practices, LLC in state court, *Gunn v. PeopleShare Best Practices, LLC*, 2023 CH 8596 (Cir. Ct. Cook Cnty.). The full scope of the release, and its exact terms, are set forth in

---

Ct. Cook Cnty. Aug. 22, 2023) (same); *Prelipceanu*, No. 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (same); *Zhirovetskiy,* No. 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (same); *Roach v. Walmart Inc*. No. 2019-CH-01107 (Cir. Ct. Cook Cnty. June 16, 2021) (same).

the Settlement Agreement. (*See Appendix 1* (Settlement Agreement), ¶28-¶29, ¶74).

## IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to evaluating the proposed Settlement, the Court must confirm the class meets the requirements for class certification. *See In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). This is easily done here, as "Federal and state courts in Illinois routinely certify class actions under BIPA." *Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263, *54 (N.D. Ill. Sept. 29, 2024) (collecting cases).

A class is proper when: (1) it is so numerous joinder of all members as parties would be impracticable ("Numerosity"); (2) the class claims present one or more common questions of law or fact that predominate over any questions affecting only individual members ("Commonality and Predominance"); (3) the named plaintiff's claim is typical of the class's claims ("Typicality"); (4) the named plaintiff will fairly and adequately represent the class ("Adequacy"); and (5) a class action is a superior method for fairly and efficiently resolving the dispute. ("Superiority"). *See* Fed. R. Civ. P. 23(a) and (b); and *Svoboda v. Amazon.com, Inc.*, 2024 U.S. Dist. LEXIS 58867, *10-11 (N.D. Ill. Mar. 30, 2024).[6] Here, the Settlement Class readily meets each requirement.

### A. Numerosity Is Met.

"[A] forty-member class is often regarded as sufficient to meet the numerosity requirement." *Howe*, 2024 U.S. Dist. LEXIS 176263, *47 (BIPA case, quoting *Mulvania v. Sheriff*

---

[6] An implied class certification requirement is the class also be "ascertainable," which simply means it must defined clearly and "based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 and 672 (7th Cir. 2015). That is the case here because class membership turns on whether a person used a specific device (the iT100 clock) at a specific place (Defendant TDM's Chicago facility) during a specific time period (November 29, 2022 through April 5, 2023). (*See*, *supra*, p.8). Indeed, not only is the class ascertainable, it has already been ascertained, as the Court previously ordered PeopleShare to produce records identifying the persons who used the clock during the relevant period, and from that list Plaintiff identified 331 persons.

*of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)). The class easily clears this low bar because, as shown, it has 331 members. Accordingly, the numerosity requirement is met.

### B. Commonality and Predominance Are Met.

To meet the commonality and predominance requirements of Rule 23(a) and (b)(3), the class claims need only present one common issue of law *or* fact that "predominates" over any issues individually affecting class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) ("a court need only find a single common question of law or fact …"). This case easily satisfies both elements.

First, this case presents multiple common questions, including: (1) whether the iT100 biometric clock collected the class members' "biometric information;" and (2) whether TDM was obligated to and gave class members the disclosures and had them sign the release BIPA requires. *See Svoboda*, 2024 U.S. Dist. LEXIS 58867, *22-23 ("Plaintiffs' and the class's BIPA claims depend upon the same contention and alleged unlawful course of conduct: [Defendant's] use of scans of face geometry and face templates …") (brackets added); *Tapia-Rendon v. United Tape & Finishing Co.*, 2023 U.S. Dist. LEXIS 142773, *13-14 (N.D. Ill. Aug. 15, 2023) ("The putative classes therefore share common questions, including factual questions about the functionality of [the] devices and their collection and storage of class members' data, as well as legal questions about whether that collection and storage constitutes a violation of the BIPA.") (brackets added).

Second, these common questions "predominate" because they "represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Id.* (quoting *Messner v. NorthShore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)). Specifically, they will resolve TDM's liability and defenses, and can be decided for all class members in one fell swoop because they turn on the same proof, *i.e.*, the evidence showing: (a) the iT100 captured the

workers' facial geometry data; and (b) TDM was obligated to but did not give the workers the disclosures or have them sign the releases BIPA requires. *Svoboda*, 2024 U.S. Dist. LEXIS 58867, \*26-27 (common questions predominate where claims "can be resolved through class-wide evidence"); and *Rogers v. BNSF Ry. Co.*, 2022 U.S. Dist. LEXIS 50847, \*8 (N.D. Ill. Mar. 22, 2022) (finding predominance met because "the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof.").

Accordingly, as courts unanimously find in BIPA cases, the "commonality" and "predominance" requirements are met. *See*, *e.g.*, *Svoboda*, *supra*, at \*26-27; *Rogers, supra*, at \*8.

## C. Typicality Is Met.

The test for "typicality" is simply whether the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Howe*, 2024 U.S. Dist. LEXIS 176263, \*49-50 (BIPA case, quoting *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021)).

This case meets the test because Plaintiff's and the class members' claims are identical. Again, they all stem from them having to use the iT100 biometric clock to track their work time at TDM without TDM first giving them written notice their facial data would be collected, or having them sign a release authorizing the collection, as BIPA requires. (*See supra*, pp. 3-4).

Accordingly, the typicality requirement is met. *See Rogers*, 2022 U.S. Dist. LEXIS 50847, \*6 (typicality met where the plaintiff's BIPA "claim is virtually identical to the claims of the proposed class members, as it arises from a uniform course of conduct …").

## D. Adequacy Is Met.

The adequacy requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous

advocacy, and (3) does not have interests antagonistic to those of the class." *Svoboda*, 2024 U.S. Dist. LEXIS 58867, *15 (BIPA case) (quoting *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006)).

Plaintiff has ample interest in the outcome, plus his interests are squarely aligned with, not antagonistic to, the class's interests. Again, he and his fellow class members share identical BIPA claims based on common facts arising from a common course of conduct they allege was unlawful – the collection of their biometric data at TDM without first being given the notice of right and signing the release BIPA requires – and they all stand to recover statutory liquidated damages BIPA allows if Plaintiff succeeds. *See Svoboda* at *16 (finding plaintiffs adequate because they "seek the same type of recovery as everyone in the class: statutory damages under BIPA.").

Plaintiff's counsel are also adequate. They have extensive experience in class actions involving statutory privacy claims like BIPA, and have been appointed class counsel in scores of class cases involving statutory rights, including BIPA cases. (*Appendix 3* (Keogh Decl.) at ¶18-¶37). Plus, they vigorously pursued the class claims here.[7] The "adequacy" requirement is met.

### E.  A Class Action Is Superior to Individual Lawsuits.

Rule 23 also requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plainly that is the case because

---

[7] Class Counsel's vigorous pursuit of the class claims here includes, but is not limited to, investigating the class claims, preparing the complaint, conducting extensive written and document discovery with TDM, conducting third-party discovery from the iT100's maker, TDM's staffing vendor PeopleShare, and PeopleShare's clock vendor, taking depositions, presenting Plaintiff for deposition, conducting extensive motion practice to overcome PeopleShare's opposition to producing class discovery, briefing the "joint employer" liability issue the Court requested, briefing whether TDM could force Plaintiff to amend his complaint, separately conducting full written discovery with PeopleShare after it was granted leave to intervene, moving for class certification, and successfully intervening in *Reyes v. PeopleShare, LLC* case with Plaintiff to challenge PeopleShare's attempt to use that case to extinguish the class claims here, and successfully opposing the settlement there. (*See id.* ¶3-¶16).

the alternative is individual lawsuits, and requiring 331 individual actions to litigate the same issues based on the same facts and proofs here would impose an onerous, needless burden on both the class members and the courts. *See Howe*, 2024 U.S. Dist. LEXIS 176263, *55 (BIPA case, finding "superiority" requirement met because "[r]equiring employees to litigate these claims individually would be the exact waste of resources Rule 23 is meant to prevent.").

Plus, none of Rule 23's criteria for evaluating superiority count against certification. Fed. R. Civ.P. 23(b)(3)(A)-(D). First, it is highly unlikely class members have a significant interest in proceeding individually "as no[ne] have brought individual suits" against TDM. *Barnes v. Air Line Pilots Ass'n*, 310 F.R.D. 551, 562 (N.D. Ill. Sept. 30, 2015) (brackets added).

Second, the "extent and nature" of any parallel lawsuits is a non-issue because, once again, no class member has filed their own individual BIPA suit against TDM.

Third, it is desirable to concentrate the litigation in this forum because the events underlying class members' claims exclusively occurred in this district at TDM's Chicago facility, and the common questions discussed above "should be decided only once." *Id.*

The fourth factor—"the likely difficulties in managing a class action" – is a non-issue because with a settlement, the "the proposal is there will be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."). In short, the Settlement Class easily meets the requirements of Federal Rule 23, and it should be certified.

## V.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The claims of a class only may be settled with court approval. Fed. R. Civ. P. 23(e). Once the Court determines the class satisfies the requirements for certification, the Court "must

determine whether the proposed settlement is 'within the range of possible approval' with regard to the criteria set forth in Rule 23(e)(2)." *In re Tiktok*, 565 F. Supp. 3d at 1083 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621, n.3 (7th Cir. 1982)).

In conducting this inquiry, it is important to keep in mind federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

The Rule 23(e)(2) factors to consider to determine if the settlement is within the range of possible approval include whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account, (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the settlement treats class members equitably. Fed. R. Civ. P. 23(e)(2); and, *e.g.*, *Rysewyk v. Sears Holdings Corp.*, 2019 U.S. Dist. LEXIS 236004, *11-12 (N.D. Ill. Jan. 29, 2019). As explained below, each of these factors supports preliminary approval here.

16

**A. The class has been adequately represented**
**Fed. R. Civ. P. 23(e)(2)(A)**

Satisfaction of this factor is demonstrated above in the discussion of Plaintiff's and his counsel's adequacy to represent the class for the purposes of class certification. Again, Plaintiff's interests in this case are squarely aligned with those of the class he seeks to represent, as they all share identical claims arising from a common course of conduct and stand to recover the same relief, and Plaintiff has vigorously prosecuted those claims by retaining experienced class counsel, assisting his attorneys in investigating them and preparing the complaint, answering multiple sets of discovery and producing documents, sitting for deposition, regularly conferring with his attorneys throughout the litigation, intervening in *Reyes* to prevent the settlement of that case from extinguishing the class claims here, and reviewing and approving the Settlement Agreement. (*Supra*, pp. 13-14).

Likewise, Plaintiff's counsel are adequate because they have decades of class action experience, including scores of cases under BIPA, which enabled them to prosecute this complex case, weather the staunch defense mounted by TDM and the PeopleShare Intervenors, defend the class members' claims from extinguishment in *Reyes*, and achieve an outstanding Settlement that pays class members a substantial recovery compared to other BIPA settlements, while still preserving their ability to pursue claims against PeopleShare. (*See Appendix 3* (Keogh Decl.) at ¶18-¶37). The adequate representation factor is plainly met.

**B. The Settlement is the product of arm's-length negotiations**
**Fed. R. Civ. P. 23(e)(2)(B)**

The Settlement was negotiated at arm's length because, as shown above, it is the product of extensive negotiations and only came about after nearly two years of hard-fought litigation. (*See*, *supra*, pp. 4-7 (detailing the case's procedural history and work pre-dating the settlement)).

This is also borne out by the terms of the Agreement itself. The settlement is non-reversionary, provides significant cash payments to all members of the Settlement Class without any need for a claim form, preserves the class members' claims against the PeopleShare intervenors, and is devoid of any provision that could indicate fraud or collusion. *See Snyder v. Ocwen Loan Servicing, LLC,* 2019 U.S. Dist. LEXIS 80926, *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement did not allow reversion of unclaimed funds or contain other terms suggesting something negotiations were not arm's length); *see also Schulte v. Fifth Third Bank*, 2010 U.S. Dist. LEXIS 144810, *15-16, n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C. The relief provided is more than adequate Fed. R. Civ. P. 23(e)(2)(C)

The relief provided is adequate because the Settlement creates a $212,500 non-reversionary Settlement Fund for a class of 331 persons that will provide each class member with an estimated net payment of $582, substantially more than the net payouts provided by many other BIPA settlements granted approval. *See, e.g.*, *Trotter v. Summit Staffing*, 2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) (net recovery of $102); *Sekura v. L.A. Tan Enters.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant); *Pelka v. Saren Restaurants Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289); *Sykes v. Clearstaff, Inc*., 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) (net recovery of $298.04); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $375); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Marshal v. Life Time Fitness, Inc.*,

2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (net recovery of about $270, plus dark web monitoring valued at approximately $130); *Zhirovetskiy v. Zayo Grp., LLC*, 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (net recovery capped at $400 per claimant); and *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*, 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) (net recovery of $256-$510 per claimant).

What's more, this net payout compares favorably with the potential recoverable damages. BIPA provides a prevailing party may recover $1,000 for negligent violations, which is the likely recovery here because TDM contends it did not own or control the time clock and believed PeopleShare had obtained signed BIPA consents, allowing TDM to argue any violation was negligent at best. Plus, as noted above, the Illinois Supreme Court holds courts may award less than the full $1,000. *See Cothron*, 2023 IL 128004, ¶42. As such, the estimated $582 net recovery per class member compared to the potential recovery is plainly fair, reasonable, and adequate.[8]

Plus, this Settlement provides a benefit most do not. It preserves the class members' ability to separately recover from other potentially responsible parties in other litigation pending against PeopleShare in state court. (*See Appendix 1* (Settlement Agreement) at ¶28-¶29).

Finally, as explained below, the sub-factors set forth in Rule 23(e)(2)(C) further confirm the class relief is adequate.

### 1. The risks of continued litigation weigh in favor of approval.

Evaluating the relief's adequacy also involves considering the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(i). This weighs heavily in favor of approval because this Settlement provides

---

[8] Conversely, it is not necessary to achieve the maximum relief possible. "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (cleaned up, citations omitted).

immediate and substantial relief while avoiding potentially years of additional costly, complex litigation, and appeals, along with the associated risk of getting nothing. *See Goldsmith v. Tech. Sols. Co.*, 1995 U.S. Dist. LEXIS 15093, *14-15 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.")

While Plaintiff remains confident in the strength of his claims, TDM's defenses could derail any recovery. Most notably, TDM argues BIPA liability turns on the collection of biometric information, and that allegedly it cannot be held liable for collecting Plaintiff's or the class members' biometric information. Specifically, TDM alleges its vendor solely owned and operated the iT100 devices at issue, and that it never collected, possessed or obtained any information captured by the devices, even though they were installed on TDM's premises. Likewise, TDM argued PeopleShare had collected signed written consents to collect this information from Plaintiff and the class members before collecting this information. Plaintiff disputes these defenses but, needless to say, there is no guarantee Plaintiff's argument will prevail.

Moreover, Plaintiff would still need to win class certification. *See* Fed. R. Civ. P. 23(e)(2), Advisory Comm. Note to 2018 Amendment (courts may consider "whether certification for litigation" would be granted absent settlement). Though Plaintiff maintains this case is ideal for certification, success is not guaranteed, and TDM and PeopleShare would vigorously oppose it.

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents an excellent result. Instead of facing the uncertainty of a potential award in their favor years from now that might not even exceed the result achieved here, the Settlement achieves immediate, certain, and substantial relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the

20

class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

## 2. The proposed method of distribution is effective.

The next sub-factor analyzes the effectiveness of the proposed method for distributing relief to the class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed.).

Here, class members who do not opt-out of the Settlement will automatically be mailed a check, without any need to submit a claim form. (*Appendix 1* (Settlement Agreement) at ¶56). This method is as simple, expeditious, and effective as it gets. *See T.K. v. Bytedance Tech. Co. Ltd.*, 2022 U.S. Dist. LEXIS 65322, *39 (N.D. Ill. Mar. 25, 2022) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable.") (citation omitted).

## 3. The proposed attorney fee award and timing of payment

The final relevant sub-factor[9] analyzes the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement permits Class Counsel to petition the Court for a fee and expense award of $200,000, but does not guarantee any set amount. Furthermore, the fee and expense award will not be paid from Settlement Fund created to pay the class members' claims, but rather it will be paid in addition to the class fund. (*Appendix 1* (Settlement Agreement) at ¶70.A). This is consistent with the fact that BIPA expressly provides for an award of attorneys' fees and costs on

---

[9] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). This is a non-issue because Parties have not entered into any such agreement. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself— that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

top of the plaintiff's recovery, as well as the many fee-shifting cases in which courts award such fees on top of the plaintiff's recovery.[10]

Class Counsel will file their fee and expense petition on the same date notice is sent to the class, and a copy will be posted on the Settlement Website allowing Class Members to review or object. Only after the expiration of the deadline to appeal the Court's final approval order would any fee payment be made. (*Appendix 1* (Settlement Agreement) at ¶70.A). In short, each of the above subfactors demonstrates the relief provided under the Settlement is more than adequate.

### D. The proposed Settlement treats Settlement Class Members equitably Fed. R. Civ. P. 23(e)(2)(D)

"Generally, a settlement that provides for pro rata shares to each class member will meet this standard." *T.K.*, 2022 U.S. Dist. LEXIS 65322, *42; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

That is the case here because the Settlement expressly states the net Settlement Fund will be divided *pro rata* among all Settlement Class Members who do not opt out. (*Appendix 1* (Settlement Agreement) at ¶56). Thus, because each such person will receive an equal share, the Settlement necessarily treats Settlement Class Members equitably.

In sum, all of the factors for evaluating whether the Settlement is within the range of possible approval demonstrate the Settlement is fair, reasonable, and adequate, and thus the Settlement should be granted preliminary approval so the Settlements Class Members may be

---

[10] *See Rosenbach v. Six Flags Ent't Corp.*, 2019 IL 123186, ¶36 ("The strategy adopted by the General Assembly through enactment of the Act is to try to head off [biometric privacy] problems before they occur. It does this in two ways. … The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including … attorney fees, and litigation expenses ...") (brackets added); and *e.g. Thomas v. Weatherguard Constr. Co.*, 2018 IL App (1st) 171238, ¶1, ¶3, ¶74 (affirming $178,449.97 in fees on a recovery of $9,226.52).

given notice and an opportunity to comment on the Settlement or opt out.

## VI.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Because the Settlement provides for monetary relief and certification of the class pursuant to Rule 23(b)(3), the Court must direct class members be sent "the best notice [of the certification and Settlement] that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (brackets added). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice here provides this information, and thus is adequate. (*Appendix 1* (Settlement Agreement) at ¶18 and Ex. 1 (Mail Notice)). So is the plan for distributing the notice, which provides it shall be sent by direct mail to each Settlement Class Member for which a working address can be located. (*Id.* at ¶58.A).

On top of that, the direct-mail notice directs class members to a dedicated Website that will be set up by the Settlement Administrator to provide additional information, including a "web" notice designed to provide detailed information about all aspects of the Settlement, key case documents (*e.g.* the complaint, settlement agreement, motion for preliminary approval, and fee petition), and a toll-free number to reach class counsel with any additional questions. (*Appendix 1* (Settlement Agreement) at ¶18, ¶58.B., and Ex. 2 (Web Notice)). Mailed notice combined with a website for further information is a commonly-approved method for giving notice in class

settlements. *See, e.g.*, *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 634 (11th Cir. 2015) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice"); *Gupta v. Power Sols. Int'l, Inc.*, 2019 U.S. Dist. LEXIS 83984, *4-5 (N.D. Ill. May 13, 2019) (approving notice provided by mail along with website containing additional information); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F.Supp.2d 901, 910 (S.D. Ill. 2012) (same). In short, the notice plan passes muster, and should be approved.

## VII.    THE MATTER SHOULD BE SET FOR A FINAL APPROVAL HEARING

After giving class members notice and an opportunity to comment on the Settlement or opt out, the last step in the settlement approval process is the formal final approval hearing to allow the Court to hear all matter necessary to finally determine if the settlement is fair, reasonable, and adequate. Accordingly, the proposed preliminary approval order provides a deadline for class counsel to file a motion for final approval addressing any objections to the Settlement and otherwise demonstrating it merits final approval, and setting a date to hold the hearing on the same. (*Appendix 2* (Proposed Preliminary Approval Order) at ¶21).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court: (a) certify the Settlement Class for settlement purposes; (b) appoint Mr. Franklin class representative; (c) appoint as class counsel Keith J. Keogh and Michael S. Hilicki of Keogh Law, Ltd.; (d) enter the order granting preliminary approval of the Settlement in the form attached as *Appendix 2*, including approval of the plan for giving notice of to the Settlement Class, and setting this matter for a final approval/fairness hearing; and (e) grant such additional relief as deemed just.

Plaintiff proposes the following scheduling outline for concluding this Settlement.

| | |
|---|---|
| _____**2025** [14 days after Preliminary Approval Order] | Deadline for Defendant to send class list to the settlement administrator |
| _____**2025** [35 days after Preliminary Approval Order] | Deadline for the settlement administrator to send notice of the Settlement to the Settlement Class |
| _____ **2025** [21 days after Preliminary Approval Order] | Deadline for Plaintiff to file petition for an award of attorneys' fees and expenses, and class representative incentive award |
| _____, **2025** [45 days after notice deadline] | Deadline for Settlement Class Members to request exclusion or file objections (Opt-Out/Objection Deadline) |
| _____, **2025** [21 days after objection/opt-out deadline] | Deadline for Parties to file: (1) motion and memorandum in support of final approval; and (2) responses to any objections. |
| _____, **2025 at ____.m.** [Court's Convenience] | Final Approval Hearing |

Dated:  August 7, 2025

Respectfully submitted,

s/*Michael S. Hilicki*
Keith J. Keogh
Michael S. Hilicki
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone:     (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

***Attorneys for Plaintiff***