**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY FRANKLIN, *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-15610 |
| v. | ) | |
| | ) | |
| TROY DESIGN & MANUFACTURING, | ) | Judge Georgia N. Alexakis |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------------- | ) | |
| | ) | |
| PEOPLESHARE, LLC AND PEOPLESHARE | ) | |
| BEST PRACTICES, LLC, | ) | |
| | ) | |
| Intervenors. | ) | |

**PLAINTIFF'S MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

239217

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.     RELEVANT BACKGROUND...........................................................................................2

     A.     The Illinois Biometric Information Act .................................................................2

     B.     The Alleged BIPA Violations and TDM's Alleged Defenses................................3

     C.     Procedural History and Work Leading to the Settlement .....................................4

     D.     The Settlement .......................................................................................................8

           1.     Settlement Class Definition ......................................................................8

           2.     Monetary Relief for Settlement Class Members .......................................8

           3.     Class Representative Service Payment......................................................9

           4.     Payment of Attorneys' Fees and Expenses.............................................11

           5.     The Release Is Limited to TDM – Claims Against PeopleShare are Preserved................................................................................................11

     E.     The Class Was Given Notice of the Settlement as Directed by the Court...........12

II.     THE SETTLEMENT MERITS FINAL APPROVAL ....................................................13

     A.     The class has been adequately represented ..........................................................14

     B.     The Settlement is the product of arm's-length negotiations.................................15

     C.     The relief provided is more than adequate ..........................................................16

           1.     The risks of continued litigation weigh in favor of approval..................17

           2.     The proposed method of distribution is effective....................................19

           3.     The proposed attorney fee award and timing of payment .......................19

     D.     The proposed Settlement treats Settlement Class Members equitably ...............20

III.     THE MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD SHOULD BE GRANTED..........................20

CONCLUSION................................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305, 312-13 (7th Cir. 1980) ...................................................................................14

*Bickel v. Sheriff of Whitley Cnty.*,
  2015 U.S. Dist. LEXIS 38311, (N.D. Ind. Mar. 26, 2015) ....................................................12

*Bryant, et al. v. Loews Chicago Hotel, Inc.*,
  19-cv-03195 (N.D. Ill. 2019) .................................................................................................10

*Cothron v. White Castle Sys.*,
  2023 IL 128004 ..................................................................................................................3, 17

*Davis v. Heartland Employ. Serv., LLC.*
  19-cv-00680 (N.D. Ill. Feb. 1, 2019).....................................................................................10

*Devose v. Ron's Staffing Servs., Inc.,*
  2019-L-1022 (Cir. Ct. Will Cnty.)..........................................................................................10

*Diaz v. Greencore USA – CPG Partners, LLC d/b/a Peacock Foods*,
  17-cv-08033 (N.D. Ill., Aug. 20, 2019) .................................................................................10

*Dixon v. Wash. & Jane Smith Cmty*,
  (Cir. Ct. Cook Cty.) ...............................................................................................................10

*Edmund v. DPI Specialty Foods, Inc.*,
  2018-CH-09573 (Cir. Ct. Cook. Cnty. Nov. 18, 2019) ........................................................10

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998)..................................................................................................14

*Fournigault v. Indep. One Mortg. Corp.*,
  234 F.R.D. 641, 646 (N.D. Ill. 2006) .....................................................................................14

*Garcia v. J.C. Penny Corp.*,
  2017 U.S. Dist. LEXIS 131890 (N.D. Ill. Aug. 9, 2017) .........................................................8

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982)..................................................................................................13

*George, et al. v. Schulte Hosp. Grp., Inc*,
　2018-CH-04413 (Cir. Ct. Cook Cty) ....................................................................10

*Glynn v. Edriving, LLC..*,
　2019-CH-08517 (Cir. Ct. Cook Cty.) ....................................................................10

*Hale v. State Farm Mut. Auto. Ins. Co.*,
　2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ....................................19

*Heard v. THC - Northshore, Inc.*,
　2017-CH-16918 (Cir. Ct. Cook Cty.) ....................................................................10

*Heidelberg v. Forman Mills Inc.*,
　No. 2020-CH-4079 (Cir. Ct. Cook Cnty. Aug. 22, 2023) ....................................10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
　270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................17

*In re In re Southwest Airlines Voucher Litig.*,
　2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ........................................2

*Isby v. Bayh*,
　75 F.3d 1191 (7th Cir. 1996) ................................................................................14

*Jackson v. A Finkl & Sons, Co.*,
　2018-CH-07424 (Cir. Ct. Cook Cnty. July 21, 2020) ..........................................10

*Kane v. Cons. Tech. of Ill., LLC d/b/a Con-Tech Lighting*,
　2018-CH-12194 (Cir. Ct. Cook Cty.) ....................................................................10

*Kusinski v. ADP, LLC*,
　2017-CH-12364 (Cook Cnty. Feb. 10, 2021) ......................................................16

*Lateano v. Chicago Cubs Baseball Club, LLC.*,
　23-cv-02757 (N.D. Ill) ............................................................................................8

*Marshal v. Life Time Fitness, Inc.*,
　2017-CH-14262 (Cir. Ct. Cook Cty.) ....................................................................16

*McClaine et al. v. DX Enters. Inc.*,
　23-cv-01168 (S.D. Ill.) ..........................................................................................10

iii

*Moore v. THR Brokerage IL Inc.*,
  2019 Ill. Cir. LEXIS 73 (Cook Cnty. Cir. Ct. May 17, 2019) .................................................9

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
  2019-CH-11575 (Cir. Ct. Cook Cnty.) .................................................................................16

*Ortega v. Rapid Displays, Inc.*,
  2020-CH-00140 (Cir. Ct. Cook Cty.) ...................................................................................10

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................................20

*Pelka v. Saren Restaurants Inc.*,
  2019-CH-14664 (Cir. Ct. Cook Cnty.) .................................................................................16

*Prelipceanu v. Jumio* Corp.,
  18-CH-15883 (Cir. Cook Cnty. July 21, 2020)......................................................................16

*Rapai v. Hyatt Corp.*,
  No. 2017-CH-14483 (Cir. Ct. Cook Cnty. Jan. 26, 2022).....................................................10

*Reyes v. Summit Health Mgmt., LLC*,
  2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 6, 2024).........................................................8

*Richardson v. Ikea N. Am. Servs.*,
  2023 Ill. Cir. LEXIS 362 (Cook Cnty. Cir. Ct. Aug. 3, 2023)................................................9

*Roach v. Walmart Inc.*,
  No. 2019-CH-01107 (Cir. Ct. Cook Cnty. June 16, 2021).....................................................10

*Rogers v. CN Transp., Ltd.*,
  2019-CH-05129 (Cir. Ct. Cook Cnty.) .................................................................................10

*Rosenbach v. Six Flags Ent't Corp.*,
  2019 IL 123186 ....................................................................................................................19

*Rysewyk v. Sears Holdings Corp.*,
  2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019)......................................................13

*Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*,
  2018-CH-02651 (Cir. Ct. Cook Cnty.) .................................................................................16

*Schulte v. Fifth Third Bank*,
    2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) ....................................................16

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................................18

*Sekura v. L.A. Tan Enters.*,
    2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) ...........................................................16

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019)......................................................15

*Svoboda v. Amazon.com, Inc.*,
    2024 U.S. Dist. LEXIS 58867 (N.D. Ill. Mar. 30, 2024)......................................................14

*Sykes v. Clearstaff, Inc.*,
    2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021)..............................................................16

*Terry v. Griffith Foods Grp., Inc.*,
    2019-CH-12910 (Cir. Ct. Cook Cnty) ..................................................................................10

*T.K. v. Bytedance Tech. Co. Ltd.*,
    2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022).................................................19, 20

*Thomas v. Weatherguard Constr. Co.*,
    2018 IL App (1st) 171238......................................................................................................19

*Trotter v. Summit Staffing*,
    Case No. 2019-CH-02731 (Cir. Ct. Cook Cnty.) ..................................................................16

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859, 863 (7th Cir. 2014) ........................................................................................13

*Wordlaw v. Enterprise Leasing*,
    20-cv-03200 (N.D. Ill. 2020) ...............................................................................................10

*Yates v. Checkers Drive-in Rest., Inc.*,
    No. 2020 U.S. Dist. LEXIS 205241 .....................................................................................13

*Zhirovetskiy v. Zayo Group, LLC*,
    No. 2017-CH-09323 .......................................................................................................10, 16

**Statutes**

740 ILCS 14/1, *et seq.*....................................................................................................4

740 ILCS 14/10........................................................................................................2

740 ILCS 14/15........................................................................................................3

740 ILCS 14/20......................................................................................................19

**Rules**

Fed. R. Civ. P. 23..............................................................................................passim

**Other**

4 Newberg on Class Actions § 13:53 (6th ed.).................................................18

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Timothy Franklin moves for final approval of his class action Settlement with Intervenors, PeopleShare, LLC and PeopleShare Best Practices, LLC (collectively "PeopleShare"), the Agreement for which is attached at *Appendix 1*, and for entry of the proposed final approval order attached at *Appendix 2*. After notice, no class member opted out or objected to any aspect of the Settlement.

## INTRODUCTION

Under the Settlement in this Illinois Biometric Information Privacy Act ("BIPA") case, the 331 class members will divide $212,500.00 *pro rata*, netting each class member $582.13[1] without the need to file a claim form. Further, there will be a second distribution for any uncashed checks if feasible, as set forth in the Settlement Agreement. (*Appendix 1* (Agreement) at ¶72). Finally, if any checks from the second distribution remain uncashed after the stale date, those funds shall be distributed to a *cy pres* recipient on the class's behalf, subject to the Court's approval. (*Id.* at ¶71).

Another benefit to the class is that under the Settlement Agreement they remain free to pursue or continue pursuing any claims they may have against PeopleShare arising from or relating to their use of the biometric clocks at Defendant's facility, including in the lawsuit pending against PeopleShare Best Practices, LLC in state court, *Gunn v. PeopleShare Best Practices, LLC*, 2023 CH 8596 (Cir. Ct. Cook Cnty.). (*Id.* at ¶27).

On August 14, 2025, the Court granted the Settlement preliminary approval, finding it within the range of reasonableness, and thus that the class should be given notice of the Settlement and an opportunity to object or opt out. (*Appendix 3* (Preliminary Approval Order).

Per the Court-approved notice plan, individual notice was mailed to all Settlement Class

---

[1] The $582.13 payout is calculated by subtracting the Settlement Administrator's cost of notice and administration ($9,814) and the proposed class representative incentive award ($10,000) from $212,500, and dividing the remainder by 331 Settlement Class Members.

1

Members for whom working addresses could be located, with nearly 95% of the class reached. (*Appendix 4* (Declaration of Mark Unkefer) at ¶7). The notice informed class members of the Settlement's terms, the per-person recovery, the Settlement Website where they could get more information, how to reach class counsel with any questions, the requested attorneys' fee, expense, and service awards, and the class members' right to object or request exclusion if they did not like any aspect of the Settlement. (*Id.* at Ex. A (Mail Notice)).

Further, contemporaneous with the issuance of the notice, Plaintiff filed his motion for an award of $200,000 for attorneys' fees and expenses, as well as a service award on September 18, 2025 (ECF 131), and the motion was posted on the Settlement Website for the class to review during the notice period. (*Appendix 4* (Unkefer Decl.) at ¶10). Importantly, the proposed fee award does not affect the Class recovery because PeopleShare agreed to pay it in addition to the class payment. (*See Appendix 1* (Agreement), ¶70.A).

No class member opted out or objected to any aspect of the Settlement. (*Appendix 4* (Unkefer Decl.) at ¶9). This complete absence of objections points to the Settlement's reasonableness. *See In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, *21 (N.D. Ill. Dec. 6, 2013) (finding "[s]uch a low level of opposition supports the reasonableness of the settlement.").

Finally, as further shown below, the other facts and circumstances of the Settlement, combined with the substantial relief it provides, demonstrates the Settlement is fair, reasonable, and adequate, and thus should be granted final approval.

## I.   RELEVANT BACKGROUND

### A.   The Illinois Biometric Information Privacy Act

Recognizing the importance of the security of individuals' biometrics, the Illinois General

2

Assembly enacted BIPA, which features several safeguards to protect Illinois citizens' ability to maintain control over their "biometric identifiers" and "biometric information" (collectively referred to herein as "biometric data"). Under BIPA, "biometric identifiers" include scans of individuals' facial geometry, and "biometric information" is any information based on an individual's biometric identifier used to identify an individual. 740 ILCS 14/10.

One such safeguard is Section 15(b)'s informed consent regime, which prohibits collecting a person's biometric data without first: (1) informing the person in writing their biometric data is being collected or stored, and the purpose and length of term for which it is being collected, stored, and used; and (2) having the person sign a written release consenting to collection of their biometric data. 740 ILCS 14/15(b).

A second safeguard is Section 15(a), which requires private entities in possession of a person's biometric data to develop a written, publicly-available policy establishing a retention schedule and guidelines for destroying the data when the initial purpose for collecting or obtaining it has been satisfied, or 3 years after the person's last interaction with the entity, whichever occurs first, and to actually destroy the data within those timeframes. 740 ILCS 14/15(a).

To facilitate enforcement of these protections, BIPA provides for recovery of $1,000 liquidated damages for any negligent violation, and $5,000 liquidated damages for any intentional violation, subject to reduction at the court's discretion, plus recovery of the successful plaintiff's attorneys' fees and expenses. 740 ILCS 14/20; and *see Cothron v. White Castle Sys.*, 2023 IL 128004, ¶42 (courts may award less than the liquidated damages BIPA provides).

### B. <u>The Alleged BIPA Violations and TDM's Alleged Defenses</u>

Plaintiff and other temporary mechanics were assigned to work at TDM's vehicle modification facility in Chicago. (*See* ECF 26 (TDM Answer) at ¶9, ¶24). To track their time for

payroll purposes, the temps used two iT100 "biometric" clocks installed in TDM's facility to punch in/out for each shift, which Plaintiff alleges captured their facial-geometry data. (*See* ECF 76 (Class Cert. Brief) at 4).

Plaintiff also alleged that despite TDM permitting this daily capture of its workers' facial-geometry data at its facility, it had no policy for handling their biometric data as required by BIPA § 15(a), and it did not inform them their facial or other biometric data would be captured or kept, or have them sign releases authorizing that capture, as required by BIPA § 15(b). (*Id.* at pp. 4-5).

Accordingly, Plaintiff sued TDM for violating his and the other temps' BIPA's rights, to recover liquidated damages, expenses, and attorneys' fees, as BIPA provides.

TDM disputed Plaintiff's contentions and denied the allegations of the lawsuit arguing, among other things, it cannot be held liable because allegedly: (a) it never used, owned, or operated the biometric clocks at its Chicago facility or obtained any data from them; (b) its staffing vendor PeopleShare employed the temps and supplied, owned, and operated the biometric clocks used; and (c) PeopleShare collected signed releases from Plaintiff and the class members authorizing the capture of their facial geometry data. (ECF 76 (Class Cert. Brief) at 5-6). Plaintiff disputes TDM's contentions. (*See id.*).

## C. <u>Procedural History and Work Leading to the Settlement</u>

On September 12, 2023, Plaintiff filed this Action in the Circuit Court of Cook County, Illinois, alleging that TDM violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. On November 2, 2023, TDM removed the action to this Court.

On November 21, 2023, Plaintiff moved for jurisdictional discovery substantiating the class size to ensure TDM's removal under the Class Action Fairness Act ("CAFA") was proper.

4

(ECF 11). After several hearings, a meet and confer process and the preparation of a joint report arguing the parties' respective positions on the same, the motion was granted. (ECF 17, 20).

TDM produced the class details it had sufficient to satisfy CAFA, but insisted complete information about the class could only be obtained from its staffing vendor PeopleShare. Accordingly, Plaintiff subpoenaed PeopleShare for the full class information, as well as information it held concerning the merits. (ECF 29-2).

On March 5, 2025, PeopleShare moved to quash, which Plaintiff was forced to brief and argue multiple times during the ensuing eight months because, over time, PeopleShare supplemented the grounds for its motion. (*See* ECF 29, 32, 33, 36, 44-46, 54, 60, 63). Initially, PeopleShare argued the information was not discoverable or that Plaintiff should get it from TDM (even though TDM insisted PeopleShare exclusively held the information). Later it argued there was no reason to produce the information because PeopleShare had entered into a class settlement in an unrelated case, *Reyes v. PeopleShare, LLC*, 23 LA 69 (Kendall Cnty.), that would extinguish the class claims here. Ultimately, the Court ordered most of the subpoenaed information produced. (ECF 57, 67).

Plaintiff defeated PeopleShare's argument that *Reyes* obviated the need to comply with the subpoena by challenging the *Reyes* settlement. First, he moved, briefed, and successfully argued for the right to intervene in *Reyes* to object to the settlement that had been granted preliminary approval there because of the threat it posed to the class members' claims here. (*See* ECF 123-3 (Declaration of Keogh J. Keogh) at ¶8). Second, he moved, briefed, and successfully argued the *Reyes* court should vacate approval of the settlement because its plaintiff lacked standing to represent and compromise the claims of the class members in this case. (*See id.* (citing ECF 54, ¶8)). Significantly, the instant Settlement would not have been possible without this extensive

work to stop PeopleShare from extinguishing the class claims here as part of the *Reyes* settlement.[2]

During the proceedings on PeopleShare's subpoena objections, at TDM's request, the Court also ordered the parties to brief the viability of Plaintiff's theories for holding TDM liable given TDM's argument PeopleShare solely owned and operated the biometric clocks at issue. (ECF 38). Each party filed a detailed brief on the matter (ECF 39, 42) and the Court found Plaintiff's theories plausible. (Nov. 4, 2024 Hrg. Transcript at p.4) ("I find plausible plaintiffs' argument that even if a third party rather than the defendant owned the clocks, the defendant might still be liable under BIPA.")).

Subsequently, also at TDM's request, the Court ordered briefing on TDM's argument Plaintiff could be compelled to amend his complaint to specifically plead his legal theories, and to change allegations TDM claimed discovery had shown to be incorrect, so TDM could bring motion practice against the amended complaint. (ECF 57). This matter was fully briefed, and again the Court rejected TDM's arguments. (Nov. 4, 2024 Hrg. Transcript at pp. 4-5) ("defendant hasn't cited to any authority showing that courts in fact use this power to require a plaintiff to amend its complaint. * * * Plaintiffs are not required to plead legal theories in their complaint.").

The parties also conducted full discovery. This included preparing a lengthy initial discovery report and proposed discovery schedule, drafting Rule 26(a)(1) disclosures, and drafting and answering one-another's written discovery requests. (ECF 123-3 (Keogh Decl.) at ¶11). This in turn required multiple Rule 37.2 conferences and correspondence regarding the sufficiency and

---

[2] It is worth noting the now-vacated *Reyes* settlement was categorically inferior to the instant Settlement because, unlike here, it: (a) did not allow class members to separately recover on their claims against TDM and PeopleShare; (b) only offered a small portion of the class $316 (plus a dark web monitoring service); (c) required each class member to file a claim to receive a payment; and (d) provided that all unclaimed funds would revert back to PeopleShare, thus ensuring the vast majority of class members would release their claims in exchange for no benefit.

completeness of the responses, and on numerous occasions Plaintiff convinced TDM to provide supplemental answers and produce additional documents. Ultimately TDM produced more than a thousand pages of documents, a significant portion of which consisted of emails Plaintiff had to individually analyze. (ECF 123-3 (Keogh Decl.) at ¶11).

Plaintiff also conducted substantial additional third-party discovery. This included subpoenaing the maker of the biometric devices, Iris ID Systems for discovery on how they work, to help prove they capture information subject to BIPA, subpoenaing PeopleShare's clock vendor for related information, and also deposing Iris ID. TDM moved for a protective order to try to stop the deposition, Plaintiff filed an opposition brief, and the Court denied the motion. (ECF 93, 98).

In January 2025, PeopleShare sought intervention on account of joint employment and other issues, and Plaintiff contemporaneously moved for class certification. (ECF 71, 76). The Court elected to resolve the motion to intervene first. (*See* ECF 80). During the briefing, PeopleShare withdrew its motion and filed an amended motion to intervene (ECF 86), that motion was fully briefed, and ultimately granted on March 18, 2025. (ECF 99).

This prompted a second litigation's worth of written and document discovery, with Plaintiff and PeopleShare drafting and answering extensive interrogatories and document requests (as well as requests for admission to Plaintiff), conducting written and oral Rule 37.2 discussions regarding the sufficiency of the same, and preparing and producing supplemental responses and productions. PeopleShare produced nearly 5,700 pages of documents Plaintiff had to analyze. (ECF 123-3 (Keogh Decl.) at ¶14).

Each side commenced party depositions as well, with Plaintiff deposing a key TDM employee, and TDM and PeopleShare deposing Plaintiff Franklin for approximately five and a half hours. (*Id.* at ¶15).

During preparation for the remaining depositions, the parties discussed settlement, eventually reaching agreement on material terms. (*Id.* at ¶16). Thereafter, Plaintiff's counsel drafted the detailed Settlement Agreement, proposed class mail notice, proposed class website notice, and proposed preliminary and final approval orders. Substantial additional negotiations followed, with the parties revising and exchanging multiple drafts of the foregoing documents, the finals of which are attached at *Appendix 1*. (*See* ECF 123-3 (Keogh Decl.) at ¶11).

### D.     The Settlement.

The key terms of the proposed Settlement are:

#### 1.     Settlement Class Definition

The Settlement Class is defined as follows:

> All persons who used an iT100 Device while assigned to or working at TDM's Chicago Modification Center in Chicago, Illinois at any time from November 29, 2022 through April 5, 2023.

The class contains 331 members. (*See Appendix 1* (Agreement) at ¶34).

#### 2.     Monetary Relief for Settlement Class Members

The Settlement Agreement requires PeopleShare to create a non-reversionary Settlement Fund of Two-Hundred-Twelve Thousand, Five Hundred, and No/100 Dollars ($212,500.00), from which each Settlement Class Member will receive, without the need to submit a claim, a *pro rata* share after deduction of the costs of notice and administration, and the court-approved class representative service award. (*See Appendix 1* (Agreement), ¶52.c). No portion of the Settlement Fund will revert to PeopleShare, and no amount will be deducted from the fund for the court-approved attorney's fee and expense award, which PeopleShare will pay on top of the Settlement Fund. (*See id.*, ¶70.A). As such, the settlement administrator[3] will automatically issue checks to

---

[3] The Court approved appointing American Legal Claim Services, LLC (ALCS) as settlement

each Settlement Class Member who did not opt out (which is all of them), and the checks will remain valid for 120 days from issuance. (*Appendix 1* (Agreement), ¶6 and ¶71). Thus, each of the 331 Settlement Class Members is to receive at least $582.13 net.[4]

If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members. (*Id.*, ¶72). If there is not enough money to pay at least $10.00 to each Settlement Class Member who cashed their initial award check, or if any checks from the subsequent distribution remain uncashed after the stale date, those funds shall be paid to a *cy pres* recipient approved by the Court (*id.*, ¶71), for which the parties propose the Chicago Bar Foundation, a charitable organization and common *cy pres* recipient.[5]

### 3. Class Representative Service Payment

As provided by the Settlement, Plaintiff petitioned for a service payment for his efforts to maintain this suit for the class, which included providing information to his counsel to aid in preparing the complaint, answering full written discovery from TDM and working with counsel to supplement his responses to the same, answering PeopleShare's separate full written discovery

---

administrator. (*Appendix 3* (Preliminary Approval Order) at ¶8). ALCS has administered numerous class cases. *See, e.g.*, *Garcia v. J.C. Penny Corp.*, 2017 U.S. Dist. LEXIS 131890, *7 (N.D. Ill. Aug. 9, 2017); *Lateano v. Chicago Cubs Baseball Club, LLC*, 23-cv-02757 at ECF 43, p.15 (N.D. Ill.); *Reyes v. Summit Health Mgmt., LLC*, 2024 U.S. Dist. LEXIS 21061, *9-10 (S.D.N.Y. Feb. 6, 2024) ("The distribution plan here … is being overseen by American Legal Claim Services LLC, an experienced claims administrator.")

[4] As noted above, the $582.13 payout is calculated by subtracting the Settlement Administrator's cost of notice and administration ($9,814) and the proposed class representative incentive award ($10,000) from $212,500, and dividing the remainder by 331 Settlement Class Members.

[5] The Chicago Bar Foundation is a regular recipient of unclaimed settlement funds in class actions resolved in the Chicago area. *See, e.g.*, *Richardson v. Ikea N. Am. Servs.*, 2023 Ill. Cir. LEXIS 362, *10-11 (Cook Cnty. Cir. Ct. Aug. 3, 2023); *Moore v. THR Brokerage IL Inc.*, 2019 Ill. Cir. LEXIS 73, *6 (Cook Cnty. Cir. Ct. May 17, 2019).

requests and working with counsel to supplement the same, producing documents, sitting for a nearly five-and-a-half hour deposition, regularly communicating with counsel about the case for nearly two years, intervening in *Reyes* and successfully challenging the proposed settlement in that case to prevent it from extinguishing the class members' claims here, and achieving a superior settlement here while still preserving the class's ability to pursue their claims against PeopleShare. (*See* ECF 131 (Motion for Attorney Fees, Expenses, and Class Rep. Service Payment) at pp. 16-17). Simply put, the substantial benefits the Class stand to enjoy under the Settlement would not exist but for Plaintiff's extensive efforts.

As also explained in the petition, service payments are routinely approved in class actions, including BIPA class actions, and the proposed $10,000 amount is fully consistent with service payments approved in numerous other BIPA cases, which routinely meet or exceed that amount.[6]

---

[6] *See, e.g.*, *George, et al. v. Schulte Hosp. Grp., Inc.,* 2018-CH-04413 (Cir. Ct. Cook Cnty.) (awarding $15,000 service payment to class representative); *Diaz v. Greencore USA – CPG Partners, LLC d/b/a Peacock Foods* (Cir. Ct. Cook Cnty.) ($15,000); *Rogers v. CN Transp., Ltd.*, 2019-CH-05129 (Cir. Ct. Cook Cnty.) ($15,000); *McClaine et al. v. DX Enters. Inc.*, 23-cv-01168 (S.D. Ill.) ($15,000); *Wordlaw v. Enterprise Leasing,* 20-cv-03200 (N.D. Ill. 2020) ($12,500.00 service award); *Rapai v. Hyatt Corp.*, 2017-CH-14483 (Cir. Ct. Cook Cnty. Jan. 26, 2022) ($12,500); *Heidelberg v. Forman Mills Inc.*, No. 2020-CH-4079 (Cir. Ct. Cook Cnty. Aug. 22, 2023) ($10,000 service award); *Dixon v. Wash. & Jane Smith Cnty.*, 17-cv-08033 (N.D. Ill., Aug. 20, 2019) (same); *Prelipceanu*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (same); *Zhirovetskiy v. Zayo Grp., LLC,* 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (same); *Roach v. Walmart*, 2019-CH-01107 (Cir. Ct. Cook Cnty. June 16, 2021) (same); *Kane v. Cons. Tech. of Ill., LLC d/b/a Con-Tech Lighting*, 2018-CH-12194 (Cir. Ct. Cook Cnty.) (same); *Terry v. Griffith Foods Grp., Inc.* 2019-CH-12910 (Cir. Ct. Cook Cnty) (same); *Edmund v. DPI Specialty Foods, Inc.* 2018-CH-09573 (Cir. Ct. Cook. Cnty. Nov. 18, 2019) (same); *Jackson v. A Finkl & Sons, Co.*, 2018-CH-07424 (Cir. Ct. Cook Cnty. July 21, 2020) (same); *Ortega v. Rapid Displays, Inc.,* 2020-CH-00140 (Cir. Ct. Cook Cnty.) (same); *Heard v. THC - Northshore, Inc.*, 2017-CH-16918 (Cir. Ct. Cook Cnty.) (same); *Davis v. Heartland Employ. Serv., LLC*, 19-cv-00680 (N.D. Ill. Feb. 1, 2019) (same); *Devose v. Ron's Staffing Servs., Inc.*, 2019-L-1022 (Cir. Ct. Will Cnty.) (same); *Bryant, et al. v. Loews Chicago Hotel, Inc.*, 19-cv-03195 (N.D. Ill. 2019) (same); *Glynn v. Edriving, LLC*, 2019-CH-08517 (Cir. Ct. Cook Cnty.) (same).

10

The petition was posted on the settlement website for the class members' review during the notice period, and the notice specifically advised the Class of the request. (*Appendix 4* (Unkefer Decl.) at ¶5, ¶10, Ex. A (Mail Notice) ("What does the Settlement provide?"), and Ex. B (Web Notice), §7). There is no clear sailing provision for this request. (*See Appendix 1* (Agreement), ¶55). No class member objected to it. (*Appendix 4* (Unkefer Decl.) at ¶9).

### 4. **Payment of Attorneys' Fees and Expenses**

Class Counsel petitioned for an award of $200,000.00 for their attorneys' fees and out-of-pocket expenses, which is significantly less than the fees and expenses they actually incurred. (ECF 131 (Motion for Attorney Fees, Expenses, and Class Rep. Service Payment) at p.2). As noted above, the proposed award does not affect the Class recovery because PeopleShare agreed to pay it in addition to the class payment. (*Appendix 1* (Agreement), ¶70.A).

Further, as explained in the petition, the proposed award is well-earned given the extensive work class counsel had to perform to achieve the Settlement, the additional work counsel had to perform to complete the Settlement and finish the case (including drafting and presenting a detailed motion for preliminary approval of the Settlement, supervising the issuance of class notice and analyzing the results of the same, and preparing and presenting this motion for final approval), and the fact that Class Counsel have now had to wait more than two years since the case was filed to get paid. (*See* ECF 131 at pp. 7-16).

Again, the petition was posted on the Settlement website during the notice period for the class to review, and the notice specifically advised the class of counsel's fee and expense request. (*Appendix 4* (Unkefer Decl.) at ¶10, Ex. A (Mail Notice) ("What does the Settlement provide?"), and Ex. B (Web Notice), §7). There is no clear sailing provision for this request. (*See Appendix 1* (Agreement), ¶55). No class member objected to it. (*Appendix 4* (Unkefer Decl.) at ¶9).

11

**5.** <u>The Release Is Limited to TDM – Claims Against PeopleShare Are Preserved</u>

In exchange for the relief described above, Plaintiff and the Settlement Class will release any claims under BIPA or similar laws they may have, but <u>only</u> as to Defendant TDM. Claims against PeopleShare are expressly preserved, and thus Plaintiff and the Settlement Class Members remain free to pursue or continue pursuing any claims they may have against PeopleShare arising from or relating to their use of the iT100 clock at TDM, including in the lawsuit pending against PeopleShare Best Practices, LLC in state court, *Gunn v. PeopleShare Best Practices, LLC*, 2023 CH 8596 (Cir. Ct. Cook Cnty.). The full scope of the release, and its exact terms, are set forth in the Settlement Agreement. (*See Appendix 1* (Agreement), ¶27-¶29, ¶74).

**E. The Class Was Given Notice of the Settlement as Directed by the Court.**

The Settlement Class was sent direct mail notice as ordered by the Court. (*See Appendix 4* (Unkefer Decl.) at ¶4-¶6). In accordance with the Court's preliminary approval order and the Settlement Agreement, the list of class members and their contact information was provided to the Settlement Administrator, who then updated their contact information using the National Change of Address Service to ensure the most-current addresses were used, and timely sent class members direct notice by mail in the form approved by the Court. (*Id.*). Only 20 out of 331 class members could not be located, an exceptional notice-efficacy rate of 93.96%. (*Appendix 4* (Unkefer Decl.) at ¶7); *compare Bickel v. Sheriff of Whitley Cnty.*, 2015 U.S. Dist. LEXIS 38311, *6 (N.D. Ind. Mar. 26, 2015) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."") (citation omitted).

Furthermore, per the Settlement Agreement, the notice directed Settlement Class Members to a dedicated Settlement Website established by the administrator, which was operative throughout the notice period, and enabled class members to review the Web Notice, Complaint,

Settlement Agreement, Preliminary Approval Motion, Preliminary Approval Order, and Plaintiff's Motion for an award of Attorneys' Fees, Expenses, and Service Payment. (*See Appendix 4* (Unkefer Decl.) at ¶10 ("The site has been in continuous operation since the sending of the notice of September 18, 2025.")). In response to this ample notice, no class member objected to any aspect of the Settlement. (*Id.* at ¶9).

## II. THE SETTLEMENT MERITS FINAL APPROVAL

The claims of a class only may be settled with court approval. Fed. R. Civ. P. 23(e). The procedure for approval of a class settlement is a well-established two-step process. *See Yates v. Checkers Drive-in Rest., Inc.*, 2020 U.S. Dist. LEXIS 205241, *5 (N.D. Ill. Nov. 3, 2020); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621, n.3 (7th Cir. 1982).

The Court already completed the first step, certifying the Settlement Class and granting preliminary approval to the Settlement, finding it sufficiently within the range of reasonableness to merit sending notice to the class. (*Appendix 3* (Preliminary Approval Order) at ¶3); *see also Yates*, 2020 U.S. Dist. LEXIS 205241, *5 (describing the "preliminary approval" stage).

The second step is final approval, at which the Court confirms notice was given to the class and reviews the Settlement a second time to confirm it is sufficiently fair, reasonable, and adequate to merit final approval. *See* Fed. R. Civ. P. 23(e)(2); and *Rysewyk v. Sears Holdings Corp.*, 2019 U.S. Dist. LEXIS 236004, *11 (N.D. Ill. Jan. 29, 2019).

This latter determination is made using the same factors the Court considered to determine the Settlement merited preliminary approval, including whether: (A) the class representative and class counsel adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account, (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

including the method of processing class-member claims; (iii) the terms of any proposed award of

attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

Rule 23(e)(3); and (D) the settlement treats class members equitably. *Rysewyk*, 2019 U.S. Dist.

LEXIS 236004, *11 (citing Fed. R. Civ. P. 23(e)(2)).

In conducting this inquiry, it is important to keep in mind federal courts strongly favor and

encourage settlements, particularly in class actions and other complex matters:

> It is axiomatic that the federal courts look with great favor upon the voluntary
> resolution of litigation through settlement. In the class action context in particular,
> there is an overriding public interest in favor of settlement. Settlement of the
> complex disputes often involved in class actions minimizes the litigation expenses
> of both parties and also reduces the strain such litigation imposes upon already
> scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980)

(citations and quotations omitted), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873,

875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts

naturally favor the settlement of class action litigation.").

As explained below, for the same reasons the Court considered in determining the

Settlement merited preliminary approval, coupled with the fact no class member has raised any

objection, the above factors compel the conclusion the Settlement merits final approval.

### A.  The class has been adequately represented
Fed. R. Civ. P. 23(e)(2)(A)

The Court already determined Plaintiff and Class Counsel adequately represent the class

in deciding to certify the class, for which adequacy of representation is an express requirement.

(*Appendix 3* (Preliminary Approval Order) at ¶5.d); *see also* Fed. R. Civ. P. 23(a)(4)).[7] Again,

---

[7] The adequacy requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Svoboda v.*

Plaintiff is adequate because his interests in this case are squarely aligned with those of the class he represents, as they all share identical claims arising from a common course of conduct and stand to recover the same relief, and Plaintiff has vigorously prosecuted those claims by retaining experienced class counsel, assisting his attorneys in investigating them and preparing the complaint, answering multiple sets of discovery and producing documents, sitting for deposition, regularly conferring with his attorneys throughout the litigation, intervening in *Reyes* to prevent the settlement of that case from extinguishing the class claims here, and reviewing and approving the Settlement Agreement. (ECF 123 (Preliminary Approval Motion) at 20-21).

Likewise, Class Counsel are adequate because they have decades of class action experience, including scores of cases under BIPA, which enabled them to prosecute this complex case, weather the staunch defense mounted by TDM and the PeopleShare Intervenors, defend the class members' claims from extinguishment in *Reyes*, and achieve an outstanding Settlement that pays class members a substantial recovery compared to other BIPA settlements, while still preserving their ability to pursue claims against PeopleShare. (*See* ECF 123-3 (Keogh Decl.) at ¶18-¶37). The adequate representation factor is plainly met.

### B. The Settlement is the product of arm's-length negotiations Fed. R. Civ. P. 23(e)(2)(B)

The Court already determined "the Agreement has been negotiated in good faith at arm's length …" (*Appendix 3* (Preliminary Approval Order) at ¶3). This determination is correct because, as shown above, this Settlement is the product of substantial negotiations and only came about after nearly two years of hard-fought litigation. (*See*, *supra*, pp. 4-8 (detailing the case's procedural history and work pre-dating the settlement).

---

*Amazon.com, Inc.*, 2024 U.S. Dist. LEXIS 58867, *15 (N.D. Ill. Mar. 30, 2024) (BIPA case) (quoting *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006)).

This is also borne out by the deal's terms. The Settlement is non-reversionary, provides significant cash payments to all members of the Settlement Class without any need to file a claim form, preserves the class members' claims against the PeopleShare intervenors, and is devoid of any clear-sailing provision or any provision that could indicate fraud or collusion. *See Snyder v. Ocwen Loan Servicing, LLC,* 2019 U.S. Dist. LEXIS 80926, *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement did not allow reversion of unclaimed funds or contain other terms suggesting something negotiations were not arm's length); *see also Schulte v. Fifth Third Bank*, 2010 U.S. Dist. LEXIS 144810, *15-16, n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (citing *Newberg on Class Actions* §11.51 (4th ed. 2002) (collecting cases)).

## C. The relief provided is more than adequate Fed. R. Civ. P. 23(e)(2)(C)

The relief provided is adequate because the Settlement creates a $212,500 non-reversionary Settlement Fund for a class of 331 persons that provides each class member a net payment of $582.13, substantially more than the net payouts provided by many other BIPA settlements granted approval. *See, e.g.*, *Trotter v. Summit Staffing*, 2019-CH-02731 (Cir. Ct. Cook Cnty. Aug. 4, 2020) (net recovery of $102); *Sekura v. L.A. Tan Enters.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (net recovery of $262.28 per claimant); *Pelka v. Saren Restaurants Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289); *Sykes v. Clearstaff, Inc.*, 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan 5, 2021) (net recovery of $298.04); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $375); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Marshal v. Life Time Fitness, Inc.*, 2017-

CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (net recovery of about $270, plus dark web monitoring valued at approximately $130); *Zhirovetskiy v. Zayo Grp., LLC*, 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (net recovery capped at $400 per claimant); and *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*, 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) (net recovery of $256-$510 per claimant).

The net payout also compares favorably with the potential recoverable damages. BIPA only allows a $1,000 recovery for negligent violations, which is likely the best-case outcome here because TDM contends it did not own or control the time clock and believed PeopleShare had obtained signed BIPA consents, allowing TDM to argue any violation was negligent at best. Plus, as noted above, the Illinois Supreme Court holds courts may award less than the full $1,000. *See Cothron*, 2023 IL 128004, ¶42. As such, the $582.13 net recovery per class member compared to the potential recovery is plainly fair, reasonable, and adequate.[8]

Plus, this Settlement provides a benefit most do not. It preserves the class members' ability to separately recover from other potentially responsible parties in other litigation pending against PeopleShare in state court. (*See Appendix 1* (Agreement) at ¶28-¶29).

Finally, as explained below, the sub-factors set forth in Rule 23(e)(2)(C) further confirm the class relief is adequate.

### 1. The risks of continued litigation weigh in favor of approval.

Evaluating the relief's adequacy also involves considering the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P.

---

[8] It should be noted it is not necessary to achieve the maximum relief possible. "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (cleaned up, internal citation omitted) (citing *Isby*, 75 F.3d at 1200).

23(e)(2)(C)(i). This weighs heavily in favor of approval because this Settlement provides immediate and substantial relief while avoiding potentially years of additional costly, complex litigation, and appeals, along with the associated risk of getting nothing. *See Goldsmith v. Tech. Sols. Co.*, 1995 U.S. Dist. LEXIS 15093, *14-15 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.")

While Plaintiff remains confident in his claims, TDM's defenses could derail any recovery. Most notably, TDM argues BIPA liability turns on the collection of biometric information, and that allegedly it cannot be held liable for collecting Plaintiff's or the class members' biometric information. Specifically, TDM alleges its vendor PeopleShare solely owned and operated the iT100 devices at issue, and that TDM itself never collected, possessed or obtained any information captured by the devices, even though they were installed on TDM's premises. Likewise, TDM argued PeopleShare had collected signed written consents to collect this information from Plaintiff and the class members before collecting this information. Plaintiff disputes these defenses, but there is no guarantee Plaintiff's arguments will prevail.

Moreover, Plaintiff would still need to win class certification. *See* Fed. R. Civ. P. 23(e)(2), Advisory Comm. Note to 2018 Amendment (courts may consider "whether certification for litigation would be granted" absent settlement). Though Plaintiff maintains this case is ideal for certification, success is not guaranteed, and TDM and PeopleShare would vigorously oppose it.

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents an excellent result. Instead of facing the uncertainty of a potential award in their favor years from now that could end up being lower than the result here, the Settlement achieves immediate, certain, and substantial relief. *See*

18

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The proposed method of distribution is effective.

The next sub-factor analyzes the effectiveness of the proposed method for distributing relief to the class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Effective distribution methods are those that aim to "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Here, class members will automatically be mailed a check, without any need to submit a claim form. (*Appendix 1* (Agreement) at ¶71). This method is as simple, expeditious, and effective as it gets. *See T.K. v. Bytedance Tech. Co. Ltd.*, 2022 U.S. Dist. LEXIS 65322, *39 (N.D. Ill. Mar. 25, 2022) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable.") (citation omitted).

### 3. The proposed attorney fee award and timing of payment

The final relevant[9] sub-factor analyzes the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement allowed Class Counsel to petition the Court for a fee and expense award of $200,000, but did not guarantee any set amount, or provide for any preferential timing of the payment. Furthermore, the fee and expense award is not being paid from Settlement Fund created to pay the class members' claims, but rather it will *in addition* to the class fund. (*Appendix*

---

[9] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). This is a non-issue because there is no such agreement here. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

*1* (Agreement) at ¶70.A). This is consistent with the fact BIPA expressly provides for an award of attorneys' fees and costs on top of the plaintiff's recovery (*see* 740 ILCS 14/20(a)(3)), as well as the many fee-shifting cases in which courts award such fees on top of the plaintiff's recovery.[10]

Finally, as discussed above, Class Counsel filed their fee and expense petition on the same date notice was sent to the class, a copy of the petition was posted on the Settlement Website for the Class Members' review, the notice specifically advised Class Members of the proposed award and its amount, and no Class Member objected to it. In short, each of the above subfactors demonstrates the relief provided under the Settlement is more than adequate.

### D. The proposed Settlement treats Settlement Class Members equitably Fed. R. Civ. P. 23(e)(2)(D)

"Generally, a settlement that provides for pro rata shares to each class member will meet this standard." *T.K.*, 2022 U.S. Dist. LEXIS 65322, *42; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (fairness is generally "assured by straightforward pro rata distribution of the limited fund").

That is the case here because the Settlement expressly states the net Settlement Fund will be divided *pro rata* among all Class Members who do not opt out. (*Appendix 1* (Agreement) at ¶56). Accordingly, because each such person will receive an equal share, the Settlement necessarily treats Class Members equitably.

In sum, each Rule 23(e)(2) factor for evaluating whether the Settlement is fair, reasonable, and adequate demonstrate Settlement should be granted final approval.

---

[10] *See Rosenbach v. Six Flags Ent't Corp.*, 2019 IL 123186, ¶36 ("The strategy adopted by the General Assembly through enactment of the Act is to try to head off [biometric privacy] problems before they occur. It does this in two ways. … The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including … attorney fees, and litigation expenses ...") (brackets added); and *e.g. Thomas v. Weatherguard Constr. Co.*, 2018 IL App (1st) 171238, ¶1, ¶3, ¶74 (affirming $178,449.97 in fees on a recovery of $9,226.52).

## III. THE MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENT SHOULD BE GRANTED.

As noted, the class notice specifically advised class members of Class Counsel's proposed attorneys' fee and expense award and Plaintiff's proposed incentive award, plus the motion for these awards was filed with the sending of the class notice and posted on the Settlement Website for review by the class during the notice period. (*Appendix 4* (Unkefer Decl.) at ¶10 and Ex. B (Mail Notice), p.2) ("What does the Settlement Provide?"). As explained in the motion, the proposed fee and expense award of $200,000 is well-earned given the volume of work necessary to achieve and complete this Settlement over the more-than two-year course of the case, as well as the fact that the proposed award is significantly less than the more than $374,300 in fees and $5,223.32 in expenses Class Counsel incurred as of the date of the motion. (ECF 131 at 7-15). Plus, once again, the award does not affect the class recovery because, consistent with BIPA's fee-shifting provision, PeopleShare agreed to pay the award in addition to the class recovery. (*Appendix 1* (Agreement) at ¶70.A).

Likewise, as demonstrated above, the proposed class representative service payment is fully consistent with service awards approved in other BIPA class action cases, and reflects Plaintiff's substantial contribution to the class members, who would not have received anything but for Plaintiff's decision to bring the case as a class action and persevere through two years of litigation to achieve the Settlement. (*Supra* at pp. 9-10).

Finally, as also noted, no class member objects to either proposed award. Accordingly, for these reasons and the reasons stated in the motion itself, Plaintiff's motion for an award of attorneys' fees, expenses, and service payment should be granted.

## CONCLUSION

Plaintiff respectfully requests the Court: (1) grant final approval of the Settlement in the form attached as *Appendix 2*, which: (a) finds the Settlement fair, reasonable, and adequate; (b) directs implementation of the Settlement in accordance with the terms of the Settlement Agreement; (c) grants Plaintiff's pending motion for an award of attorneys' fees, expenses, and service payment; (d) retains jurisdiction to supervise the Settlement's implementation; and (e) otherwise dismisses the case with prejudice; and (2) grant any further relief deemed just.

Dated:  November 24, 2025           Respectfully submitted,

*s/Michael S. Hilicki*
Keith J. Keogh
Michael S. Hilicki
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

*Class Counsel*